# EXHIBIT 1

STATE OF NEW YORK
SUPREME COURT  :     COUNTY OF NIAGARA

| | |
|---|---|
| JOANN ABBO-BRADLEY, Individually and as Parent and Natural Guardian of DYLAN J. BRADLEY, TREVOR A. BRADLEY and CHASE Q. BRADLEY, Infants; ZACHARY and MELANIE HERR, Individually and as Parent and Natural Guardian of COLETON HERR and HEATHER HERR, Infants; NATHAN E. and ELENA KORSON, Individually and as Parent and Natural Guardian of LOGAN J. KORSON, an Infant,<br><br>                    Plaintiffs,<br><br>vs.<br><br>CITY OF NIAGARA FALLS, CITY OF NIAGARA FALLS WATER BOARD, COUNTY OF NIAGARA, GLENN SPRINGS HOLDINGS, INC., and CONESTOGA-ROVERS & ASSOCIATES,<br><br>                    Defendants. | **COMPLAINT**<br><br>Index No.: _____<br><br>COMPLAINT NOT SUM CERTAIN<br><br>**146816**<br>04/10/2012  04:07:09 PM<br>Receipt # 2012115237<br>15 Pages<br><br>Wayne F. Jagow, Niagara County Clerk     Clerk: MKS<br><br>ORIGINAL FILED<br><br>APR 1 0 2012<br><br>WAYNE F. JAGOW<br>NIAGARA CO. CLERK |

The Plaintiffs, by their attorneys, Lippes & Lippes, Richard J. Lippes, Esq., of counsel, and Christin Morris, for their Complaint against the Defendants, alleges that:

### I.     INTRODUCTION

1.    This is an action to secure redress from Defendants CITY OF NIAGARA FALLS (hereinafter referred to as "Niagara Falls"), CITY OF NIAGARA FALLS WATER BOARD (hereinafter referred to as "Water Board"), THE COUNTY OF NIAGARA (hereinafter referred to as "County"), GLENN SPRINGS HOLDINGS, INC. (hereinafter referred to as "GSH"), and CONESTOGA-ROVERS & ASSOCIATES (hereinafter referred to as "CRA"), seeking compensatory and punitive damages for personal injuries, lost quality of life, economic losses,

and property value diminution, as well as equitable relief to remediate the contamination of their properties and establish a medical monitoring trust fund on their behalf, such damages arising from Plaintiffs' exposure to hazardous substances of the soil, air, and water on, in and beneath their property and homes which have caused exposure to the Plaintiffs of such hazardous substances.

## II.  PARTIES

2. The Plaintiff JOANN ABBO-BRADLEY, along with her infant children DYLAN J. BRADLEY, TREVOR A. BRADLEY and CHASE Q. BRADLEY, reside at 911 90th Street, in the City of Niagara Falls, County of Niagara, State of New York, and have so resided throughout the allegations contained in this Complaint.

3. The Plaintiffs, ZACHARY and MELANIE HERR, along with their infant children COLETON HERR and HEATHER HERR, reside at 940 93rd Street, in the City of Niagara Falls, County of Niagara, State of New York, and have so resided throughout the allegations contained in this Complaint.

4. The Plaintiffs NATHAN E. and ELENA KORSON, along with their infant child, LOGAN J. KORSON, resided at 905 92nd Street, in the City of Niagara Falls, County of Niagara, State of New York, throughout the allegations contained in this Complaint, and until the time they were recently forced to abandon their home and move to 8 Crescent Drive, in the Township of New Cumberland, State of Pennsylvania.

5. Defendant CITY OF NIAGARA FALLS is a municipal corporation of the State of New York and owns and maintains certain sewers within the City of Niagara Falls, from which the contamination of the Plaintiffs' homes and property emanated. As such, they are responsible for the operation and maintenance of such sewers.

6. The CITY OF NIAGARA FALLS WATER BOARD is an agency organized under the laws of the State of New York, and has been engaged in an ongoing program of maintenance and refurbishment of the sewers within the City of Niagara Falls.

7. The COUNTY OF NIAGARA is a municipal corporation organized under the laws of the State of New York, which upon information and belief, is the owner of certain sewers within the City of Niagara Falls, from which the contamination of the Plaintiffs' property and homes has emanated. They are responsible for the operation and maintenance of such sewers.

