# EXHIBIT
# 2

STATE OF NEW YORK
SUPREME COURT:  COUNTY OF NIAGARA

---

JOANN ABBO-BRADLEY, Individually and as
Parent and Natural Guardian of DYLAN J.
BRADLEY, TREVOR A. BRADLEY and
CHASE Q. BRADLEY, Infants; ZACHARY and
MELANIE HERR, Individually and as Parent and
Natural Guardian of COLETON HERR and
HEATHER HERR, Infants; NATHAN E. and
ELENA KORSON, Individually and as Parent
and Natural Guardian of LOGAN J. KORSON, an
Infant,

                    Plaintiffs,

vs.

CITY OF NIAGARA FALLS;  NIAGARA
FALLS WATER BOARD; GLENN SPRINGS
HOLDINGS, INC.; CONESTOGA-ROVERS &
ASSOCIATES; CECOS INTERNATIONAL;
INC.; EDWARD S. ROBERTS; GROSS PHC
LLC; KANDEY COMPANY, INC.; MILLER
SPRINGS REMEDIATION MANAGEMENT,
INC.; OCCIDENTIAL PETROLEUM
COPORATION (HOOKER) , Individually and as
Successor in Interest to Hooker Chemicals and
Plastics Corporation; OXY, INC., f/k/a
OCCIDENTAL CHEMICAL CORPORATION,
Individually and as Successor in Interest to
Hooker Chemicals and Plastics Corporation; OP-
TECH ENVIRONMENTAL SERVICES; ROY'S
PLUMBING, INC.; SCOTT LAWN YARD,
INC.; and SEVENSON ENVIRONMENTAL
SERVICES, INC.

                    Defendants.

**FIRST AMENDED COMPLAINT**

Index No.: 146816

---

       Plaintiffs, by their undersigned attorneys, PHILLIPS & PAOLICELLI, LLP, WATERS

& KRAUS, LLP, CHRISTEN CIVILETTO MORRIS, ESQ., and FANIZZI & BARR, P.C., for

their First Amended Complaint against the Defendants, allege that:

{00011433}

## I.    INTRODUCTION

1.      This action is brought on behalf of grievously injured residents of Niagara Falls' Love Canal neighborhood, who have suffered severe physical injury and economic harm as a result of the wrongful, reckless and wanton conduct of each of the Defendants.  Among the injuries that one or more Plaintiffs suffer are birth defects, chromosomal abnormalities, bone marrow abnormalities, cardiac conditions, pulmonary symptoms, unexplained fevers, skin conditions, behavioral problems, learning disabilities, and loss of teeth.

2.      Defendants' conduct – which includes but is not limited to the wrongful dumping of toxic substances, the negligent and ineffective remediation of such contamination, and repeated misrepresentations to the public at large concerning the neighborhood's safety – has created a public health catastrophe.

3.      As a result of Defendants' misconduct, chemicals have been and continue to be visible to the naked eye on area roads, sidewalks, and grass, and throughout the sewers and storm drains of this residential community.  In addition to the illness and disease rampant in the neighborhood, the Love Canal neighborhood to this day presents the stigmata of widespread contamination.  For example, the area has an unnatural absence of worms, mice, and other normal biodata.  It is also strewn with dead trees and grass.  Plaintiffs' and their neighbors' pets are sick.  Dead animals are a common sight throughout the area.

4.      The contamination resulting from Defendants' actions has also caused Plaintiffs severe economic harm.  For instance, Defendants' actions have rendered Plaintiffs' homes virtually unsalable.

5.     The economic harms that each Plaintiff has suffered also includes substantial medical out of pocket expenses to treat the severe medical conditions caused by Defendants' misconduct.

6.     Accordingly, Plaintiffs seek compensatory and punitive damages for, <u>inter alia</u>, personal injuries, lost quality of life, loss of companionship services, economic losses, and property value diminution.  Plaintiffs further seek equitable relief in the form of complete remediation of the contamination within, around, and under their properties as well as the establishment of a medical monitoring trust fund on Plaintiffs' behalf.

## II.     PARTIES

### A. Plaintiffs

7.     Plaintiff JOANN ABBO-BRADLEY is a citizen and resident of the City of Niagara Falls, County of Niagara, New York.

8.     Plaintiff JOANN ABBO-BRADLEY is the parent and natural guardian of infant Plaintiff DYLAN J. BRADLEY, who is a citizen and resident of the City of Niagara Falls, County of Niagara, New York.

9.     Plaintiff JOANN ABBO-BRADLEY is the parent and natural guardian of infant Plaintiff TREVOR A. BRADLEY, who is a citizen and resident of the City of Niagara Falls, County of Niagara, New York.

10.     Plaintiff JOANN ABBO-BRADLEY is the parent and natural guardian of infant Plaintiff  CHASE Q. BRADLEY, who is a citizen and resident of the City of Niagara Falls, County of Niagara, New York.

11.     Collectively, Plaintiffs JOANN ABBO-BRADLEY, DYLAN J. BRADLEY, TREVOR A. BRADLEY, and CHASE Q. BRADLEY shall hereinafter be referred to as the "Bradley Plaintiffs."

12.     At all relevant times, the Bradley Plaintiffs have resided and continue to reside at 911 90th Street, in the City of Niagara Falls, County of Niagara, State of New York.

13.     Plaintiff ZACHARY HERR is a citizen and resident of the City of Niagara Falls, County of Niagara, New York.

14.     Plaintiff MELANIE HERR is a citizen and resident of the City of Niagara Falls, County of Niagara, New York.

15.     Plaintiffs MELANIE HERR and ZACHARY HERR are the parents and natural guardians of infant Plaintiff COLETON HERR, who is a citizen and resident of the City of Niagara Falls, County of Niagara, New York.

16.     Plaintiffs MELANIE HERR and ZACHARY HERR are the parents and natural guardians of infant Plaintiff HEATHER HERR, who is a citizen and resident of the City of Niagara Falls, County of Niagara, New York.

17.     Collectively, Plaintiffs ZACHARY HERR, MELANIE HERR, COLETON HERR, and HEATHER HERR shall hereinafter be referred to as the "Herr Plaintiffs."

18.     At all relevant times, the Herr Plaintiffs have resided and continue to reside at 940 93rd Street, in the City of Niagara Falls, County of Niagara, State of New York.

19.     Plaintiff NATHAN E. KORSON is a citizen of the City of Niagara Falls, County of Niagara, New York.

20.     Plaintiff ELENA KORSON is a citizen of the City of Niagara Falls, County of Niagara, New York.

21.     Plaintiffs NATHAN KORSON and ELENA KORSON are the parents and natural guardians of infant Plaintiff LOGAN J. KORSON, who is a citizen of the City of Niagara Falls, County of Niagara, New York.

22.     Collectively, Plaintiffs NATHAN KORSON, ELENA KORSON, and LOGAN J. KORSON shall hereinafter be referred to as the "Korson Plaintiffs."

23.     At all relevant times, the Korson Plaintiffs reside at 905 92nd Street, in the City of Niagara Falls, County of Niagara, State of New York.

**B.     Defendants**

24.     Defendant OCCIDENTAL PETROLEUM CORPORATION, Individually and as Successor in Interest to HOOKER CHEMICAL AND PLASTICS, is a corporation organized under the laws of the State of Delaware and registered to conduct business within the State of New York.

25.     Defendant OXY, INC., f/k/a OCCIDENTAL CHEMICAL CORPORATION, Individually and as Successor in Interest to HOOKER CHEMICAL AND PLASTICS CORPORATION, is a corporation organized under the laws of the State of New York.

26.     Defendants OCCIDENTAL PETROLEUM CORPORATION and OXY, INC, f/k/a OCCIDENTAL CHEMICAL CORPORATION shall hereinafter collectively be referred to as "OCCIDENTAL/HOOKER."

27.     Defendant CITY OF NIAGARA FALLS is a municipal corporation of the State of New York.

28.     Defendant  NIAGARA FALLS WATER BOARD is a public benefit corporation created by a special act of the New York State Legislature.

{00011433}                                    5

29.     Defendant GLENN SPRINGS HOLDINGS, INC. ("GSH") is a corporation organized under the laws of the State of New York.

30.     Defendant CONESTOGA-ROVERS & ASSOCIATES ("CRA") is an engineering consulting firm conducting business within the State of New York.