8. GLENN SPRINGS HOLDINGS, INC. is, upon information and belief, a corporation organized under the laws of the State of New York, and along with Defendant CONESTOGA-ROVERS & ASSOCIATES, manages, monitors and maintains certain operations concerning the "Love Canal" contamination site, and any contamination arising from such site.

9. CONESTOGA-ROVERS & ASSOCIATES, is a consulting firm who, along with GLENN SPRINGS HOLDINGS, INC., manages, monitors and maintains the "Love Canal" contamination site, and any contamination emanating from that site.

### III. GENERAL ALLEGATIONS

10. The homes of the Plaintiffs are located in proximity to an area in Niagara Falls that was declared an emergency due to the contamination emanating from the former Love Canal hazardous waste disposal site, and commonly known as the "Love Canal Emergency Declaration Area," as well as located in proximity to the present 70-acre Love Canal containment area, bounded by Bergholtz Creek on the north, 102nd and 103rd Street on the east and southeast respectively, Buffalo Avenue on the south, and 93rd Street on the west.

11. Upon the remediation of the Love Canal site, in 1995 Defendant GSH and CRA assumed responsibility for the ongoing monitoring of the site.

3

12. The Water Board has been engaged in an 18 year program of sewer repair, which includes sewer replacement, root and debris removal, trenching, pipelining, manhole rehabilitation, leaky joint grouting, cross connection identification and removal, and sewer line upgrading.

13. On January 11, 2011, the Defendants, or their agents, employees, representatives or contractors disturbed, exposed, and discharged contaminated sediment during an excavation to repair a 50 foot length of underground sanitary sewer piping along Colvin Boulevard, just east of 96th Street in Niagara Falls. The work that took place on January 11, 2011, discharged hazardous chemicals, sometimes in a sudden and accidental manner, onto and into the property and homes of the Plaintiffs. Such chemicals included chlorinated organic chemicals, halogenated hydrocarbons and "signature" contaminants that can be directly linked to the Love Canal Superfund Site, including non-aqueous phase liquids ("NAPL"), a toxic chemical "stew" historically associated with Love Canal.

14. After realizing the significance and risk posed by the presence of the NAPL residue on the roadway and in the residential sewer or drain system, the Defendants used a "jetting" truck in a negligent and careless manner, with callous disregard for the health and safety of nearby residences, including the claimants herein, and applied high pressure hoses to wash the roadway and storm drains, effectively dispersing the contaminants even further onto and into the property and homes of the Plaintiffs.

15. The Defendants allowed pressure to build in the sewer system, and left the trench open for weeks, allowing the contaminants to continue to escape from the sewers and onto and into the property and homes of the Plaintiffs.

16. As a result of the actions indicated, and in addition to contaminants that apparently were already present in the sewer system and surrounding areas, as well as in, under and at the surface of Plaintiffs' property and homes, these additional contaminants were dispersed across an area several blocks from the site of the trench, and further contaminated the environment by dispersing the contaminants into the air, water and into the ground of the Plaintiffs' property and homes and surrounding neighborhood.

17. Even though workers in the excavated trench realized that they were dealing with NAPL, and NAPL trailed down Colvin Boulevard after workers tried to flush it down sewers and storm drains, thus further contaminating the property and homes of the Plaintiffs, nevertheless, the Defendants failed to warn the residents of the neighborhood, including the Plaintiffs, of the toxic nature of the substances to which the Plaintiffs had been exposed, failed to report the presence of hazardous contaminants to the appropriate authorities, and failed to follow appropriate procedures to eliminate additional hazards to the Plaintiffs.

18. Therefore, the Plaintiffs were directly exposed to the chemicals indicated herein through the tortious acts of the Defendants, and continue to be so exposed through the failure of the Defendants to warn the Plaintiffs of the risks inherent in such exposure. Indeed, the Defendants have, at various times, indicated to the Plaintiffs that the exposure to these chemicals would not harm their health, and that it was safe to continue to live in their homes, and that Plaintiffs need take no precautions concerning the chemicals to which they have been exposed.

19. Defendants knew or should have known that the sewers at issue herein were sagging, dipping or corroded, either as a result of age or other natural forces, chemical corrosion, or the presence of NAPL lodged in the sewers.