31.     Defendant CECOS INTERNATIONAL, INC. f/k/a NEWCO CHEMICAL WASTE SYSTEMS, INC. is a corporation organized under the laws of the State of New York.

32.     Defendant EDWARD S. ROBERTS is an individual who, upon information and belief, works in Niagara Falls, New York, and who is, or was at all relevant times, Chairman and/or Chief Executive Officer of Defendant CRA.

33.     Defendant GROSS PHC, LLC, individually and as successor-in-interest to GROSS PLUMBING AND HEADING CO., INC. is a limited liability company organized under the laws of the State of New York.

34.     Defendant KANDEY COMPANY, INC. is a corporation organized under the laws of the State of New York.

35.     Defendant MILLER SPRINGS REMEDIATION MANAGEMENT, INC. is a corporation organized under the laws of the State of Delaware and registered to conduct business in the State of New York.  Defendant MILLER SPRINGS REMEDIATION MANAGEMENT, INC. is a subsidiary of Defendant OCCIDENTAL PETROLEUM CORPORATION and a predecessor in interest to Defendant GSH.

36.     Defendant OP-TECH ENVIRONMENTAL SERVICES, INC. is a corporation organized under the laws of the State of Delaware conducting business in the State of New York.

37.     Defendant ROY'S PLUMBING, INC. d/b/a ROY'S PLUMBING, HEATING, AND COOLING is a corporation organized under the laws of the State of New York.

38.    Defendant SCOTT LAWN YARD, INC. is a corporation organized under the laws of the State of New York.

39.    Defendant SEVENSON ENVRIONMENTAL SERVICES, INC. f/k/a SEVENSON CONSTRUCTION COMPANY f/k/a ALBERT ELIA BUILDING COMPANY is a corporation organized under the laws of the State of New York.

### III.    GENERAL ALLEGATIONS

#### A. Introduction

40.    Defendants are individually and collectively responsible for callously, wrongfully, and dishonestly exposing Plaintiffs to a host of deadly chemicals which, upon information and belief, include, but are not limited to, benzene hexachloride (the main component of the pesticide lindane, a neurotoxin), chlorobenzenes (used in the synthesis of DDT), Bis(2-ethylhexyl)phthalate (commonly known as DEHP), and dozens of other toxins, many of which Defendants knew or should have known were toxic.

41.    Among other chemicals to which there was wrongful exposure is 2,3,7,8-tetrachlorodibenzo-p-dioxin, commonly called dioxin, which is a byproduct of trichlorophenol manufacture and among the world's most carcinogenic chemicals.

42.    All of these chemicals are known or believed to be reproductive toxins, carcinogens, teratogens, and/or otherwise harmful to the human body.

43.    Some of the Plaintiffs are children who were exposed to these harmful chemicals in utero or during their childhood, at a time when they were and remain particularly vulnerable to the dangerous effects of toxic insult.

44.    All Plaintiffs have been exposed to toxins known to inflict cancers and/or other latent diseases and injuries, and also known to adversely impact reproductive capacity.

45.     As a result of the foregoing, each Plaintiff also suffers from the emotional distress associated with, inter alia, their individual illnesses, their prospective and/or latent illnesses, the illnesses of their family members, the prospective loss of their family members, and the economic turmoil that Defendants' conduct has caused.

### B. Love Canal Prior to 1954

46.     Love Canal received its name from William T. Love, an entrepreneur and developer in Niagara Falls, New York in the late 1800s.

47.     In 1892, Love proposed connecting the upper and lower Niagara River by digging a canal six to seven miles long, in hopes of harnessing the water of the of the upper Niagara River into a navigable channel, which would create a man-made waterfall with a 280-foot drop into the lower Niagara River, providing cheap hydroelectric power.

48.     Love's dream abruptly collapsed after the invention of alternating-current electricity, which could travel farther by wire than direct current, thus obviating the need for factories to locate near the falls.

49.     The Love Canal left behind became nothing more than a half-mile-long swimming hole until such time as Defendant OCCIDENTAL/HOOKER purchased the site, and situated its electrochemical company there.

50.     The OCCIDENTAL/HOOKER site, which quickly became one of the largest industrial enterprises in Niagara Falls, was originally used to manufacture chemicals and plastics.

51.     In or about 1941, Defendant OCCIDENTAL/HOOKER wrongfully began using the Love Canal site for hazardous waste disposal.  Engineers at Defendant OCCIDENTAL/HOOKER negligently and recklessly opined that the clay composition of the soil beneath the Love Canal site somehow made it ideal for the "safe" dumping of toxins.

{00011433}                                    8

52.     From approximately 1941 to 1953, Defendant OCCIDENTAL/HOOKER improperly dumped more than 21,000 tons of toxic waste on the Love Canal site, some of it loose and some of it in metal drums buried just beneath the surface.

53.     The toxic waste that Defendant OCCIDENTAL/HOOKER disposed of at Love Canal is made up of approximately 250 distinct chemicals.

54.     In addition to the materials wrongfully dumped by Defendant OCCIDENTAL/HOOKER, Defendant CITY OF NIAGARA FALLS also utilized the Love Canal site for waste disposal.

### C.  Transfer of the Love Canal Site

55.     In or about 1953, after prolonged and wrongful deposit of toxic waste at the Love Canal site and cosmetically concealing this misconduct by covering the waste with dirt and grass, Defendant OCCIDENTAL/HOOKER sold the land to the Niagara Falls Board of Education for one dollar.

56.     Fully aware of the grave dangers associated with its wrongful conduct, Defendant OCCIDENTAL/HOOKER endeavored to hide the full extent of its wrongdoing and evade responsibility therefor while including in the deed transfer a sham "warning" indicating that in the course of its business it had buried certain wastes on the property, and noting that such materials should not be disturbed by digging.

57.     Following Defendant OCCIDENTAL/HOOKER's sale of the Love Canal land, and with the full knowledge of Defendant OCCIDENTAL/HOOKER, the Niagara Falls Board of Education began in or about 1954 to construct an elementary school on the canal property.

58.     Even though the school board had no way of knowing the full extent of Defendant OCCIDENTAL/HOOKER's wrongful dumping, nonetheless a school was constructed without a

basement. This "99th Street School" was completed in or about 1955, situated atop 21,000 tons

of lethal toxins. Thereafter, it served approximately 400 young students per year.

     59.    Residential homebuilding around Love Canal boomed in the 1950s and, upon

information and belief, Defendant OCCIDENTAL/HOOKER knew or should have known of this

fact.

     60.    Despite being fully aware of the host of lethal chemicals it had dumped on the

Love Canal site, and also fully aware that the area was undergoing extensive residential

development, Defendant OCCIDENTAL/HOOKER provided homeowners moving into the area

with no warning or other information that would indicate that the property was situated in

proximity to deadly toxins that it had wrongfully dumped.

     61.    Most families who moved into the area were understandably unaware of the Love

Canal landfill and its poisons, largely because Defendant OCCIDENTAL/HOOKER had

concealed the fact of its wrongful toxic dumping by giving the Love Canal a cosmetic "face-lift"

prior to its sale to the school board. Specifically, Defendant OCCIDENTAL/HOOKER had

covered the Love Canal with dirt and grass, and planted trees rendering it innocent-looking to the

naked eye.

     62.    By 1978, there were approximately 800 private single-family homes and 240 low-

income apartments built in close proximity to the Love Canal.

     63.    The 99th Street School was located near the center of the landfill. The Niagara

River, to the south, and Bergholtz Creek, to the north, formed natural boundaries for the area

affected by the migrating toxins.

D. **Resident Complaints and Government's Response**

64.     From the late 1950s through the 1970s, Love Canal area residents repeatedly complained to authorities of strange odors in the neighborhood and/or chemical residues surfacing near or in their yards and on the playground of the 99th Street School.

65.     Defendant CITY OF NIAGARA FALLS, responding to these complaints, visited the area and negligently did little more than cover the chemical substances complained of with dirt or clay.

66.     Although Defendant CITY OF NIAGARA FALLS knew or should have known of the fact of the wrongful dumping of both Defendants OCCIDENTAL/HOOKER and CITY OF NIAGARA FALLS, it did not conduct further investigation, remediation, or issue any warnings.