5

20. The Defendants failed to act in a reasonable manner after specific recommendation or general scientific knowledge required that Defendants inspect, repair and remediate low-lying sewage lines within the areas nearby the Plaintiffs' property adjacent to the Love Canal containment area, for the specific reason that contaminants might exist or accumulate within them and find there way to the surface or into the residences in those areas, including the property and homes owned and occupied by the Plaintiffs.

21. As a result of the failure of Defendants to inspect, repair and remediate sewage pipes as recommended, and as result of the negligent, grossly negligent, careless and reckless handling of the toxic sediment at the January 11, 2011 excavation, Plaintiffs were continuously exposed during their entire occupation of the homes to toxic contaminants from the Love Canal, and as a result, have each become ill, have suffered permanent and severe injury, and have incurred and will in the future incur additional expenses for medical and other care.

22. As a further result of the failure of Defendants to inspect, repair and remediate sewage pipes as recommended, and as a result of the use by Defendants of polyvinyl chloride ("PVC") pipe to replace underground pipes during and after the original remediation process, although Defendants knew or should have known that the toxic contaminants present in the area, and particularly any NAPL, were unusually corrosive and would cause PVC to rapidly deteriorate and leak, to the property and homes of the Plaintiffs have become contaminated by toxic chemicals rendering the homes virtually unsalable, such that the Plaintiffs have suffered economic loss.

23. Each of the municipal Defendants has been notified of this lawsuit by the service of a Notice of Claim pursuant to Section 50 of the General Municipal Law of the State of New York.

## FIRST CAUSE OF ACTION - NEGLIGENCE

24. The allegations contained in paragraph "1" through "23" inclusive are hereby realleged as more fully set forth herein.

25. Defendants knew or should have known of the presence of toxic and hazardous chemicals within the sewer system as alleged herein, and that the manner in which the trench was opened and the toxic chemicals were flushed throughout the neighborhood presented a serious risk of injury to persons and property due to the likelihood of contamination to the surrounding areas.

26. Defendants knew or should have known that proper monitoring needed to take place of the presence of the hazardous substances in the sewer system, and that hazardous chemicals were present and leaking from the sewer system, and further that the sewer pipes had deteriorated and were leaking hazardous materials and chemicals, including NAPL. Therefore, any work within the sewer system required the utmost due care to assure that the chemicals would not be dispersed throughout the neighborhood and contaminate the property and homes of nearby residents, including the Plaintiffs.

27. Despite the fact that Defendants knew or should have known of the presence of these hazardous chemicals, Defendants negligently, carelessly and recklessly disturbed, discharged and flushed these chemicals, sometimes in a sudden and accidental manner, throughout the neighborhood and onto and into the homes of the Plaintiffs. Defendants' negligence, carelessness and recklessness consisted of the following:

    a. Failure to properly monitor the chemicals in the Love Canal containment area;

7

b. Failure to properly test for chemicals within the sewer system, and in the ground upon which the sewer pipe lay, to determine whether hazardous chemicals were present so that heightened safety measures could be applied;

c. By not having proper protocols in place to deal with hazardous materials if they were found as work was being undertaken in the sewer system;

d. By improperly allowing the chemicals to leave the sewer system and flushed into and onto the property and homes of the Plaintiffs;

e. By allowing the hazardous chemicals to contaminant the air, soil and water in the surrounding area, including the property and homes of the Plaintiffs;

f. By taking no action to abate or otherwise stop the pollution and contamination of the surrounding area, including the property and homes of the Plaintiffs;

g. By improperly replacing certain pipes with "PVC" piping which the Defendants knew or should have known would deteriorate upon contact with the chemicals at issue herein;

h. By failing to advise the Plaintiffs of the risks and safety hazards of being exposed to the NAPL chemicals and other hazardous substances as indicated herein;

i. By falsely advising the Plaintiffs that such continuing exposure is safe and would cause no adverse health effects to them;

j. By acting in such a manner as to cause toxic and hazardous substances to be released to or otherwise enter the environment;

k. By failing to take, implement or use proper and adequate control measures to minimize the contamination of water, soil, and air with toxic and hazardous substances;

l. By failing to observe accepted relevant industry standards in the operation, maintenance and refurbishment of the City sewer system, and the handling of the toxic substances as alleged herein;

m. By improperly entrusting the operation, maintenance and refurbishing of the sewer system to persons not able, competent or adequately trained to handle such operations correctly upon the discovery of hazardous chemicals within the sewer system.