67.     During or prior to 1976, after years of complaints, Defendant CITY OF NIAGARA FALLS finally hired a consultant to investigate.

68.     In 1976, the Calspan Corporation completed a study of the Love Canal area and, not surprisingly, found toxic chemical residues in the air and in the sump pumps in a significant number of homes near the southern end of the Love Canal.

69.     Calspan also found metal drums, presumably filled with dangerous chemicals, at or just beneath the surface, and high levels of PCBs in the storm sewer system.

70.     Calspan recommended that the Love Canal be covered with clay, home sump pumps be sealed off, and a tile drainage system be installed to control the migration of wastes.

71.     Defendant CITY OF NIAGARA FALLS carelessly, negligently, and/or recklessly elected not to adopt any of these Calspan recommendations, and instead merely placed window fans in a few select homes believed to contain abnormal levels of chemical residues.

{00011433}                                     11

72.     In or about 1978, authorities from the New York State Department of Health ("NYSDOH") began to study the Love Canal area, and released preliminary findings that women living near the southern end of the Canal were experiencing greater than normal rates of miscarriage and birth defects.

73.     On or about August 2, 1978, NYSDOH commissioner Robert Whalen issued a health order and announced a state of emergency at Love Canal.  The health order recommended that the 99th Street School be closed and that pregnant women and children under the age of two temporarily evacuate.

74.     Soon thereafter, New York Governor Hugh Carey announced that the state would purchase the 239 homes closest to Love Canal and evacuate residents of those homes.

75.     The State defined the affected area and erected a 10-foot fence around the evacuated land.  This decision was arbitrary because at that time, and to this day, nobody knew or knows how far into the surrounding residential neighborhoods the chemicals improperly dumped by Defendant OCCIDENTAL/HOOKER had spread or how many people were affected.

76.     As the investigation continued, additional evacuation orders were implemented. In total, approximately 950 families were evacuated from a 10-square-block area surrounding the landfill.

### E.   "Remediation" and its Aftermath

77.     Following the evacuation orders, an interagency task force was charged with making recommendations concerning the construction of a drainage system to prevent further migration of toxic chemicals from Love Canal.

78.     As part of this program, Defendants OCCIDENTAL/HOOKER, SEVENSON

ENVIRONMENTAL SERVICES, INC., and CECOS INTERNATIONAL, INC. were involved

in negligently, carelessly, and/or recklessly remediating the contamination.

79.     The cleanup plan consisted of a tile train collection system designed to "contain"

the waste and prevent any outward migration of chemical leachate.

80.     A graded trench system was dug around the canal's perimeter to intercept

migrating leachate and to create a barrier drain system.

81.     The leachate collected from this drain system is pumped to an on-site treatment

plant that utilizes a series of filters, including activated charcoal, in an attempt to remove toxic

chemicals from the waste stream.

82.     The remaining, theoretically "clean" water is then flushed down the regular

municipal sanitary sewer system.

83.     Notably, dangerous chemicals such as mercury and other heavy metals are <u>not</u>

intended to be removed by this treatment system.

84.     A clay cap was placed over the Love Canal as a cover in an attempt to minimize

rainwater from entering the canal surface, to prevent chemicals from vaporizing into the air, and

to prevent the outside environment from any direct contact with contaminated soil.

85.     A monitoring system to evaluate the effectiveness of this system was not

established until five years after the system's original implementation.

86.     Thus, there were no baseline data on contaminant levels in the groundwater

following the original remediation efforts.

87.     Once a monitoring system was put into place, however, it revealed that toxins

were systematically leaking into the nearby Niagara River.

88.    Such leaking was not a surprise, since there was no bottom to the so-called "containment" system.

89.    Other data also indicated that contaminants were increasing in the monitoring wells outside the Love Canal.

90.    Defendants were also otherwise negligent in the design, implementation, and construction of infrastructure in connection with the Love Canal remediation.

91.    For example, Defendants were reckless, negligent, and/or careless in the selection of polyvinyl chloride ("PVC") pipe to replace underground pipes (sewer and otherwise) in the Love Canal area during and after the original Love Canal remediation.  PVC pipe is easily corroded by the toxins at issue in this case, and Defendants knew or should have known that such piping would disintegrate over time as a result of the foreseeable contact with such chemicals, thus resulting in further dispersion of chemicals.

92.    In addition to the attempted remediation of the Love Canal site itself, efforts were made to remediate the surrounding sewers, creeks, and berms.  This included (a) hydraulically cleaning the sewers; (b) removal and disposal of the contaminated sediments; (c) inspecting the sewers for defects that could allow contaminants to migrate; (d) limiting access, dredging and hydraulically cleaning the Black Creek culverts; and (e) removing and storing Black and Bergholtz creeks' contaminated sediments.

93.    Approximately 62,000 linear feet of storm and sanitary sewers were cleaned in 1986, and an additional approximately 6,000 feet were cleaned in 1987.

94.    In 1989, Black and Bergholtz Creeks were dredged of approximately 14,000 cubic yards of sediments.  Clean riprap was placed in the creek beds, and the banks were replanted with grass.

{00011433}                                    14

95.    Prior to final disposal, the sewer and creek sediments from these cleaning projects and other wastes [approximately 33,500 cubic yards] were stored at Defendant OCCIDENTAL/HOOKER's Niagara Falls facilities, within Defendant OCCIDENTAL/HOOKER's exclusive control.

96.    In addition, the contaminated sediments and wastes from the sewers and creeks, as well as other Love Canal wastes, were intended to be removed and thermally treated prior to disposal at Defendant OCCIDENTAL/HOOKER's Niagara Falls facility.

97.    Thus, upon information and belief, the remediation program did not prevent the toxins within the Love Canal containment area from spreading throughout the Love Canal neighborhood from the time of its inception up to and including the present day.

98.    Defendants OCCIDENTAL/HOOKER, SEVENSON ENVIRONMENTAL SERVICES, INC., and CECOS INTERNATIONAL, INC. were involved in work relating to the remediation program and recklessly, negligently, and/or carelessly performed their duties in connection therewith.

99.    During and following the remediation, certain Love Canal area homeowners filed suit against Defendant OCCIDENTAL/HOOKER.

100.    Defendant OCCIDENTAL/HOOKER resolved these lawsuits.

101.    In addition to that private litigation, Defendant OCCIDENTAL/HOOKER agreed to pay $98 million to cover New York State's Love Canal cleanup costs, and $129 million to cover the federal government's Love Canal cleanup costs.

102.    Although Defendant OCCIDENTAL/HOOKER resolved these Love Canal matters, nothing in these litigations or the terms of their resolution eliminates or alters in any way Defendant OCCIDENTAL/HOOKER's obligations and/or duties to the instant Plaintiffs.

{00011433}                                    15

103.   None of the instant Plaintiffs were parties to any previous litigation relating to Love Canal.

**F.   Love Canal "Revitalization"**

104.   In or about 1988, NYSDOH publicly declared the area north of Love Canal to be safe for habitation on the basis of an interagency review.

105.   Empty homes in the Love Canal area were refurbished and sold for 20% below market value as an enticement to repopulate and revitalize the area.

106.   In or about August 1990, the Love Canal Revitalization Agency renamed a portion of Love Canal as Black Creek Village in an attempt to shed the stigma associated with the name "Love Canal," and entice homebuyers to consider settling their families in the neighborhood.

107.   In or about November 1990, without knowledge or reason to believe that Defendants had recklessly, negligently, and/or carelessly performed their duties in connection with Love Canal remediation and/or otherwise fraudulently concealed the full extent of the dangers associated with the Love Canal neighborhood, the first new family moved into the area.

108.   Additional families thereafter purchased homes in the Love Canal neighborhood.

109.   Since the rehabilitation program began, approximately 260 homes have been sold in the Love Canal area.

110.   In addition, a new senior citizen housing development has been constructed on vacant property in the so-called "habitable" portion of the emergency declaration area.

111.   In or about 1995, Defendants GSH and CRA, at Defendant OCCIDENTAL/HOOKER's direction, assumed responsibility for the ongoing management, operation, maintenance and/or monitoring of the Love Canal site.

112.    Thereafter, and in particular from in or about 1998 until in or about 2008, Defendant OCCIDENTAL/HOOKER assigned Defendant MILLER SPRINGS REMEDIATION MANAGEMENT, INC. the responsibility of operation and maintenance of certain pumps and treatment equipment in the Love Canal containment area.