28. Defendants negligence, carelessness or recklessness as set forth herein, directly and proximately caused the harm suffered by Plaintiffs, including harm to their persons, property and economic security, including the cost of future monitoring of the contamination created by release of hazardous and toxic substances as well as the need for future monitoring of their health due to the increased risk of adverse health effects in the future.

By reason of the foregoing, Plaintiffs have been damaged by Defendants and request relief as more fully set forth in the ad damnum clause of this Complaint.

## SECOND CAUSE OF ACTION – ABNORMALLY DANGEROUS ACTIVITY

29. The allegations contained in paragraph "1" through "28" inclusive are hereby realleged as more fully set forth herein.

30. Since Defendants knew or should have known that the sewer system upon which they were working was in close proximity to the Love Canal containment area, they therefore

knew or should have known that there was a likelihood that hazardous chemicals would be present and had the potential to be released if any work was done within the sewer system, and further that the nearby neighborhood consisted of numerous residential properties, including the property and homes of the Plaintiffs herein, the maintenance and refurbishment of the sewer system was an abnormally dangerous activity.

31. Because Defendants engaged in an abnormally dangerous activity, it owed the highest duty of care to the Plaintiffs, which each Defendant breached, thereby proximately causing injury to Plaintiffs, as more particularly described herein.

32. Defendants' activities presented a high degree of risk of harm to the person and properties of Plaintiffs, and such harm has caused significant injury to Plaintiffs.

33. To the extent that Defendants may have used reasonable care in its operations, it was unable to eliminate the risk of contamination through such exercise of reasonable care.

34. The operation, maintenance and refurbishment of a sewer system nearby a hazardous waste containment site where it was known that hazardous substances were contained, is not a matter of common usage, and the manner in which the Defendant attempted to maintain and refurbish the sewer system in this populated area is and was inappropriate.

35. As a result of the Defendants engaging in such abnormally dangerous activities, Plaintiffs sustained injury and suffered losses.

By reason of the foregoing, Plaintiffs have been damaged by Defendants and request relief as more fully set forth in the *ad damnum* clause of this Complaint.

### THIRD CAUSE OF ACTION – GROSS NEGLIGENCE

36. The allegations contained in paragraph "1" through "35" inclusive are hereby realleged as more fully set forth herein.

37. The actions of Defendants were grossly, recklessly and wantonly negligent and were done with utter disregard for the health, safety, well-being and rights of the Plaintiffs and therefore warrant a substantial aware of punitive damages.

By reason of the foregoing, Plaintiffs have been damaged by Defendants and request relief as more fully set forth in the *ad damnum* clause of this Complaint.

### FOURTH CAUSE OF ACTION: PRIVATE NUISANCE

38. The allegations contained in paragraph "1" through "37" inclusive are hereby realleged as though more fully set forth herein.

39. The acts and omissions of Defendants as alleged in this Complaint created a private nuisance through substantial and unreasonable interference with the use and enjoyment of Plaintiffs' property.

40. Said nuisance continues to this day, and is likely to continue into the future without the issuance of an abatement order.

By reason of the foregoing, Plaintiffs have been damaged by Defendant and request relief as more fully set forth in the *ad damnum clause* of this Complaint.

### FIFTH CAUSE OF ACTION: TRESPASS

41. The allegations contained in paragraph "FIRST" through "40" inclusive are hereby realleged as though more fully set forth herein.

42. Through the acts and omissions of Defendants as alleged in this Complaint, the Defendants have intentionally taken actions which have caused contamination to spread from the

sewer system and their property to the property and homes of the Plaintiffs herein, and trespass upon the Plaintiffs' property and their homes.

43. Said trespass continues to this day and is likely to continue into the future unless this Court issues an order of abatement.

By reason of the foregoing, Plaintiffs have been damaged by Defendants and request relief as more fully set forth in the *ad damnum* clause of this Complaint.

### SIXTH CAUSE OF ACTION: EQUITABLE RELIEF: MEDICAL MONITORING AND INJUNCTIVE RELIEF

44. The allegations contained in paragraph "1" through "43" inclusive are hereby realleged as though more fully set forth herein.