113.    Thus, at all relevant times, Defendants CRA, GSH, and MILLER SPRINGS REMEDIATION MANAGEMENT, INC. acted as agents, servants, and/or employees of Defendant OCCIDENTAL/HOOKER, thereby and otherwise rendering Defendant OCCIDENTAL/HOOKER responsible for their conduct.

### G. Sewer "Refurbishment" and the January 2011 Acute Release of Chemicals

114.    At all relevant times, Defendant NIAGARA FALLS WATER BOARD has owned and operated the drinking water and waste water treatment systems and storm water conveyance facilities in the City of Niagara Falls.

115.    Defendant NIAGARA FALLS WATER BOARD has been engaged in a multi-year program of sewer refurbishment in the Love Canal area, which includes sewer replacement, root and debris removal, trenching, pipelining, manhole rehabilitation, leaky joint grouting, cross connection identification and removal, and sewer line upgrading (the "Sewer Remediation Program").

116.    At all relevant times, Defendant OP-TECH ENVIRONMENTAL SERVICES, INC. was a contractor who negligently performed certain sewer replacement and sewer cleaning projects at or near the Love Canal site in connection with the Sewer Remediation Program.

117.    At all relevant times, Defendant SCOTT LAWN YARD, INC. was a contractor who negligently performed certain sewer projects at or near the Love Canal site in connection with the Sewer Remediation Program.

{00011433}                          17

118.   At all relevant times, Defendant ROY'S PLUMBING, INC. was a contractor who negligently performed inspections and construction work at homes near the Love Canal site, including, but not limited to, the home of the Herr Plaintiffs in connection with the Sewer Remediation Program.

119.   At all relevant times, Defendant GROSS PHC, LLC was a plumbing contractor working on the Sewer Remediation Program near the Love Canal site, and negligently performed services in connection therewith.

120.   Additionally, Defendant GROSS PHC, LLC presently services homes for sewer and drain cleanup near the Love Canal site.

121.   At all relevant times, Defendant KANDEY COMPANY, INC. was the site and utility contractor that negligently performed numerous inspections and construction work at homes near the Love Canal site in connection with the Sewer Remediation Program.

122.   On or about January 11, 2011, as part of the Sewer Remediation Program, Defendants or their agents, employees, representatives or contractors – working on Colvin Boulevard within 250 feet of the northern boundary of the Love Canal containment area – recklessly, negligently, and/or carelessly disturbed, exposed, and discharged a substantial amount of contaminated sediment.

123.   The work that Defendants negligently performed prior to and on or about January 11, 2011 and thereafter resulted in the discharge of myriad hazardous chemicals onto and into the property and homes of the Plaintiffs.

124.   Such chemicals included highly dangerous chlorinated organic compounds, halogenated hydrocarbons, and certain "signature" Love Canal contaminants, including but not limited to non-aqueous phase liquids ("NAPL"), a toxic chemical "stew."

{00011433}                                   18

125.    Love Canal toxins should not have been present in area sewer lines to begin with, particularly because: (i) Defendant OCCIDENTAL/HOOKER should not have wrongfully dumped the toxins on the Love Canal site in the first place; and (ii) Defendants should have discharged their duties to adequately remediate and/or contain such materials within the Love Canal containment area from the time of the original Love Canal cleanup and continuing to the present day.

126.    Nevertheless, given the proximity of the January 2011 Colvin Boulevard Sewer Remediation Program work to Love Canal's northern boundary, and/or the fact that Defendants knew or should have known that toxins had leaked from the Love Canal site in the past, Defendants knew or should have known of the possibility of the presence of dangerous chemicals within the sewers and/or otherwise in proximity to Defendants' work.

127.    Defendants performing Sewer Remediation Program work in the Love Canal area failed to exercise due care to prevent the possibility of the escape of such chemicals.

128.    Once Defendants recklessly, negligently, and/or carelessly caused the release of such chemicals, they each failed to adequately warn area residents, including Plaintiffs, of the dangerous nature of such chemicals.

129.    Defendants were further reckless, negligent, and/or careless insofar as each failed to adequately report the presence of the release of hazardous contaminants to the appropriate governmental agencies and/or authorities.

130.    Following Defendants' reckless, negligent, and/or careless release of chemicals, each Defendant failed to follow appropriate procedures to eliminate additional hazards to area residents, including Plaintiffs.  Specifically, Defendants knew or should have known of the environmental and health risks posed by the presence of the NAPL residue and other chemicals

on the roadway and in the residential sewer or drain system, and should have exercised due care by taking appropriate remedial action to contain the toxins.

131.    Instead, Defendants recklessly, negligently, and/or carelessly, and with callous disregard for the health and safety of Plaintiffs and others in the surrounding community, applied water from high pressure hoses to wash the roadway and storm drains, thus further dispersing the contaminants onto and into Plaintiffs' property and homes.

132.    Defendants were further reckless, negligent, and/or careless in that they wrongfully allowed pressure to continue to build within the sewer system, and left the Colvin Boulevard trench open for weeks following the January 11, 2011 incident, thus allowing contaminants to further escape from the sewers and onto and into Plaintiffs' property and homes.

133.    As a result of the above actions, dangerous OCCIDENTAL/HOOKER toxins were continuously dispersed onto and into Plaintiffs' homes following the January 11, 2011 incident in addition to those Love Canal toxins which had been chronically and silently leaching onto and into Plaintiffs' homes throughout their entire occupation of said homes.

134.    Plaintiffs continue to be so exposed as a result of, inter alia, Defendants' failure to properly contain and remediate the contamination, Defendants' historical and ongoing failure to warn the Plaintiffs of the identity of the exact chemicals present and the risks inherent in such thereto, and Defendants' failure to exercise due care when working in proximity to Love Canal.

135.    Defendants have, at various times, blatantly misrepresented the dangers inherent in the OCCIDENTAL/HOOKER toxins by indicating to Plaintiffs that the exposure to such chemicals would not harm their health, that it was safe to continue to live in their homes, and that Plaintiffs need take no precautions concerning the chemicals to which they have been exposed.

{00011433}                         20

136.    As a result of Defendant OCCIDENTAL/HOOKER's dumping of hazardous materials at the Love Canal site, the failure of Defendants to appropriately remediate and contain Love Canal toxins, and their failure to adequately inspect, maintain, repair and remediate sewer pipes, and as result of the negligent, grossly negligent, careless and reckless handling of the toxic sediment at and following the January 11, 2011 incident, Plaintiffs were continuously exposed during their entire occupation of their homes to toxic OCCIDENTAL/HOOKER contaminants from the Love Canal, and as a result, have each become ill, have suffered permanent and severe injury, and have incurred and will in the future incur additional expenses for medical and other care.

137.    Thus, the chemicals that Defendant OCCIDENTAL/HOOKER wrongfully dumped on the Love Canal site beginning in the 1940s led to a public health emergency beginning in the late 1970s and continuing to the present day.

138.    Although both state and federal authorities ordered the Love Canal area to be environmentally remediated, at present the toxins that Defendant OCCIDENTAL/HOOKER wrongfully dumped on the site continue to escape from the Love Canal containment area, and systemically invade the adjacent neighborhoods including the homes of Plaintiffs.

139.    The original Love Canal remediation, thus, was insufficient and/or negligently performed by Defendants insofar as such remediation did not prevent the continued escape of chemicals from the site.