45. The monitoring for the possible level of contamination of air, soil and water, and the monitoring of potential adverse health effects from exposure to contaminated air, soil, and water is necessary to protect Plaintiffs from harm which may result from Defendants' acts and omissions relating to the release into the environment of toxic and hazardous substances as hereinabove alleged.

46. Because of the latent nature of health injuries caused by exposure to the hazardous and toxic substances alleged herein, Plaintiffs request that a medical trust fund be established to monitor their health caused by the increased risk of injury, so as to detect injuries at the earliest possible date in order ameliorate the consequences of those injuries.

47. The exposure to the contaminants alleged herein by Plaintiffs have increased the risk of disease caused by such exposure, and have placed the Plaintiffs to a real and unspeculative increased risk of such disease in the future. The costs of said monitoring should be borne by Defendants inasmuch as the injuries to the Plaintiffs all resulted from the release of toxic and hazardous substances hereinabove alleged and the resulting contamination of their

property and homes was caused by Defendants' negligence and recklessness as hereinabove alleged.

48. Plaintiffs therefore seek equitable relief in the form of a medical trust fund to provide for continuing monitoring of the air, soil and water, and continued monitoring for adverse health effects, under Court supervision, and to further order that Defendants pay all costs for said monitoring.

49. Plaintiffs further request that this Court issue an immediate injunction ordering the clean-up of the toxins and hazardous substances released or otherwise caused to contaminate the property and homes of the Plaintiffs as hereinabove alleged, and to abate the nuisance and trespass that have been caused by the Defendants.

By reason of the foregoing, Plaintiffs have been damaged by Defendants and request relief as more fully set forth in the *ad damnum* clause of this Complaint.

## PRAYOR FOR PUNITIVE DAMAGES AGAINST DEFENDANTS GLENN SPRINGS HOLDING, INC., CONESTOGA-ROVERS & ASSOCIATES AND NIAGARA FALLS WATER BOARD

50. The allegations contained in paragraph "1" through "49" inclusive are hereby realleged as though more fully set forth herein.

51. The conduct of Defendants, GSH, CRA and Water Board, in assuring the Plaintiffs that they are at no risk of harm to their health and safety, when they knew or should have known that exposure to the toxic chemicals as alleged herein in fact put the Plaintiffs at significant risk of injury and disease, was done with the intention of attempting to avoid litigation and to be held responsible for the contamination of the Plaintiffs' property and home, and the exposure of the Plaintiffs to such hazardous chemicals, and was done with utter disregard to the potential adverse health effects that could ensue.

13

52.     As a result of these activities as alleged hereinabove, Plaintiffs are entitled to recover punitive damages in a substantial amount, to be later assessed by the finder of fact.

## AD DAMNUM

As a consequence of the wrongful acts and omissions of Defendants, Plaintiffs suffered injuries and damages, including, but not limited to the following:

a.      Compensatory damages for Plaintiffs' health injuries due to the exposure to the hazardous and toxic substances as alleged above in the amount of ONE HUNDRED MILLION ($100,000,000.00) DOLLARS;

b.      The diminution of value of real estate belonging to the Plaintiffs in the amount of SIX HUNDRED THOUSAND ($600,000.00) DOLLARS;

c.      Compensatory damages for Plaintiffs due to their lost quality of life in the amount of TEN MILLION ($10,000,000.00) DOLLARS;

d.      Costs of a continuing monitoring program designed to monitor the health effects of exposure to the hazardous and toxic substances discharged or otherwise released into the environment and to monitor the contamination of air, soil and water resulting therein as well as a medical monitoring trust fund to monitor the health of the Plaintiffs in the amount of THREE MILLION ($3,000,000.00) DOLLARS;

e.      An amount of punitive damages to be determined the trier of fact;

f.      Appropriate counsel fees and expenses incurred in connection with the litigation of this matter;

g.      Such other and further relief as the Court may determine to be just, proper and equitable.

DATED:	Buffalo, New York
	April 10, 2012

					Yours, etc.,

				By:	_____
					Richard J. Lippes, Esq., Of Counsel
					**LIPPES & LIPPES**
					1109 Delaware Avenue
					Buffalo, New York 14209
					Telephone: (716) 884-4800

					Christin Morris, Esq.
					8313 West Point Drive
					East Amherst, New York 14051
					(716) 741-8555

					Attorneys for Plaintiffs