140.    In addition to the wrongful dumping of 21,000 tons of toxins on the Love Canal site, the willful, wanton, reckless, and negligent conduct of Defendant OCCIDENTAL/HOOKER and its subsidiaries, agents, servants and/or employees includes, but is not limited to the following:

a. At all relevant times, and despite its early recognition and understanding of the dangers posed by the chemicals that it had improperly dumped at the Love Canal site, Defendant OCCIDENTAL/HOOKER  failed to properly investigate the potential negative health effects of the chemicals that it had dumped on the Love Canal site in the 1940s and 1950s.

b. At all relevant times, Defendant OCCIDENTAL/HOOKER failed to monitor the actual effects of the chemicals that it had wrongfully dumped at Love Canal on the surrounding neighborhood, including but not limited to adverse health effects such as those suffered by Plaintiffs, as well as the contamination of the surrounding soil, water, and air.

c. At all relevant times, Defendant OCCIDENTAL/HOOKER failed to consider the particular local geography and geology in evaluating the effects or likely effects of the chemicals of which it had improperly disposed at the Love Canal site.

d. At all relevant times, Defendant OCCIDENTAL/HOOKER made false, misleading, and deceptive statements to the public at large, as well as to relevant governmental agencies, concerning the Love Canal site, including but not limited to statements concerning the toxins which it had dumped on the land and the safety and/or contamination of the neighborhoods surrounding the Love Canal site.

e. At all relevant times, Defendant OCCIDENTAL/HOOKER knowingly concealed information from and failed to warn the public at large, as well as relevant governmental agencies, concerning the Love Canal site, including but not limited to information concerning the toxins which it had dumped on the land and the

{00011433}                                                22

safety and/or contamination of the neighborhoods surrounding the Love Canal

site.

f.   At all relevant times, Defendant OCCIDENTAL/HOOKER knew or should have

known of the growing development of medical and scientific knowledge

concerning the toxicity and/or harmful medical effects of substances it had

dumped on the Love Canal site, and should have issued appropriate warnings

concerning the likely environmental and public health implications of its conduct.

g.   At all relevant times, and particularly following the sale of the Love Canal site to

the Niagara Falls school board, Defendant OCCIDENTAL/HOOKER knew or

should have known that a school had been constructed on the site.  Defendant

OCCIDENTAL/HOOKER failed to continuously monitor and warn the school

board and the inhabitants of the school of the dangers posed by the materials it

had dumped on the Love Canal site.

h.   At all relevant times, Defendant OCCIDENTAL/HOOKER knew or should have

known that a residential community was being developed in dangerously close

proximity to the land on which it had dumped 21,000 tons of toxins.  Defendant

OCCIDENTAL/HOOKER failed to continuously monitor and warn the

neighborhood residents of the dangers posed by the materials it had dumped on

the Love Canal site.

141.   Following the original remediation efforts at the Love Canal site, Defendants

made numerous false public representations that Love Canal toxins had been properly

{00011433}                            23

remediated and contained within the Love Canal containment area, and that surrounding area was free of such toxins.

142.   Defendants' conduct was grossly negligent, intentional, conscious, and was undertaken with callous and malicious disregard for the health, well being, and safety of Plaintiffs and others.

143.   As a consequence of the foregoing misconduct on the part of Defendants, Plaintiff JOANN ABBO-BRADLEY sustained and with reasonable probability will in the future sustain the following injuries and/or damages:

     a.   physical pain and suffering;

     b.   physical disabilities;

     c.   mental anguish;

     d.   loss of the enjoyment of life's pleasures;

     e.   inability to participate in her usual employment and activities;

     f.   lost income, and lost earning opportunities;

     g.   medical expenses;

     h.   other economic loss;

and was otherwise damaged.

144.   As a consequence of the foregoing misconduct on the part of Defendants, infant Plaintiff DYLAN J. BRADLEY sustained and with reasonable probability will in the future sustain the following injuries and/or damages:

     a.   physical pain and suffering;

     b.   physical disabilities;

     c.   mental anguish;

    d.   loss of the enjoyment of life's pleasures;

    e.   inability to participate in her usual employment and activities;

    f.   lost income, and lost earning opportunities;

    g.   medical expenses;

    h.   other economic loss;

and was otherwise damaged.

    145.   As a consequence of the foregoing misconduct on the part of Defendants, infant Plaintiff TREVOR A. BRADLEY sustained and with reasonable probability will in the future sustain the following injuries and/or damages:

    a.   physical pain and suffering;

    b.   physical disabilities;

    c.   mental anguish;

    d.   loss of the enjoyment of life's pleasures;

    e.   inability to participate in her usual employment and activities;

    f.   lost income, and lost earning opportunities;

    g.   medical expenses;

    h.   other economic loss;

and was otherwise damaged.

    146.   As a consequence of the foregoing misconduct on the part of Defendants, infant Plaintiff CHASE Q. BRADLEY sustained and with reasonable probability will in the future sustain the following injuries and/or damages:

    a.   physical pain and suffering;

    b.   physical disabilities;

{00011433}                                  25

    c.  mental anguish;

    d.  loss of the enjoyment of life's pleasures;

    e.  inability to participate in her usual employment and activities;

    f.  lost income, and lost earning opportunities;

    g.  medical expenses;

    h.  other economic loss;

and was otherwise damaged.

147.    As a consequence of the foregoing misconduct on the part of Defendants, Plaintiff ZACHARY HERR sustained and with reasonable probability will in the future sustain the following injuries and/or damages:

    a.  physical pain and suffering;

    b.  physical disabilities;

    c.  mental anguish;

    d.  loss of the enjoyment of life's pleasures;

    e.  inability to participate in her usual employment and activities;

    f.  lost income, and lost earning opportunities;

    g.  medical expenses;

    h.  other economic loss;

and was otherwise damaged.

148.    As a consequence of the foregoing misconduct on the part of Defendants, Plaintiff MELANIE HERR sustained and with reasonable probability will in the future sustain the following injuries and/or damages:

    a.  physical pain and suffering;

    b.   physical disabilities;

    c.   mental anguish;

    d.   loss of the enjoyment of life's pleasures;

    e.   inability to participate in her usual employment and activities;

    f.   lost income, and lost earning opportunities;

    g.   medical expenses;

    h.   other economic loss;

and was otherwise damaged.

149.    As a consequence of the foregoing misconduct on the part of Defendants, infant Plaintiff HEATHER HERR sustained and with reasonable probability will in the future sustain the following injuries and/or damages:

    a.   physical pain and suffering;

    b.   physical disabilities;

    c.   mental anguish;

    d.   loss of the enjoyment of life's pleasures;

    e.   inability to participate in her usual employment and activities;

    f.   lost income, and lost earning opportunities;

    g.   medical expenses;

    h.   other economic loss;

and was otherwise damaged.

150.    As a consequence of the foregoing misconduct on the part of Defendants, infant Plaintiff COLETON HERR sustained and with reasonable probability will in the future sustain the following injuries and/or damages:

    a.  physical pain and suffering;

    b.  physical disabilities;

    c.  mental anguish;

    d.  loss of the enjoyment of life's pleasures;

    e.  inability to participate in her usual employment and activities;

    f.  lost income, and lost earning opportunities;

    g.  medical expenses;

    h.  other economic loss;

and was otherwise damaged.

151.    As a consequence of the foregoing misconduct on the part of Defendants, Plaintiff NATHAN KORSON sustained and with reasonable probability will in the future sustain the following injuries and/or damages:

    a.  physical pain and suffering;

    b.  physical disabilities;

    c.  mental anguish;

    d.  loss of the enjoyment of life's pleasures;

    e.  inability to participate in her usual employment and activities;

    f.  lost income, and lost earning opportunities;

    g.  medical expenses;

    h.  other economic loss;

and was otherwise damaged.

{00011433}           28

152.    As a consequence of the foregoing misconduct on the part of Defendants, Plaintiff ELENA KORSON sustained and with reasonable probability will in the future sustain the following injuries and/or damages:

      a.   physical pain and suffering;

      b.   physical disabilities;

      c.   mental anguish;

      d.   loss of the enjoyment of life's pleasures;

      e.   inability to participate in her usual employment and activities;

      f.   lost income, and lost earning opportunities;

      g.   medical expenses;

      h.   other economic loss;

and was otherwise damaged.

153.    As a consequence of the foregoing misconduct on the part of Defendants, infant Plaintiff LOGAN J. KORSON sustained and with reasonable probability will in the future sustain the following injuries and/or damages:

      a.   physical pain and suffering;

      b.   physical disabilities;

      c.   mental anguish;

      d.   loss of the enjoyment of life's pleasures;

      e.   inability to participate in her usual employment and activities;

      f.   lost income, and lost earning opportunities;

      g.   medical expenses;

      h.   other economic loss;

and was otherwise damaged.

154.    As a consequence of the foregoing misconduct, Plaintiff JOANN ABBO-BRADLEY, individually as the parent of the infant Plaintiff DYLAN J. BRADLEY, suffered loss of support, loss of services of this infant Plaintiff, incurred medical and other expenses, and was otherwise damaged.

155.    As a consequence of the foregoing misconduct, Plaintiff JOANN ABBO-BRADLEY, individually as the parent of the infant Plaintiff TREVOR A. BRADLEY, suffered loss of support, loss of services of this infant Plaintiff, incurred medical and other expenses, and was otherwise damaged.

156.    As a consequence of the foregoing misconduct, Plaintiff JOANN ABBO-BRADLEY, individually as the parent of the infant Plaintiff CHASE Q. BRADLEY, suffered loss of support, loss of services of this infant Plaintiff, incurred medical and other expenses, and was otherwise damaged.

157.    As a consequence of the foregoing misconduct, Plaintiffs ZACHARY and MELANIE HERR, individually as the parents of the infant Plaintiff HEATHER HERR, suffered loss of support, loss of services of this infant Plaintiff, incurred medical and other expenses, and were otherwise damaged.

158.    As a consequence of the foregoing misconduct, Plaintiffs ZACHARY and MELANIE HERR, individually as the parents of the infant Plaintiff COLETON HERR, suffered loss of support, loss of services of this infant Plaintiff, incurred medical and other expenses, and were otherwise damaged.

159.    As a consequence of the foregoing misconduct, Plaintiffs NATHAN and ELENA KORSON, individually as the parents of the infant Plaintiff LOGAN J. KORSON, suffered loss

of support, loss of services of this infant Plaintiff, incurred medical and other expenses, and were otherwise damaged.

160.    Technical, scientific, and medical knowledge and information sufficient to ascertain the cause of Plaintiffs' injuries had not been discovered, identified, or determined until, at the earliest, the period following January 11, 2011.

161.    Each of Plaintiffs' personal injuries and property damages have been caused or contributed to by exposure to hazardous substances, pollutants, and contaminants that have been released into the environment from the Love Canal facility.

162.    Each of the municipal Defendants has been notified of this lawsuit by the service of a Notice of Claim pursuant to Section 50 of the General Municipal Law of the State of New York.

163.    To the extent that any Defendant pleads, or otherwise seeks to rely upon Article 16 of the New York Civil Practice Law and Rules (CPLR) to have fault apportioned to another allegedly culpable party, Plaintiffs expressly state that Defendants' conduct falls within one or more of the subdivisions of CPLR § 1602.

## FIRST CAUSE OF ACTION
## NEGLIGENCE

164.    The allegations contained in paragraph "1" through "163" inclusive are hereby realleged as more fully set forth herein.

165.    Defendants knew or should have known that Love Canal toxins had not been appropriately remediated and/or contained within the site, and therefore knew or should have known of the presence of toxic and hazardous chemicals within the sewer system as alleged herein.

{00011433}                                   31

166.     Defendants knew or should have known that the manner in which the Colvin Boulevard trench was opened and the toxic chemicals were flushed throughout the neighborhood presented a serious risk of injury to persons and property due to the likelihood of additional contamination to the surrounding areas, beyond the contamination that had already occurred on a chronic basis due to the negligent and inadequate remediation and/or containment of Love Canal toxins (of which Defendants also knew or should have known).

167.     Defendants knew or should have known that proper monitoring needed to take place of the presence of the hazardous substances in the sewer system, and that hazardous chemicals were present and chronically leaking from the Love Canal containment area and from the sewer system, and further that the sewer pipes had deteriorated and were leaking hazardous materials and chemicals, including NAPL, thus contaminating Plaintiffs' homes and property.

168.     Any work within the sewer system, therefore, required the utmost due care to assure that the chemicals would not be dispersed throughout the neighborhood and contaminate the property and homes of nearby residents, including the Plaintiffs.

169.     Despite the fact that Defendants knew or should have known of the presence of these hazardous chemicals, Defendants negligently, carelessly and recklessly disturbed, discharged and flushed these chemicals, sometimes in a sudden and acute manner, throughout the neighborhood and onto and into the homes of the Plaintiffs.  Defendants' negligence, carelessness and recklessness consisted of the following:

     a.   Failure to properly remediate the Love Canal site during and after the original remediation, and continuing to the present day, such that hazardous Love Canal contaminants escaped and continue to escape from the Love Canal site;

     b.   Failure to properly monitor the chemicals in the Love Canal containment area;

c.  Failure to properly and/or routinely test for chemicals within the sewer system, and in the ground upon which the sewer pipe lay, to determine whether hazardous chemicals were present so that heightened safety measures could be applied and neighborhood residents could be appropriately warned;

d.  Failure to have proper response protocols in place in the event that hazardous materials were found as a general matter, and specifically as work was being undertaken in the sewer system;

e.  By improperly allowing the chemicals to escape the sewer system and flushed into and onto the property and homes of the Plaintiffs, both chronically and following the January 2011 excavation project;

f.  By allowing hazardous chemicals to contaminate the air, soil and water in the surrounding area, including Plaintiffs' property and homes;

g.  By taking no action to abate or otherwise stop the pollution and contamination of the surrounding area, including the Plaintiffs' property and homes;

h.  By improperly replacing certain pipes with "PVC" piping which the Defendants knew or should have known would deteriorate upon contact with the chemicals at issue herein;

i.  By failing to advise Plaintiffs of the risks and safety hazards of being exposed to the NAPL chemicals and other hazardous substances as indicated herein;

j.  By falsely advising Plaintiffs that such continuing exposure is safe and would cause no adverse health effects to them;

k.  By acting in such a manner as to cause toxic and hazardous substances to be released to or otherwise enter the environment;

{00011433}                         33

l.  By failing to take, implement or use proper and adequate control measures to minimize the contamination of water, soil, and air with toxic and hazardous substances;

m.  By failing to observe accepted relevant industry standards in the operation, maintenance and refurbishment of the City sewer system, and the handling of the toxic substances as alleged herein;

n.  By improperly entrusting the operation, maintenance and refurbishing of the sewer system to persons not able, competent or adequately trained to handle such operations correctly upon the discovery of hazardous chemicals within the sewer system.

170.    Defendants' negligence, carelessness or recklessness as set forth herein, directly and proximately caused the harm suffered by Plaintiffs, including harm to their persons, property and economic security, including the cost of future monitoring of the contamination created by release of hazardous and toxic substances as well as the need for future monitoring of their health due to the increased risk of adverse health effects in the future.

171.    As a proximate result, each Plaintiff and each infant Plaintiff, as set forth above, has been damaged in sums which exceed the jurisdictional limitations of all courts of limited jurisdiction.

## SECOND CAUSE OF ACTION
## ABNORMALLY DANGEROUS ACTIVITY

172.    The allegations contained in paragraph "1" through "171" inclusive are hereby realleged as more fully set forth herein.

173.    Since Defendants knew or should have known that the original Love Canal remediation work and subsequent maintenance and/or monitoring work involved the attempted

{00011433}                                34

containment of the highly dangerous OCCIDENTAL/HOOKER chemicals, Defendants knew or should have known that such chemicals were present (and indeed were already chronically leaching), and had the potential to be acutely released from the sewer pipes if any work was done negligently, and further that the nearby neighborhood consisted of numerous residential properties, including the property and homes of the Plaintiffs herein, the original Love Canal remediation work and its ongoing maintenance and/or monitoring was an abnormally dangerous activity.

174.    Since Defendants knew or should have known that the sewer system upon which they were working as part of the Sewer Remediation Program was in close proximity to the Love Canal containment area, they therefore knew or should have known that there was a likelihood that hazardous chemicals would be present and had the potential to be released if any work was done within the sewer system, and further that the nearby neighborhood consisted of numerous residential properties, including the property and homes of the Plaintiffs herein, the maintenance and refurbishment of the sewer system was an abnormally dangerous activity.

175.    Because Defendants engaged in an abnormally dangerous activity, they owed the highest duty of care to the Plaintiffs, which each Defendant breached, thereby proximately causing injury to Plaintiffs, as more particularly described herein.

176.    Defendants' activities presented a high degree of risk of harm to the person and properties of Plaintiffs, and such harm has caused significant injury to Plaintiffs.

177.    To the extent that Defendants may have used reasonable care in their operations, they were unable to eliminate the risk of contamination through such exercise of reasonable care.

178.    The remediation and subsequent maintenance and/or monitoring of a hazardous waste site where it was known that hazardous substances were contained is not a matter of

{00011433}                                    35

common usage, and the manner in which the Defendants attempted to remediate and maintain and/or monitor the Love Canal site in this populated area is and was inappropriate.

179.    The operation, maintenance and refurbishment of a sewer system nearby a hazardous waste containment site where it was known that hazardous substances were contained, is not a matter of common usage, and the manner in which the Defendants attempted to maintain and refurbish the sewer system in this populated area is and was inappropriate.

180.    As a result of the Defendants engaging in such abnormally dangerous activities, Plaintiffs sustained injury and suffered losses.

181.    As a proximate result, each Plaintiff and each infant Plaintiff, as set forth above, has been damaged in sums which exceed the jurisdictional limitations of all courts of limited jurisdiction.

**THIRD CAUSE OF ACTION**
**PRIVATE NUISANCE**

182.    The allegations contained in paragraph "1" through "181" inclusive are hereby realleged as though more fully set forth herein.

183.    The acts and omissions of Defendants as alleged in this Complaint created a private nuisance through substantial and unreasonable interference with the use and enjoyment of Plaintiffs' property.

184.    Said nuisance continues to this day, and is likely to continue into the future without the issuance of an abatement order.

185.    As a proximate result, each Plaintiff and each infant Plaintiff, as set forth above, has been damaged in sums which exceed the jurisdictional limitations of all courts of limited jurisdiction.

## FOURTH CAUSE OF ACTION
### TRESPASS

186.    The allegations contained in paragraph "1" through "185" inclusive are hereby realleged as though more fully set forth herein.

187.    Through the acts and omissions of Defendants as alleged in this Complaint, the Defendants have intentionally taken actions which have caused contamination to spread from the their property, including the Love Canal site and the surrounding sewer system, to the property and homes of the Plaintiffs herein, and trespass upon the Plaintiffs' property and their homes.

188.    Said trespass continues to this day and is likely to continue into the future unless this Court issues an order of abatement.

189.    As a proximate result, each Plaintiff and each infant Plaintiff, as set forth above, has been damaged in sums which exceed the jurisdictional limitations of all courts of limited jurisdiction.

## FIFTH CAUSE OF ACTION (against OCCIDENTAL/HOOKER)
### NEGLIGENCE

190.    The allegations contained in paragraph "1" through "189" inclusive are hereby realleged as though more fully set forth herein.

191.    Between the years of approximately 1942 and 1953, Defendant OCCIDENTAL/HOOKER dumped more than 21,000 tons of toxic chemicals into the Love Canal site.

192.    To date, nearly 250 separate chemicals have been identified in the dump.

193.    Defendant OCCIDENTAL/HOOKER knew or should have known that the dumping of chemicals at the Love Canal site presented a serious risk of injury to persons and property.

{00011433}                                    37

194. Defendant OCCIDENTAL/HOOKER had a duty to warn Plaintiffs of the dangers to which they were exposed as a result of OCCIDENTAL/HOOKER's contamination of the Love Canal neighborhood.

195. Defendant OCCIDENTAL/HOOKER's negligence, carelessness or recklessness as set forth herein, directly and proximately caused the harm suffered by Plaintiffs, including harm to their persons, property and economic security, including the cost of future monitoring of the contamination created by the presxence of hazardous and toxic substances as well as the need for future monitoring of their health due to the increased risk of adverse health effects in the future.

196. As a proximate result, each Plaintiff and each infant Plaintiff, as set forth above, has been damaged in sums which exceed the jurisdictional limitations of all courts of limited jurisdiction.

### SIXTH CAUSE OF ACTION (against OCCIDENTAL/HOOKER) ABNORMALLY DANGEROUS ACTIVITY

197. The allegations contained in paragraph "1" through "196" inclusive are hereby realleged as though more fully set forth herein.

198. Defendant OCCIDENTAL/HOOKER knew or should have known that the dumping of more than 21,000 tons of chemical waste upon land in proximity to a residential area constituted an abnormally dangerous activity.

199. Defendant OCCIDENTAL/HOOKER also knew or should have known that, because the land upon which it dumped the contaminants was in proximity to what eventually became a residential area and a school building, that there was a likelihood that hazardous chemicals would escape into the homes and property of individuals living in the area.

{00011433}                              38

200.    Because Defendant OCCIDENTAL/HOOKER engaged in an abnormally

dangerous activity, it owed the highest duty of care to the Plaintiffs, which it breached, thereby

proximately causing injury to Plaintiffs, as more particularly described herein.

201.    Defendant OCCIDENTAL/HOOKER's activities presented a high degree of risk

of harm to the person and properties of Plaintiffs, and such harm has caused significant injury to

Plaintiffs.

202.    To the extent that Defendant OCCIDENTAL/HOOKER may have used

reasonable care in its dumping of hazardous chemicals onto the Love Canal site, it was unable to

eliminate the risk of contamination and harm to Plaintiffs through such exercise of reasonable

care.

203.    The operation of a hazardous waste site is not a matter of common usage, and the

manner in which Defendant OCCIDENTAL/HOOKER disposed of hazardous materials on the

Love Canal site, in proximity to a residential area, is and was inappropriate.

204.    As a result of Defendant OCCIDENTAL/HOOKER's engaging in such

abnormally dangerous activities, Plaintiffs sustained injury and suffered losses.

205.    As a proximate result, each Plaintiff and each infant Plaintiff, as set forth above,

has been damaged in sums which exceed the jurisdictional limitations of all courts of limited

jurisdiction.

### SEVENTH CAUSE OF ACTION (against OCCIDENTAL/HOOKER) PRIVATE NUISANCE

206.    The allegations contained in paragraph "1" through "205" inclusive are hereby

realleged as though more fully set forth herein.

207.    The acts and omissions of Defendant OCCIDENTAL/HOOKER in dumping

more than 21,000 tons of hazardous waste in proximity to a residential area, as alleged in this

{00011433}                              39

Complaint, created a private nuisance through substantial and unreasonable interference with the use and enjoyment of Plaintiffs' property.

208.    Said nuisance continues to this day, and is likely to continue into the future without the issuance of an abatement order.

209.    As a proximate result, each Plaintiff and each infant Plaintiff, as set forth above, has been damaged in sums which exceed the jurisdictional limitations of all courts of limited jurisdiction.

<u>**EIGHTH CAUSE OF ACTION (against OCCIDENTAL/HOOKER)**</u>
<u>**TRESPASS**</u>

210.    The allegations contained in paragraph "1" through "209" inclusive are hereby realleged as though more fully set forth herein.

211.    By dumping more than 21,000 of hazardous substances in the Love Canal area, Defendant OCCIDENTAL/HOOKER has intentionally taken actions which have caused contamination to spread from the Love Canal site to the property and homes of Plaintiffs herein, and trespass upon the Plaintiffs' property and their homes.

212.    Said trespass continues to this day and is likely to continue into the future unless this Court issues an order of abatement.

213.    As a proximate result, each Plaintiff and each infant Plaintiff, as set forth above, has been damaged in sums which exceed the jurisdictional limitations of all courts of limited jurisdiction.

<u>**NINTH CAUSE OF ACTION:  EQUITABLE RELIEF**</u>
<u>**MEDICAL MONITORING AND INJUNCTIVE RELIEF**</u>

214.    The allegations contained in paragraph "1" through "213" inclusive are hereby realleged as though more fully set forth herein.

{00011433}                          40

215.    As set forth above, at all relevant times herein, Defendants' wrongful conduct substantially and unnecessarily elevated Plaintiffs' likelihood of developing various severe latent illnesses, including but not limited to cancers, as a result of exposure to Love Canal toxins.

216.    As the foregoing paragraphs establish, Plaintiffs have each been exposed to toxic substances caused by each Defendant's misconduct, which exposure has resulted in an increased risk of a serious disease, illness or injury, for which a medical test for early detection of such serious disease, illness, or injury exists, and for which such early detection is beneficial, meaning that a treatment exists which can alter the course of the illness, which tests can be prescribed by a qualified physician.

217.    Upon information and belief, a proper medical monitoring program to provide these benefits requires the establishment of a proper medical monitoring regime and may not be remediated by a simple award of money damages.

218.    The well being of Plaintiffs requires the careful and ongoing study of the toxic exposures and resulting health effects caused by Defendants' wrongful conduct described in the preceding paragraphs.

219.    Accordingly, Plaintiffs also require as a remedy that Defendants fund a proper study of these health effects both to better accomplish abatement and remediation and also to enable Plaintiffs to take such steps as studies reveal necessary to protect and preserve their health.

220.    Accordingly, Plaintiffs require the establishment of an equitable remedy in the form of the establishment of a fund or trust to appropriately achieve such medical surveillance, abatement, and study.

## TENTH CAUSE OF ACTOIN
## LOSS OF COMPANIONSHIP SERVICES

221.    The allegations contained in paragraph "1" through "220" inclusive are hereby realleged as though more fully set forth herein.

222.    At all relevant times, Plaintiff JOANN ABBO-BRADLEY was and still is entitled to the comfort, society and companionship of the infant plaintiff DYLAN J. BRADLEY. By reason of the foregoing misconduct on the part of each of the Defendants, Plaintiff JOANN ABBO-BRADLEY has been deprived of the services, society, comfort, consortium, companionship and support of the infant plaintiff DYLAN J. BRADLEY and has suffered and will continue to suffer substantial economic damages and was otherwise damaged.

223.    At all relevant times, Plaintiff JOANN ABBO-BRADLEY was and still is entitled to the comfort, society and companionship of the infant plaintiff TREVOR A. BRADLEY.

224.    By reason of the foregoing misconduct on the part of each of the Defendants, Plaintiff JOANN ABBO-BRADLEY has been deprived of the services, society, comfort, consortium, companionship and support of the infant plaintiff TREVOR A. BRADLEY and has suffered and will continue to suffer substantial economic damages and was otherwise damaged.

225.    At all relevant times, Plaintiff JOANN ABBO-BRADLEY was and still is entitled to the comfort, society and companionship of the infant plaintiff CHASE Q. BRADLEY.

226.    By reason of the foregoing misconduct on the part of each of the Defendants, Plaintiff JOANN ABBO-BRADLEY has been deprived of the services, society, comfort, consortium, companionship and support of the infant plaintiff CHASE Q. BRADLEY and has suffered and will continue to suffer substantial economic damages and was otherwise damaged.

227.    At all relevant times, Plaintiffs ZACHARY and MELANIE HERR were and still are entitled to the comfort, society and companionship of the infant plaintiff COLETON HERR.

{00011433}                                    42

228.   By reason of the foregoing misconduct on the part of each of the Defendants, Plaintiffs ZACHARY and MELANIE HERR have been deprived of the services, society, comfort, consortium, companionship and support of the infant plaintiff COLETON HERR and have suffered and will continue to suffer substantial economic damages and was otherwise damaged.

229.   At all relevant times, Plaintiffs ZACHARY and MELANIE HERR were and still are entitled to the comfort, society and companionship of the infant plaintiff HEATHER HERR.

230.   By reason of the foregoing misconduct on the part of each of the Defendants, Plaintiffs ZACHARY and MELANIE HERR have been deprived of the services, society, comfort, consortium, companionship and support of the infant plaintiff HEATHER HERR and have suffered and will continue to suffer substantial economic damages and was otherwise damaged.

231.   At all relevant times, Plaintiffs NATHAN and ELENA KORSON were and still are entitled to the comfort, society and companionship of the infant plaintiff LOGAN J. KORSON.

232.   By reason of the foregoing misconduct on the part of each of the Defendants, Plaintiffs NATHAN and ELENA KORSON have been deprived of the services, society, comfort, consortium, companionship and support of the infant plaintiff LOGAN J. KORSON and have suffered and will continue to suffer substantial economic damages and was otherwise damaged.

233.   As a result of the foregoing, Plaintiffs JOANN ABBO-BRADLEY, ZACHARY HERR, MELANIE HERR, NATHAN KORSON, and ELENA KORSON have been damaged in

an amount to be determined by the jury at trial, but far in excess of the jurisdictional

requirements of all lower courts.

**PRAYOR FOR PUNITIVE DAMAGES AGAINST DEFENDANTS OCCIDENTAL
CHEMICAL CORPORATION, GLENN SPRINGS HOLDING, INC., CONESTOGA-
ROVERS & ASSOCIATES, CITY OF NIAGARA FALLS, AND NIAGARA FALLS
WATER BOARD**

234.    The allegations contained in paragraph "1" through "233" inclusive are hereby

realleged as though more fully set forth herein.

235.    The conduct of Defendant OCCIDENTAL/HOOKER in dumping more than

21,000 tons of toxic waste on land adjacent to a residential area was done with utter disregard to

the potential adverse health effects which could ensue.

236.    The conduct of Defendants OCCIDENTAL/HOOKER, GSH, CRA, CITY OF

NIAGARA FALLS, and NIAGARA FALLS WATER BOARD, in assuring the Plaintiffs that

they are at no risk of harm to their health and safety, when they knew or should have known that

exposure to the toxic chemicals as alleged herein in fact put the Plaintiffs at significant risk of

injury and disease, was done with the intention of attempting to avoid litigation and to be held

responsible for the contamination of the Plaintiffs' property and home, and the exposure of the

Plaintiffs to such hazardous chemicals, and was done with utter disregard to the potential adverse

health effects that could ensue.

237.    As a result of these activities as alleged hereinabove, Plaintiffs are entitled to

recover punitive damages in an amount to be determined by the finder of fact.

## AD DAMNUM

**WHEREFORE:**

Each of the plaintiffs separately demands compensatory damages in each of the above enumerated clams in amounts exceeding the jurisdictional limitations of all courts of lesser jurisdiction;

Each of the Plaintiffs separately demands equitable relief in the form of the establishment of a fund or trust to appropriately achieve such medical surveillance, abatement, and study;

Each of the Plaintiffs separately demands punitive and exemplary damages in an amount to be determined by the trier of fact;

Each of the Plaintiffs separately demands the recovery of costs, disbursements or any other elements of damages or expenses which might be recoverable as a matter of law and/or equity; and

Each of the Plaintiffs separately demands such other relief as to the Court may seem just and proper.

DATED:      New York, New York
            March 26, 2013

Yours, etc.,

By: _____

**PHILLIPS & PAOLICELLI, LLP**
Steven J. Phillips
Melissa L. Stewart
William H. Mack
380 Madison Avenue, 24th Floor
New York, New York 10027
Telephone: (212) 388-5100

{00011433}                    45

**WATERS & KRAUS, LLP**
Peter Kraus (*pro hac vice* pending)
Charles Siegel (*pro hac vice* pending)
3219 McKinney Avenue
Dallas, Texas 75204
Telephone: (214) 357-7252

**FANIZZI & BARR, PC**
Paul K. Barr
2303 Pine Avenue
Niagara Falls, NY 14301
Telephone: (716) 284-8888

**CHRISTEN CIVILETTO MORRIS, ESQ.**
8313 West Point Drive
East Amherst, New York  14051
(716) 741-8555

Attorneys for Plaintiffs

**AFFIDAVIT OF SERVICE**

STATE OF NEW YORK, COUNTY OF NEW YORK ss.:

      Molly McLaughlin, being duly sworn, deposes and says: I am an employee of Phillips & Paolicelli LLP, the attorneys for plaintiff in the within action.   I served a true copy of the annexed

           **FIRST AMENDED COMPLAINT**

      On March 26, 2013 by depositing a true copy thereof enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State, addressed to each of the following persons at the last known address set forth after each name:

TO:

Jeffrey C. Stravino, Esq.
Hodgson, Russ, LLP
ATTORNEY FOR DEFENDANT
140 Pearl Street, Suite 100
The Guaranty Building
Buffalo, New York 14202

Jeffrey F. Baase, Esq.
Rupp, Baase, Pfalzgraf,
Cunningham & Coppola, LLC
ATTORNEY FOR DEFENDANT
1600 Liberty Building
Buffalo, New York 14202

Kevin M. Hogan, Esq.
Phillips, Lytle, LLP
ATTORNEY FOR DEFENDANT
3400 HSBC Center
Buffalo, New York 14203

Douglas A. Janese, Jr.
Assistant Corporation Counsel
ATTORNEY FOR DEFENDANT
City Hall, 745 Main Street
PO BOX 69
Niagara Falls, NY 14302

Sworn to before me on the
26th day of March, 2013

Notary Public

Molly McLaughlin

EILEEN HAUGH
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01HA6200802
Qualified in Queens County
Commission Expires Feb. 9, 2017

{00012204}