# EXHIBIT
# 5

**ORIGINAL FILED**

STATE OF NEW YORK
SUPREME COURT: COUNTY OF NIAGARA

FEB 0 7 2014

WAYNE F. JAGOW
NIAGARA COUNTY CLERK

JOANN ABBO-BRADLEY, Individually and as
Parent and Natural Guardian of
DYLAN J. BRADLEY, TREVOR A. BRADLEY
and CHASE Q. BRADLEY, Infants;
ZACHARY and MELANIE HERR,
Individually and as Parent and Natural Guardian
of COLETON HERR and HEATHER HERR, Infants;
NATHAN E. and ELENA KORSON,
Individually and as Parent and Natural Guardian of            **ORDER**
LOGAN J. KORSON, an Infant,

                    Plaintiffs,                          Index No. 146816

            v.

CITY OF NIAGARA FALLS; NIAGARA FALLS
WATER BOARD; GLENN SPRINGS HOLDINGS, INC.;
CONESTOGA-ROVERS & ASSOCIATES;
CECOS INTERNATIONAL, INC.; EDWARD S. ROBERTS;
GROSS PHC LLC; KANDEY COMPANY, INC.;
MILLER SPRINGS REMEDIATION MANAGEMENT, INC.;
OCCIDENTAL PETROLEUM CORPORATION (HOOKER),
Individually and as Successor in Interest to
Hooker Chemicals and Plastics Corporation;
OXY, INC., f/k/a OCCIDENTAL CHEMICAL CORPORATION,
Individually and as Successor in Interest to
Hooker Chemicals and Plastics Corporation;
OP-TECH ENVIRONMENTAL SERVICES;
ROY'S PLUMBING, INC.; SCOTT LAWN YARD, INC.;
and SEVENSON ENVIRONMENTAL SERVICES, INC.,

                    Defendants.

WHEREAS, defendants Glenn Springs Holdings, Inc. ("GSH"), Miller Springs

Remediation Management, Inc. ("MSRM"), and Occidental Chemical Corporation ("OCC"),

have moved this Court, pursuant to N.Y. C.P.L.R. § 3211(a)(7), for an Order dismissing

plaintiffs' Amended Complaint, dated March 26, 2013, on grounds that the pleading fails to state

a cause of action in compliance with the pleading requirements of N.Y. C.P.L.R. §§ 3013 and

3016(b); and

{00015908}

WHEREAS, defendant City of Niagara Falls (the "City") has moved this Court, pursuant to N.Y. C.P.L.R. § 3211(a)(7), for an Order dismissing plaintiffs' Amended Complaint, dated March 26, 2013, on grounds that the pleading fails to state a cause of action in compliance with the pleading requirements of N.Y. C.P.L.R. §§ 3013 and 3016(b); and

WHEREAS, defendant Op-Tech Environmental Services ("Op-Tech") has moved this Court, pursuant to N.Y. C.P.L.R. § 3211(a)(7), for an Order dismissing plaintiffs' Amended Complaint, dated March 26, 2013, on grounds that the pleading fails to state a cause of action in compliance with the pleading requirements of N.Y. C.P.L.R. §§ 3013 and 3016(b); and

WHEREAS, defendant Scott Law Yard, Inc. ("Scott") has moved this Court, pursuant to N.Y. C.P.L.R. § 3211(a)(7), for an Order dismissing plaintiffs' Amended Complaint, dated March 26, 2013, on grounds that the pleading fails to state a cause of action in compliance with the pleading requirements of N.Y. C.P.L.R. §§ 3013 and 3016(b); and

WHEREAS, defendant Gross PHC LLC ("Gross") has moved this Court, pursuant to N.Y. C.P.L.R. § 3211(a)(7), for an Order dismissing plaintiffs' Amended Complaint, dated March 26, 2013, on grounds that the pleading fails to state a cause of action in compliance with the pleading requirements of N.Y. C.P.L.R. §§ 3013 and 3016(b); and

WHEREAS, defendant Sevenson Environmental Services ("Sevenson") has moved this Court, pursuant to N.Y. C.P.L.R. § 3211(a)(7), for an Order dismissing plaintiffs' Amended Complaint, dated March 26, 2013, on grounds that the pleading fails to state a cause of action in compliance with the pleading requirements of N.Y. C.P.L.R. §§ 3013 and 3016(b); and

WHEREAS, defendant Roy's Plumbing, Inc. ("Roy's") has moved this Court, pursuant to N.Y. C.P.L.R. § 3211(a)(7), for an Order dismissing plaintiffs' Amended Complaint,

dated March 26, 2013, on grounds that the pleading fails to state a cause of action in compliance with the pleading requirements of N.Y. C.P.L.R. §§ 3013 and 3016(b); and

WHEREAS, a portion of the foregoing motions was decided at a Special Term of the Supreme Court, County of Niagara, in the City of Lockport, New York, on December 16, 2013, and the remainder of the motions was reserved for future decision or other action.

NOW, upon consideration of all papers, pleadings, and materials submitted by the parties, as well as all arguments presented at the hearing on the motions, it is hereby

ORDERED, that:

1.     The motions of GSH, MSRM, OCC, the City, Op-Tech, Scott, Gross, Sevenson and Roy's are granted, to the extent that the Tenth Cause of Action in the Amended Complaint, entitled "Loss of Companionship Services" is dismissed and should be struck from the Amended Complaint; and,

2.     Plaintiffs shall have thirty (30) days from the date of the above-referenced hearing to file a Second Amended Complaint that addresses the remaining issues raised by Defendants in their motions to dismiss. Accordingly, a decision of the Court with respect to all other aspects of the motions is hereby reserved and those motions are hereby held in abeyance, pending a further written decision of the Court or action by the parties.

Hon. Richard C. Kloch, Sr., A.J.S.C.

ENTERED:

**GRANTED**

Doc #01-2741552.1

JAN **2 9** 2014

BY
NICOLE SCHUG
COURT CLERK

{00015908}                              - 3 -

STATE OF NEW YORK
SUPREME COURT : COUNTY OF NIAGARA

**ORIGINAL FILED**

FEB 0 7 2014

**WAYNE F. JAGOW
NIAGARA COUNTY CLERK**

JOANN ABBO-BRADLEY, Individually and as
Parent and Natural Guardian of
DYLAN J. BRADLEY, TREVOR A. BRADLEY
and CHASE Q. BRADLEY, Infants;
ZACHARY and MELANIE HERR,
Individually and as Parent and Natural Guardian
of COLETON HERR and HEATHER HERR, Infants;
NATHAN E. and ELENA KORSON,
Individually and as Parent and Natural Guardian of
LOGAN J. KORSON, an Infant,

**ORDER**

           Plaintiffs,

Index No. 146816

      v.

CITY OF NIAGARA FALLS; NIAGARA FALLS
WATER BOARD; GLENN SPRINGS HOLDINGS, INC.;
CONESTOGA-ROVERS & ASSOCIATES;
CECOS INTERNATIONAL, INC.; EDWARD S. ROBERTS;
GROSS PHC LLC; KANDEY COMPANY, INC.;
MILLER SPRINGS REMEDIATION MANAGEMENT, INC.;
OCCIDENTAL PETROLEUM CORPORATION (HOOKER),
Individually and as Successor in Interest to
Hooker Chemicals and Plastics Corporation;
OXY, INC., f/k/a OCCIDENTAL CHEMICAL CORPORATION,
Individually and as Successor in Interest to
Hooker Chemicals and Plastics Corporation;
OP-TECH ENVIRONMENTAL SERVICES;
ROY'S PLUMBING, INC.; SCOTT LAWN YARD, INC.;
and SEVENSON ENVIRONMENTAL SERVICES, INC.,

         Defendants.

WHEREAS, defendants Glenn Springs Holdings, Inc. ("GSH"), Miller Springs

Remediation Management, Inc. ("MSRM"), and Occidental Chemical Corporation ("OCC"),

joined by defendants Cecos International, Inc. ("Cecos"), Sevenson Environmental Services, Inc.

("Sevenson"), Scott Lawn Yard, Inc. ("Scott"), and Op-Tech Environmental Services ("Op-

Tech"), have moved this Court pursuant to N.Y. C.P.L.R. § 3211(a)(10), for an Order dismissing

plaintiffs' request for an abatement order in the Amended Complaint, dated March 26, 2013, on

grounds that the United States Environmental Protection Agency is a necessary party that is not

subject to this Court's jurisdiction. The motion was heard and decided during a Special Term of

the Supreme Court, County of ~~Erie~~ Niagara, at the Niagara County Courthouse in the City of Lockport,

New York, on December 16, 2013.

      NOW, upon consideration of all the papers, pleadings, and material submitted by

the parties, as well as all arguments presented at the hearing on the motion, it is hereby

      ORDERED, that:

      1.    The motion of GSH, MSRM, and OCC (joined by Cecos, Sevenson, Scott,

and Op-Tech) is granted; and,

      2.    Plaintiffs' request for an abatement order is dismissed.

Hon. Richard C. Kloch, Sr., A.J.S.C.

ENTERED:

**GRANTED**

JAN **2 9** 2014

Doc #01-2741546.1

BY

NICOLE SCHUG
COURT CLERK

- 2 -

1

```
 1   STATE OF NEW YORK  :   COUNTY OF NIAGARA
     SUPREME COURT
 2   --------------------------------------------------
     JOANN ABBO-BRADLEY, Individually and as Parent and
 3   Natural Guardian of DYLAN J. BRADLEY,
     TREVOR A. BRADLEY and CHASE Q. BRADLEY, infants;
 4   ZACHARY AND MELANIE HERR, Individually and as
     Parent and Natural Guardian of COLETON HERR and
 5   HEATHER HERR, infants;
     NATHAN E. AND ELENA KORSON, Individually and as Parent
 6   and Natural Guardian of LOGAN J. KORSON, infant,
                         Plaintiffs,
 7
             -vs-               INDEX # 146816
 8
     CITY OF NIAGARA FALLS;
 9   NIAGARA FALLS WATER BOARD;
     GLENN SPRINGS HOLDINGS, INC.;
10   CONESTOGA-ROVERS and ASSOCIATES;
     CECOS INTERNATIONAL, INC.;
11   EDWARD S. ROBERTS;
     GROSS PHC LLC;
12   KANDEY COMPANY, INC.;
     MILLER SPRINGS REMEDIATION MANAGEMENT, INC.;
13   OCCIDENTAL PETROLEUM CORPORATION (HOOKER),
     Individually and as Successor in Interest
14   to Hooker Chemicals and Plastics Corporation;
     CXY, INC., f/k/a OCCIDENTAL CHEMICAL CORPORATION,
15   Individually and as Successor in Interest
     to Hooker Chemicals and Plastics Corporation;
16   OP-TECH ENVIRONMENTAL SERVICES;
     ROY'S PLUMBING, INC.;
17   SCOTT LAWN YARD, INC.;
     and SEVENSON ENVIRONMENTAL SERVICES, INC.,
18                      Defendants.
     --------------------------------------------------
19                  175 Hawley Street
                    Lockport, New York
20                  December 16, 2013

21   B E F O R E:
                    HONORABLE RICHARD C. KLOCH, SR.
22                  Acting Supreme Court Justice

23

24

25
```

LISA A. MULLANE
OFFICIAL SUPREME COURT REPORTER

```
 1  A P P E A R A N C E S:

 2              WILLIAM H. MACK, ESQ.,
                Appearing for the Plaintiffs.
 3
                PAUL BARR, ESQ.,
 4              Appearing for the Plaintiffs.

 5              CHRISTEN CIVILETTO MORRIS, ESQ.,
                Appearing for the Plaintiffs.
 6
                KEVIN M. HOGAN, ESQ.,
 7              DOUGLAS E. FLEMING, III, ESQ.,
                ANTHONY L. YOUNG, ESQ.,
 8              and SHEILA BIRNBAUM, ESQ.,
                Appearing for Defendants GSH, MSRM,
 9              Occidental Petroleum Corporation and Oxy, Inc.

10              DOUGLAS JANESE, ESQ.,
                and THOMAS O'DONNELL, ESQ.,
11              Appearing for Defendant City of Niagara Falls.

12              JEFFREY F. BAASE, ESQ.,
                Appearing for Defendant Niagara Falls
13              Water Board.

14              JEFFREY C. STRAVINO, ESQ.,
                Appearing for Defendant Conestoga-Rovers.
15
                NELSON PEREL, ESQ.,
16              and RUSSELL EGGERT, ESQ.,
                Appearing for Defendant Cecos International.
17
                PATRICIA S. CICCARELLI, ESQ.,
18              Appearing for Defendant Gross PHC, LLC.

19              JEFFREY D. SCHULMAN, ESQ.,
                Appearing for Defendant OP-Tech.
20
                ROBERT E. KNOER, ESQ.,
21              Appearing for Defendant Roy's Plumbing, Inc.

22              BRIAN SUTTER, ESQ.,
                Appearing for Defendant Scott Lawn Yard, Inc.
23
                DAVID R. ADAMS, ESQ.,
24              Appearing for Defendant Sevenson.

25
```

LISA A. MULLANE
OFFICIAL SUPREME COURT REPORTER

1           THE CLERK:  Index number 146816, Abbo-Bradley

2      et al, versus City of Niagara Falls, Niagara Falls Water

3      Board, et al.

4           Please note your appearances for the record,

5      beginning with Plaintiffs' attorneys.

6           MR. MACK:  Morning, your Honor.  William Mack

7      from Phillips and Paolicelli for the Plaintiffs.

8           MR. BARR:  Paul Barr with Fanizzi and Barr for

9      the Plaintiffs.

10           MS. MORRIS:  Christen Morris for the

11      Plaintiffs.

12           MR. HOGAN:  Your Honor, for Defendants

13      Occidental, Glenn Springs and Miller Springs, Kevin Hogan

14      from Phillips Lytle.

15           MR. FLEMING:  Doug Fleming from Quinn Emanuel,

16      also for Occidental, Glenn Springs and Miller Springs.

17           THE COURT:  Morning.

18           MR. EGGERT:  Morning, your Honor.  For the

19      Defendant Cecos, Russ Eggert.

20           MR. PEREL:  Nelson Perel from Webster Szanyi

21      for Cecos.

22           MR. KNOER:  Robert Knoer for Roy's Plumbing,

23      Inc.

24           MR. SCHULMAN:  Jeff Schulman for Op-Tech

25      Environmental.

1          MR. YOUNG:  Tony Young, Kleinfeld, Kaplan and

2     Becker for Occidental, Miller Springs, Glenn Springs.

3          MS. BIRNBAUM:  Sheila Birnbaum, Quinn Emanuel

4     for Oxy.

5          MS. CICCARELLI:  Patricia Ciccarelli for Gross

6     PHC.

7          MR. ADAMS:  David Adams for Sevenson.

8          MR. SUTTER:  Brian Sutter for Scott Lawn.

9          MR. BAASE:  Jeff Baase, Niagara Falls Water

10    Board.

11         MR. JANESE:  Doug Janese and Tom O'Donnell for

12    the City of Niagara Falls.

13         MR. STRAVINO:  Jeff Stravino for Conestoga

14    Rovers and Associates.

15         THE COURT:  Okay.  Let's deal with the most

16    interesting aspect of this, first of all.  And before I

17    even get there, I should say I'm glad that all of the

18    out-of-town attorneys made it in.  I was really concerned

19    Thursday and Friday, knowing that we were going to have

20    some bad snow history and we did.  But it -- it cleared

21    up.  God must like Love Canal suits because it cleared up

22    beautiful for counsel to drive in.  I hope you guys have

23    a safe drive back.

24         But the most interesting aspect, I think, of

25    this is the motions to dismiss the relief or the cause of

1    action dealing with the abatement relief.  And on that, I

2    really do need some -- some argument.

3            You know, one thing, as you know, from --

4    particularly attorneys from Buffalo who appear here more

5    regularly, a lot of times I come out and have a decision

6    already made.  And it may be frustrating to counsel.  But

7    on this, I think I do need arguments as far as the

8    abatement, request to dismiss those cause of actions.

9            And I guess I'll just pose these questions to

10   -- to the Plaintiffs' side and see if you can respond

11   and give me some guidance here.  Now, there's no question

12   -- and I understand that there's -- there's two separate

13   main issues or themes that run through this litigation;

14   that is, the chronic exposure that occurred allegedly to

15   the Plaintiffs over a period of time and the acute

16   exposure that was related to that January 11 incident,

17   okay.

18           Let's put off the January 11 incident for the

19   time being and deal just with the chronic exposure

20   issue.  Now, as I understand it with the chronic

21   exposure, the Plaintiffs are claiming that since, really,

22   the first toxic waste was put into the Love Canal and

23   when it was sealed and when it started to migrate, that

24   harm and that -- that wrong is continuing to today and

25   that's what's causing the chronic exposure.  Right?

LISA A. MULLANE
OFFICIAL SUPREME COURT REPORTER

1    MR. MACK:  That's correct, your Honor.  That's

2    our position today.

3    THE COURT:  All right.  So, when I -- and I

4    think I -- I posed this question -- in fact, I think I

5    have it, yes, here I do, I think I posed this last time,

6    at the end of the last time we were here.  I said how am

7    I to provide for an order on the abatement claim?  Are

8    not EPA and DEC necessary parties?  That's where I came

9    -- right away my thought process, how can I do this

10   abatement ruling without the EPA and DEC being here and

11   without it being in the federal court, since they were

12   the -- the court where the order -- the consent judgment

13   came down? It seems to me it should be there.

14   Just for my own, you know, interest, why did

15   you oppose the defense request to move it there?  What

16   was the tactical advantage?

17   MR. MACK:  Well, your Honor, when we filed this

18   litigation, we made certain tactical determinations and

19   we --

20   THE COURT:  That's why I'm asking, what was the

21   tactical consideration that you wouldn't want it to be in

22   federal court?

23   MR. MACK:  Because this is a state court tort

24   action.  And we felt our clients' interests would be best

25   served before your Honor and before the Supreme Court of

1    the State of New York.

2           THE COURT:  Okay.  But --

3           MR. MACK:  We don't feel there are any federal

4    issues here whatsoever.  And we felt the federal court

5    was an inappropriate forum even for us to bring the case

6    there in the first place.

7           THE COURT:  Okay.  But what about the abatement

8    relief?  If -- as I just, you know, set forth to you, the

9    real gravamen of your complaint is that -- is this toxic

10   waste is continuing to migrate from the Love Canal into

11   your -- your homes, your clients' homes and causing

12   damage.  That's the nature of your complaint.

13          And I -- and I got it when I read your

14   answering papers saying you misunderstand.  By the way,

15   you could be a great appellate court because that's what

16   they always say, you people misunderstand.  You say we

17   just want it abated in our homes.

18          But if it's continuing to migrate, won't it

19   continue to migrate?  Wouldn't you have to abate it,

20   like, constantly?  Wouldn't -- what are -- are you

21   suggesting independent containment systems around every

22   individual home in and around the Love Canal

23   neighborhood?

24          MR. MACK:  Well, your Honor, I don't think as

25   we sit here today on a motion to dismiss that we can know

1 what type of abatement and -- well, I'll use the word

2 remediation of our clients' homes and properties will be

3 sufficient to protect them from the -- in the future.

4    THE COURT:  If I can cut you off there, because

5 this is oral argument, doesn't that mean by necessity

6 that it might very well be the containment that would

7 involve an alteration of the consent judgment and involve

8 EPA by its very nature?  If you don't know, then it could

9 possibly involve EPA and the consent judgment.

10    MR. MACK:  Well, I think, your Honor, in that

11 -- if that were the case, and I -- I think it's equally

12 likely if not more so that remediation and protection can

13 be achieved through some cleansing or cleaning of the

14 Plaintiffs' homes in particular.  Accepting for purposes

15 of this argument your hypothetical --

16    THE COURT:  Well, isn't that just damages? I

17 mean, can't you very well say, listen, we have our --

18 we're going to call our next witness and our next witness

19 is a expert in environmental clean-up.  And -- and this

20 person comes on the stand and you have him testify to the

21 fact that it's going to take a certain procedure and

22 certain operations and construction, remediation in a

23 client's home in order to purify it, if you would,

24 cleanse it from the contamination and stop it from

25 happening again at that location, whether it's valves,

1      check valves on sewer systems or I don't know what it
2      would be.  Again, we're not in that area.  And that could
3      be related to a dollar figure; dollars and cents, right?
4              MR. MACK:  It could.  But your Honor, we don't
5      think that our clients should have to undertake the
6      responsibility to clean their homes of something they
7      didn't put there in the first place.
8              THE COURT:  Well, but your -- your -- your
9      complaint speaks to the distress that is -- is afforded
10     all of these Plaintiffs because the government just
11     doesn't get it right.  They're continuing to provide for
12     this migration of toxic waste.  They misinformed and lied
13     to these people.  And now you're going to want them to
14     come into their homes and construct some type of
15     containment system or remediation project in the home?
16              I -- do they really -- is that really a way of
17     handling these suits?
18              MR. MACK:  Well, I think that the precise way
19     that the homes can be sufficiently abated will become
20     clear as the litigation proceeds and as we hear expert
21     testimony.  And to the extent your Honor seems to be
22     concerned about the presence of the EPA or the DEC --
23              THE COURT:  Well, there is a consent judgment.
24              MR. MACK:  Yes.
25              THE COURT:  And -- and one of the -- the part

1    -- a number of the parties here are parties to that

2    consent judgment.

3         MR. MACK:  Yes.  And -- and to the extent that

4    the involvement of the EPA or DEC would be implicated by

5    the, you know, appropriate abatement of our clients'

6    homes, that may very well be beyond the jurisdiction of

7    this Court and we're not asking the Court to go there.

8         THE COURT:  Well, that's the -- that's the --

9    that's right -- we're there.  That's the million dollar

10   answer.

11        MR. MACK:  But that's --

12        THE COURT:  It's beyond the jurisdiction of

13   this Court.

14        MR. MACK:  And that's why we made that

15   concession in our papers and we're not asking the Court

16   to go there.  If -- if the DEC and the EPA decide, and we

17   think they should, to take a look at the containment

18   system as a matter of their public obligations to protect

19   the community that they're charged with doing, that's

20   something that they should do.

21        You know, I think we've conceded in our papers

22   we can't force them to do that here in this court and

23   that's not what we're asking for.  We're merely asking

24   for our clients' homes to be cleaned.

25        THE COURT:  Well, you're asking for the

LISA A. MULLANE
OFFICIAL SUPREME COURT REPORTER

1    Defendants here to abate the nuisance, the migration.

2    And it may very well throw them into conflict with a

3    consent judgment that is in existence and is a reality.

4    That's why it should be in a location that can deal with

5    it effectively.

6         And I know -- you know, I wonder why Judge

7    Curtin would not keep it.  Then as I read his decision,

8    the one particular part where -- let me see if I can find

9    it quickly.  Even -- page sixteen of his decision:  In

10   any event, as discussed, CERCLA does not completely

11   preempt Plaintiffs' nuisance or trespass claims or

12   otherwise foreclose Plaintiffs from relying on common law

13   theories for the relief they seek.  He's saying money

14   damages.  You can get money damages.  You can deal with

15   this.

16        There's no indication that EPA is unhappy with

17   the containment system.  It's working properly.  This

18   federal defense, as he calls it, can be raised to deal

19   with the state law claims.  So, you know, but if I'm

20   wrong, if the Plaintiffs are correct, then money damages

21   can deal with this.

22        So, why do we need an equitable relief stated?

23   Why do we even need it?  Why don't we just strike it? If

24   you want -- if you can prove your damages, you should

25   prove them and get -- get your -- your damages in money

1    form.

2          MR. MACK:  Well, your Honor, in that

3    circumstance -- one problem that comes to mind with that

4    circumstance is that our clients are merely private

5    citizens who may not have the technical wherewithal to

6    receive an amount of money damages and then know what to

7    do with it in order to make their homes safe.  Whereas

8    the Defendants, many of them possess a lot of technical

9    know-how.  And if -- if, you know, they're forced to

10    render our clients's home safe, then they're in a much

11    better position to do this than we are.  That's -- that's

12    why money damages would be insufficient.

13          THE COURT:  But your complaint goes paragraph

14    and paragraph indicating that the problem is the

15    containment system, is a continuous migration of toxic

16    waste from the Love Canal.  Paragraph ninety:  Defendants

17    were also otherwise negligent in the design,

18    implementation and construction of infrastructure in

19    connection with the Love Canal remediation.

20          Paragraph ninety-seven:  Thus, upon information

21    and belief, the remediation program did not prevent the

22    toxins within the -- within the Love Canal containment

23    area from spreading throughout the Love Canal

24    neighborhood from the time of its inception up to and

25    including the present day, right now as we speak.  If

1  you're right, they're continuing to provide for migration

2  into the neighborhood.

3       One twenty-five:  Love Canal toxins should not

4  have been present in the area sewer lines to begin with,

5  particularly because -- and then going down to

6  subparagraph two -- Defendant should have discharged

7  their duties to adequately remediate and/or contain such

8  materials within the Love Canal containment area from the

9  time of the original Love Canal clean-up and continuing

10  to the present date.

11       Paragraph one thirty-eight and one

12  thirty-nine:  Although both state and federal authorities

13  ordered the Love Canal area to be environmentally

14  remediated, at present times the toxins that Defendant

15  Occidental slash Hooker wrongfully dumped on the site

16  continue to escape from the Love Canal containment area

17  and systemically invade the adjacent neighborhoods,

18  including the homes of Plaintiffs.

19       The original Love Canal remediation thus was

20  insufficient and/or negligently performed by Defendants

21  insofar as such remediation did not prevent the continued

22  escape of chemicals from the site.  Everything in your

23  complaint points to the failure of the containment

24  system, which is part of the consent judgment and which

25  this Court really, as you just indicated earlier, does

LISA A. MULLANE
OFFICIAL SUPREME COURT REPORTER

1    not have jurisdiction over.

2            Why should we deal with that part or that

3    relief sought in this Court?

4            MR. MACK:  Well --

5            THE COURT:  Get thee to federal court.

6            MR. MACK:  Well, your Honor, again, the -- the

7    provisions in paragraphs from the first amended complaint

8    that the Court has referred to are -- are meant to

9    illustrate the systemic ongoing problem in this community

10    going to the public health.  And, you know, yet at the

11    same time, again, there's no specific request in the

12    complaint for any modification to that containment

13    system, whatever we think about it.  We don't think it

14    works, but we're not asking you to do anything.

15            THE COURT:  You asked for abatement of the

16    nuisance -- of the nuisance.

17            MR. MACK:  Of our clients' homes, which has

18    nothing to do with the containment.

19            THE COURT:  It doesn't say that.  I can read

20    your complaint here.  Addendum clause -- and I believe

21    that -- Mr. Hogan, do you have it at your fingertips?

22            MR. HOGAN:  Well, Judge, it's found in a

23    variety of places, but I don't think it's necessarily in

24    the addendum clause.

25            THE COURT:  I'll get it quickly here.

1        MR. HOGAN:  You're --

2        MR. FLEMING:  Paragraph six, your Honor --

3        THE COURT:  I'm trying to find the actual --

4        MR. FLEMING:  -- states an abatement with

5   contamination within, around and under their properties.

6   Paragraph one sixty-nine G alleges that the Defendants

7   were negligent for taking no action to abate or otherwise

8   stop the pollution and contamination of the surrounding

9   area.

10       It seems to me Plaintiffs can't have it both

11  ways.  They can't come in and complain that the entire

12  landfill containment system is failing and then say,

13  well, you know what, we really only want an abatement of

14  our property.  I mean, if their whole claim, the whole

15  premise of their case is that -- of this chronic exposure

16  case is that the source is coming from the Love Canal

17  containment, how can you abate their property only?

18       THE COURT:  You, of course, are saying it more

19  eloquently than me.  I found the part of the addendum

20  clause saying each of the Plaintiffs separately demands

21  equitable relief in the form of the establishment of a

22  fund or trust to appropriately achieve such medical

23  surveillance.  Okay, fine, abatement and study.  And

24  there's no limitation on that request for abatement.

25       MR. FLEMING:  That's right, your Honor.  Again,

1  it's very curious that Plaintiffs make these sensational

2  charges in this case, in the press.  And if they're going

3  to come in and claim that the Love Canal containment

4  system is failing --

5      THE COURT:  Which they have factually.

6      MR. FLEMING:  -- causing an ongoing public

7  health catastrophy in the neighborhood of tens of

8  thousands of people, why is it they don't want the EPA

9  here to deal with that claim?  Why is it?  And you

10 haven't heard an answer to that question.  I had my

11 suspicions about it.  But the EPA needs to be here if

12 they're going to make those kinds of claims and I think

13 your Honor is exactly correct.

14     THE COURT:  They need to be involved.

15     MR. FLEMING:  Correct.

16     THE COURT:  They don't need to be here.

17     MR. FLEMING:  They can't be here.  They need to

18 go to federal court.  They need to be in these

19 proceedings.

20     MR. MACK:  Your Honor, the EPA is fully aware

21 of what's going on here and of the allegations that we've

22 made.  And it's incumbent upon them to act, should they

23 choose to do so, in -- in furtherance of their duties

24 toward the public health.  We think they should.

25     The -- and the other point I'd like to make,

LISA A. MULLANE
OFFICIAL SUPREME COURT REPORTER

1   Judge, is that indeed I think if we were to drill down on
2   the -- the -- what is this, the ROD, it -- it certainly
3   is the case that much of what we're dealing with here is
4   beyond the ROD.  I don't have precise citations for you
5   here as we stand here today.  But.....

6           THE COURT:  Well, you know, I think it's self
7   evident that -- how I feel about that.  So, Mr. Hogan,
8   your motion -- and the other parties, the motion is
9   granted to the extent of striking.  And I'm going to try
10  to be a little precise in this language.  Maybe you can
11  draft it up better.  Because I know there will be a
12  dispute over the order, unfortunately.

13          But motion is granted to the extent of striking
14  the request of the equitable relief of abatement.  In any
15  other respects, the motions in that area are denied.

16          Okay.  All right.  Now, while we're dealing
17  with this, no -- no objection to the loss of consortium
18  claim of minor child, not recognized in the state.  The
19  loss of consortium claims for the minor child -- minor
20  child.

21          MR. MACK:  Non-pecuniary.

22          THE COURT:  Well, any consortium claim.  When
23  you say non-pecuniary, what do you mean?

24          MR. MACK:  I'm talking about pecuniary loss of
25  services.

LISA A. MULLANE
OFFICIAL SUPREME COURT REPORTER

1           THE COURT:  Yes.

2           MR. MACK:  Yeah.

3           THE COURT:  Yeah.  The lost consortium claim is

4   -- is -- is not recognized in the state, you would

5   concede that.

6           MR. MACK:  We do, your Honor.

7           THE COURT:  Okay.  So, that, as well, is

8   granted.

9           Okay.  Now, let's with that -- I think, Mr.

10  Hogan, that expresses your full request, right? Cecos has

11  some additional, we'll deal with that in a while.

12          MR. HOGAN:  No, there was more to our motion.

13          THE COURT:  What else?

14          MR. HOGAN:  Our motion also sought to dismiss

15  the complaint.  The lost consortium portion was the last

16  of the, say, four or five --

17          THE COURT:  Well, that's granted.

18          MR. HOGAN:  -- grounds.  We sought from the

19  Court the dismissal of the complaint for its failure to

20  include allegations that specifically advise each

21  Defendant of the harmful or negligent conduct.

22          THE COURT:  That's why I denied that.  I think

23  it's sufficient.  You know what they're claiming.  You

24  know what their claim is.  Certainly in regard to the

25  acute exposure, they're saying on January 11th --

LISA A. MULLANE
OFFICIAL SUPREME COURT REPORTER

1     although I wonder about that.  What exactly happened when

2     the sewer work was being performed?  Did substances ooze

3     up and spill out and go running down the street?

4             MR. HOGAN:  Well, their complaint contains some

5     allegations of that type.  To give you just --

6             THE COURT:  Well, then, you know what they're

7     talking about.

8             MR. HOGAN:  Well, that's right, Judge.  To give

9     you some history here, this lawsuit commenced with a

10    complaint that only contained the acute exposure claims

11    related to that.

12            THE COURT:  I understand that.

13            MR. HOGAN:  And there was no motion to

14    dismiss.  And then after some new counsel were

15    substituted, a motion for leave to amend to raise the

16    chronic claims was added.  And it's in the face of that

17    that the motion to dismiss is brought.

18            And the motion to dismiss is really targeting

19    the lumping together.  Remember we went from four

20    Defendants to fifteen Defendants and from a two-month

21    period of conduct to a four or five-decade period of

22    conduct, without any allegations identifying Glenn

23    Springs, what did you do wrong.  In fact, there's only

24    two allegations that refer to Glenn Springs, its

25    corporate affiliation and its assumption of the

1       monitoring obligations.

2               THE COURT:  Mr. Hogan, as I sit here now, how

3       do I know that they're not correct, even though they

4       won't go to federal court and litigate it, that the

5       containment system as designed and implemented and

6       monitored is not ineffective?  How do I know that?

7               MR. HOGAN:  And they have a right to come here

8       and prove it.  And you and I and I don't think anyone

9       else here knows whether they will be able to do that or

10      not.

11              What we have the right to, though, is a better

12      pled complaint, a complaint that says Glenn Springs, this

13      is what you did, Cecos, this is what you did, Sevenson,

14      this is what you did.  But not one that says it's -- it's

15      a res ipsa loquitur-esque, we claim the landfill is

16      failing.  We claim to have been exposed and we've

17      identified fifteen Defendants.  But we are stopping short

18      of identifying what each Defendant has done wrong.

19              THE COURT:  Well, as far as your corporate

20      entities who have been around longer than God, you know,

21      you -- it's not a problem.

22              MR. HOGAN:  Only -- and you know, to the extent

23      that the complaint contains an allegation that Occidental

24      disposed of waste in that landfill in the forties and

25      fifties, I'm not saying that those allegations are

LISA A. MULLANE
OFFICIAL SUPREME COURT REPORTER

1    insufficient.  But that's the only Defendant of the

2    fifteen that has an actual allegation of harm --

3            THE COURT:  Well, I agree with you as far as

4    the chronic.

5            MR. HOGAN:  -- or harmful conduct.

6            THE COURT:  Let's deal with Scott Lawn.  Let's

7    deal with Scott Lawn Yard.

8            Was Scott Lawn involved with the chronic

9    exposure?  Weren't they just involved in the sewer?

10   Shouldn't they be involved only purely, solely on the

11   acute case?  What are they doing here for chronic?  Scott

12   Lawn didn't dump any toxic waste in there, did you, sir?

13           MR. SUTTER:  No, your Honor.

14           THE COURT:  You weren't involved with the

15   construction of the containment system, were you?

16           MR. SUTTER:  And also, the allegation --

17           THE COURT:  Were you?

18           MR. SUTTER:  No.

19           THE COURT:  Were you a party to the consent

20   judgment that provided for the containment system?

21           MR. SUTTER:  No, sir.

22           THE COURT:  Do you monitor the waste that's

23   taken annually or how -- periodically that's taken from

24   that?

25           MR. SUTTER:  No, sir.

1            THE COURT:  Why don't you clean it up and say

2       we're looking at Scott Lawn purely and simply in regard

3       to the acute exposure?

4            MR. MACK:  Well, your Honor, I think that the

5       complaint is clear.  Our allegation, we specifically say

6       in the complaint using Scott Lawn and Yard as an example,

7       Scott Lawn and Yard was involved in the -- I'm not going

8       to quote it properly, but in the, you know, remediation

9       of the 2011 event or something like that.  And it's clear

10      from the face of the complaint what their involvement

11      is.  And we're looking to them for that conduct.

12            THE COURT:  So, you're saying you're only

13      looking at them for the acute incident -- instance.

14            MR. MACK:  Yeah, I think the complaint is clear

15      on that.

16            THE COURT:  Well, that's -- and that's why I

17      didn't take it, Mr. Hogan, is it -- could there be a

18      better complaint? I mean, somebody can say it's -- I

19      wouldn't say it -- but unartfully drawn.  It could be

20      drawn a little better.  That's why I avoid written

21      decisions, so that people can't say the same thing about

22      me.

23            I mean, come on.  It's okay.  It tells you what

24      it's about.  I can figure it out.  Scott Lawn, you know,

25      you guys were involved with the sewer work.  If there was

1      an acute exposure, I -- I would love to know about that.

2              Did things come bubbling up out of the ground

3      and go running down the street?  You were shaking your

4      head before.  Is that what happened?

5              MR. MACK:  Yes, your Honor.

6              THE COURT:  What was in this ground?  What was

7      -- is it under some force that it came bubbling up?  I

8      cannot picture it.

9              MR. HOGAN:  From -- from twenty feet below.

10             THE COURT:  Did it?

11             MS. MORRIS:  Yes.

12             MR. MACK:  Yes, Judge.

13             THE COURT:  They say yes.

14             MR. HOGAN:  I don't think so.

15             MR. SUTTER:  Judge, if I may, the complaint

16     also alleges that my clients misrepresented the nature of

17     the toxins in the Love Canal.  Come on.  It says that as

18     a result of my --

19             THE COURT:  Well, wait a minute.  They didn't

20     do that, did they?

21             MR. MACK:  Your Honor, I -- what -- what

22     paragraph is counsel referring to?

23             MR. HOGAN:  There are six actual paragraphs

24     where no single Defendant is identified and instead the

25     term Defendants is used --


                        LISA A. MULLANE
                OFFICIAL SUPREME COURT REPORTER

1      THE COURT:  Defendants.

2      MR. HOGAN:  -- six times.  The complaint refers

3   to fraud, false statements, misrepresentation.  Now,

4   granted, this is a special aspect of the motion because

5   of 3016 B, but it's an example.  This goes beyond just

6   the inartful pleading.  And the CPLR insists on an even

7   higher standard.

8      THE COURT:  But I figure we could always flesh

9   that out post depositions.

10      MR. SUTTER:  But, Judge, here's why it

11   matters --

12      THE COURT:  I would hope you guys would flesh

13   that out in the normal life of a lawsuit.

14      MR. SUTTER:  But --

15      MR. MACK:  This is what bill of particulars are

16   for, in our opinion.  We're fully prepared to respond

17   promptly for requests for BPs.

18      MR. SUTTER:  Here's where it matters, Judge.

19   Apparently, there have been maybe eleven hundred notices

20   of claim filed in this case.  Is my client going to get

21   sued eleven hundred times?  And all of those clients, all

22   of those Plaintiffs are going to claim that my client

23   misrepresented to them what was in the Love Canal?  It --

24   it just can't be alleged in good faith.  It can't be.

25      THE COURT:  From what I hear here eventually,

LISA A. MULLANE
OFFICIAL SUPREME COURT REPORTER

1    you know, you're going to have that relief.  I don't know

2    if now is the time.  And for everybody across the board,

3    I would hope, again, that you could flesh that out.  Are

4    you going to be served -- sued eleven hundred times for

5    the acute exposure?  Maybe.

6              MR. SUTTER:  But the thing is, Judge, I think

7    that as -- I think the complaints have to make good faith

8    allegations.  For example, of the eleven hundred, how

9    many of them are within I don't know what distance from

10   this pipeline project we were involved in?  I mean, they

11   make claims in here that the -- the Plaintiffs have

12   suffered birth defects as a result of the -- how many of

13   them were born since 2011?

14             THE COURT:  Well, they can't be -- put that

15   into a pleading, the pleading would be --

16             MR. SUTTER:  But you can allege --

17             THE COURT:  -- huge.

18             MR. SUTTER:  But you can allege what each

19   Defendant did and that's all we're asking for, rather

20   than lumping us with Mr. Hogan's clients.

21             MR. HOGAN:  Judge, one other point.

22             THE COURT:  How quickly friends drop off.

23             MR. HOGAN:  You don't see him sitting up here

24   with me.

25             MR. SUTTER:  Casting no aspersions.

1          MR. HOGAN:  But the bill of particulars point

2     is one that the legislature sought to differentiate

3     between misrepresentations and fraud and all of the other

4     complaints that the Defendants have -- have raised.  The

5     Defendants raise the complaint that they lumped all the

6     Plaintiffs together and we don't know whether only one or

7     all the Plaintiffs or some number in between has actually

8     incurred any injury.  We don't know what any of the

9     conduct of the Defendants specifically was that was

10    negligent.  We don't know when, how or where any

11    Plaintiff was exposed.

12          But putting those aside, the legislature

13    probably agreed with Mr. Mack about his point about at

14    some point, Defendants, a bill of particulars is how

15    you're going to flesh out the additional detail.

16          THE COURT:  Exactly.

17          MR. HOGAN:  But the legislature said but

18    misrepresentation and fraud is a different species.  And

19    in that case, the bill of particulars isn't enough.

20    We're going to -- we're going to -- that's a special,

21    special kind of pleading.

22          THE COURT:  Okay.  What about it, Mr. Mack?  If

23    I were to grant that relief, all you have to do is draw a

24    new pleading and maybe do it a little more carefully to

25    exclude people like Roy's Plumbing, Scott Lawn.  Who else

1    was involved only in the acute exposure?

2              MS. CICCARELLI:  Your Honor, actually, if I

3    could be heard, and I will be very brief.

4              THE COURT:  Who do you represent again?

5              MS. CICCARELLI:  I have Gross PHC.  So, I -- I

6    agree with everything Kevin said and everything Brian

7    said.  And I think the allegations as against my client

8    really speak the loudest to the fact that the complaint

9    does not tell any of us what we did wrong.

10             Gross PHC, your Honor, did not exist at the

11   time of the 2011 remediation project.  I added the

12   documents that your Honor --

13             THE COURT:  Stop right there.  Doesn't that by

14   itself speak to the fact that they should be clearly told

15   that they're only involved -- how were you involved in

16   the acute case?

17             MS. CICCARELLI:  Well, I could not possibly

18   have been.  I mean, I think I can represent that to the

19   Court, just as I -- again, I didn't exist.  There's

20   allegations as to the 2011 project, I didn't exist.

21             And then with respect to presently sewer --

22   there's an allegation that certain companies presently

23   service the homes in the Love Canal area, so I may or may

24   not fit in there.  But I have no idea.  How would I know

25   that?

LISA A. MULLANE
OFFICIAL SUPREME COURT REPORTER

1              I don't know that with these particular

2      Plaintiffs my client serviced their homes.  And I think

3      that is an absolute needed piece of information because

4      you cannot drag us through eleven hundred lawsuits if we

5      only serviced maybe two homes.

6              THE COURT:  Okay.  And there are other hands in

7      regard to only the acute.  Who do we have?

8              MR. BAASE:  Your Honor, the water board didn't

9      exist.

10              THE COURT:  We're going to get to the water

11      board.  The water board has its own separate motion.

12      We'll get to the water board.

13              MR. BAASE:  But for purposes of this motion,

14      your Honor, the water board didn't exist prior to 2002.

15              THE COURT:  I realize it didn't.  Yeah.  And --

16      and, you know, of course we've had so many water board

17      lawsuits over the years and I know by itself the

18      originating language between the city and the water

19      board, there was a lot of language that's been well

20      litigated in regard to responsibilities and ownership for

21      prior alleged torts and negligent claims.  I don't know

22      how that even frames into this.

23              MR. BAASE:  Those are all issues that we will

24      probably get to at some point in this case, Judge.

25              THE COURT:  Okay.  So, I know that's very

1    complicated.  But I know -- when I first read, when I

2    first picked it up and looked at the title, I said the

3    water board didn't even exist.

4              Who else was involved in only the acute?

5              MR. SCHULMAN:  Op-Tech Environmental.

6              THE COURT:  Okay.  Shouldn't they be -- you

7    know, shouldn't there be a pleading that -- that -- I

8    know it takes a little bit more time, but it's honest,

9    it's truthful.  I mean, they weren't involved in the

10   chronic exposure.  How could they be?

11             How was Roy's Plumbing?  I mean, if you -- the

12   only way you can make it any worse is if it was Bob's

13   Plumbing.  How's Roy's Plumbing involved in the Love

14   Canal chronic exposure?

15             MR. MACK:  Well, your Honor, Roy's and Gross,

16   to use your examples, Judge, we believe were involved in

17   an ongoing basis on work in the area.  So, I can't say as

18   we stand here today that their only involvement was

19   relating to the January release of chemicals.  And I

20   can't know what these Defendants were doing operationally

21   and technically.

22             THE COURT:  Well, then they're right.  Because

23   they don't know what to defend against.

24             MR. KNOER:  Your Honor, this is the first I'm

25   hearing this might be a possibility.  That shows the

1 reason why we need this.

2    THE COURT:  One second.  Just think of what you

3 said.  We think that they were doing other work in the

4 area.  Where?  What type of work?

5    MR. MACK:  It says it --

6    THE COURT:  Wait a minute.  What type of work?

7 At some other project on the other side of town?

8    MR. MACK:  No, your Honor.

9    THE COURT:  Working in this home putting in a

10 sink?

11    MR. MACK:  Your Honor --

12    THE COURT:  Or cleaning out this drain over

13 here?  You got to give them an opportunity to defend

14 themselves.

15    MR. MACK:  Your Honor, I'm referring to what it

16 says in the first amended complaint, which is work

17 relating to the sewer remediation project.  It says that

18 right in the complaint.

19    THE COURT:  Well, what part of it?  Are you

20 talking about the annual -- the containment system?

21    MR. MACK:  That ultimately resulted in the

22 January 2011 release of chemicals.  So, I'm not

23 understanding the distinction you're making between --

24 you know, where you're drawing the line between chronic

25 and acute.

LISA A. MULLANE
OFFICIAL SUPREME COURT REPORTER

1          THE COURT:  Where are you drawing the line

2    between chronic and acute?

3          MR. MACK:  Well --

4          THE COURT:  Chronic means that there's ongoing

5    contamination that's leaching from the system, migrating

6    into the area.  And the acute exposure is the traumatic

7    event that was caused by somebody opening up a sewer and

8    allowing waste to flow everywhere and not cleaning it up

9    properly.  It's very -- to me it's pretty simple.

10         If an acute exposure happened, I would think

11    that there's liability here, okay.  If an acute exposure

12    happened where contaminated waste, documented waste

13    flowed into the neighborhood and was not properly

14    cleaned, there's got to be some environmental impact.

15    Has to be.

16         Now, but chronic, particularly when the -- the

17    references in the -- in the Curtin decision indicates

18    that EPA feels that the containment system is working

19    just absolutely fine, terrific, and you haven't sued

20    alleging differently.  So, I assume that Curtin is

21    correct, as he normally is, by the way.  Maybe they're

22    right.

23         I'm not issuing a decision other than the --

24    the equitable claim, because I think that -- and the loss

25    of consortium and we'll get to some of the municipal

LISA A. MULLANE
OFFICIAL SUPREME COURT REPORTER

1   claims.  But as to all the other request for dismissals

2   for failure to state, I reserve on that, okay.

3          So, I'll change from denial to reserve and I'll

4   take a look at those.

5          MR. HOGAN:  Thank you, Judge.

6          MR. SUTTER:  Thank you, your Honor.

7          MR. FLEMING:  Thank you, your Honor.

8          THE COURT:  With that let's shift gears a

9   little bit.  That means I'm going to have to write, which

10  is always very dangerous.  Let's switch and go to the

11  city's motion.

12         MR. HOGAN:  Would you like us to let Tom and

13  Jeff come up?

14         MR. JANESE:  Judge, I'm comfortable staying

15  here.

16         THE COURT:  He's very comfortable there.  Let

17  me -- the -- let's first of all put -- put aside the

18  infants' claims, which are tolled by statute.  You got

19  all the time in the world.  So, we're only dealing with

20  the adult claims and their notice of claims.  And as I

21  understand and as from my analysis, the notice of claims

22  in regard to the acute exposure were timely.

23         MR. JANESE:  Yes, Judge, that's correct.

24         THE COURT:  And let's assume using the

25  operation of the statute and when any harm was caused in

1   regard to the latent effect of the chronic exposure that

2   I determine them to be timely.

3            MR. JANESE:  Okay.

4            THE COURT:  Okay.  You filed a notice of claim,

5   or prior counsel did, there was a 50-H hearing scheduled,

6   and Plaintiffs failed to appear.  Isn't that -- isn't

7   that fatal, unless you have a real good reason?  I mean,

8   it should be fatal.

9            I mean, now the -- the city has no right that

10   the statute gives them, that the legislature carved out

11   and said, listen, you can sue the king, but you're going

12   to do it under our rules.  And part of the rules are you

13   got to file the notice of claim and that they have a

14   right to a 50-H hearing.  Isn't that fatal by and of

15   itself?

16            MR. MACK:  Well, no, your Honor.  At this point

17   the 50-H hearing has been previously litigated before

18   Judge Murphy.  The City of Niagara Falls made a motion in

19   that court on 50-H grounds, we opposed that motion.  Our

20   predecessor counsel was involved in that portion of the

21   litigation.  They made the motion, we opposed it.

22            THE COURT:  Is that true?

23            MR. JANESE:  It is, Judge.

24            THE COURT:  Well, then --

25            MR. JANESE:  But Judge, this was in the

1   original complaint prior to this current complaint, the

2   amended complaint.  And we sought to appeal that

3   decision, Judge, and were stayed only because we went up

4   to federal court and ended up back here.  So, in order to

5   preserve it, we had to -- we had to --

6   THE COURT:  I'm not going to set aside a

7   parallel court here.  I'm not going to come in -- I

8   didn't ride in with the intent of overturning Judge

9   Murphy's prior decisions in this lawsuit.

10   If he issued a decision in regard to the first

11   complaint that was filed and did not buy your argument on

12   50-H, I don't know why he wouldn't, but I would have,

13   and you're appealing it, then -- then the matter has been

14   decided.  Follow through on your appeal.

15   MR. JANESE:  Okay.

16   THE COURT:  So, to that extent, I dismiss the

17   -- your motion as being, you know, moot, really.

18   MR. JANESE:  Okay.

19   THE COURT:  Okay.  Let's bring up the water

20   board now.  And Mr. Baase, why don't you -- would you

21   flesh out for me what exactly -- what -- you're claiming

22   that it was premature, the filing?

23   MR. BAASE:  Your Honor, actually, I spoke with

24   Mr. Mack a week or two ago.  We moved in the Pierini

25   case.

LISA A. MULLANE
OFFICIAL SUPREME COURT REPORTER

1       THE COURT:  Yes, I got -- that's what I'm

2  referring to.

3       MR. BAASE:  Yeah, 50-E and 50-I issues.  And I

4  didn't get Bill's responding papers, so I called him up

5  and asked about it.  There was a misunderstanding because

6  some of the other Pierini motions, there was an agreement

7  to put those motions off until we get a decision in

8  Abbo-Bradley.  So, I think he thought that that was going

9  to be heard -- this motion was going to be heard with

10  those motions, so he didn't put in opposition.

11       THE COURT:  So, we're adjourning the Pierini

12  motion.

13       MR. BAASE:  Yeah, I think we're adjourning all

14  that.  And your Honor, we'd like to call and get a date.

15       THE COURT:  Before you leave make sure you stop

16  up and talk to my clerk and get a date.

17       MR. MACK:  Mr. Baase and I had discussed this

18  and we're going to be speaking about return dates and

19  will coordinate with the Court.

20       THE COURT:  Okay.  So, does anybody else want

21  to be heard, then?

22       So, let's -- let's just summarize this.  The --

23  the equitable reliefs are -- are granted.  The other --

24  the consortium claim is granted.  The -- all other issues

25  outside of the sufficiency of the pleadings for all

1    parties --

2         MR. HOGAN:  Reserved.

3         THE COURT:  -- denied as to the sufficiency of

4    the pleadings, I reserved on that.  Okay.

5         MR. EGGERT:  Your Honor, there is an issue with

6    respect to Cecos.

7         THE COURT:  Yes.

8         MR. EGGERT:  Which is not the acute exposure,

9    it's the chronic exposure.  Because the allegations

10   against Cecos are that it was involved in an early phase

11   in the 1978, '79 remediation of Love Canal.

12        And we've argued on two grounds, really.  The

13   first is as a tactical decision, another tactical

14   decision of the Plaintiffs made to get back into this

15   court, in their remand papers they told Judge Curtin that

16   they weren't challenging the construction, design or

17   planning of that early remediation.

18        Well, that's Cecos' only involvement here.  So,

19   if that's not in this case, neither is Cecos.

20   Conversely, if it is in this case, then EPA should be.

21   And we go right back to where we were forty-five minutes

22   ago.

23        So, one way or the other, either we can't be in

24   this court or we have to be in federal court because

25   we're challenging the 1978 remediation.


                    LISA A. MULLANE
               OFFICIAL SUPREME COURT REPORTER

1           THE COURT:  Okay.  And that was unclear to me.
2   So, you -- Cecos was involved only in the design part of
3   the containment system.
4           MR. EGGERT:  The construction.
5           THE COURT:  The construction.
6           MR. EGGERT:  Was -- was a construction
7   contractor for some of the containment at the very south
8   end of Love Canal, the first phase.  It was an
9   unsuccessful bidder for later phases.
10          THE COURT:  I'm sorry to hear that.  And
11  weren't involved in the acute exposure.
12          MR. EGGERT:  No.
13          THE COURT:  Okay.  What do you have to say to
14  that?
15          MR. MACK:  Well, your Honor, we don't know what
16  operational conduct Cecos is responsible for as we stand
17  here today.  The -- this --
18          THE COURT:  Can I stop you there?
19          MR. MACK:  Yes.
20          THE COURT:  But if he's correct and all they
21  were involved in is the containment system and you're
22  fighting challenging the containment system because you
23  don't want to go to federal court for some reason, isn't
24  he right?
25          MR. MACK:  No, Judge, because we're not

LISA A. MULLANE
OFFICIAL SUPREME COURT REPORTER

1    attacking the containment system itself in this

2    proceeding.  But that doesn't answer the question of

3    whether there were certain operational failures that

4    don't --

5            THE COURT:  With the containment system.

6            MR. MACK:  -- that don't go to the design

7    implementation.  Cecos was also involved in the clean up

8    of the sewers according to our investigation.

9            MR. EGGERT:  Well, that's news to Cecos.  If

10   they want to allege that with specificity, fine.

11           But we're talking about Love Canal.  Nobody is

12   writing on a blank slate here.  All you have to do is

13   look at the public record and you can tell who did what

14   pretty clearly.  If they want to claim that, fine.  We'll

15   be seeking damages probably for bad-faith pleading.  But

16   if they -- they can certainly allege that.  They

17   haven't.

18           If you look at the complaint, Cecos is

19   mentioned three times, all in conjunction with the 1978,

20   '79 work.  Nothing else.  So, either we have to be out

21   of here or EPA has to be here with us.  But either way,

22   it can't stand the way it is now.

23           THE COURT:  Okay.  Anything in response to

24   that, sir?

25           MR. MACK:  Merely to reiterate my prior

1    position, your Honor.

2               THE COURT:  Okay.

3               MR. MACK:  That operational failures are and

4    technical failures are different than attacking the

5    design of the remediation itself.

6               THE COURT:  I'll reserve on yours, I'll give

7    you a written decision on that.

8               MR. EGGERT:  Thank you, your Honor.

9               THE COURT:  Mr. Adams, you want to say

10    something else?

11              MR. ADAMS:  Briefly, your Honor.

12              THE COURT:  You're uncommonly quiet.  I thought

13    we were going to get out of here lucky, but no.

14              MR. ADAMS:  As Cecos rules, apparently so do

15    Sevenson.  We had the same role they had.  We were a

16    contractor.  We were shovels and --

17              THE COURT:  Well, contractor doing what?

18              MR. ADAMS:  In the original remediation, as

19    were they.  We were involved -- we did win some more

20    bids, but we did the same thing.  We were involved in

21    implementing the plan that was set forth by EPA and DEC.

22    We were not involved in the design.  We were simply

23    shovel and pick.  We went in and did the work we were

24    told to do.

25              If they're not challenging the -- that the

LISA A. MULLANE
OFFICIAL SUPREME COURT REPORTER

1  system was adequate, where are we in this?  We didn't

2  have anything to do with the design.  All we did was

3  implement what we were told to do.  We were a contractor.

4          MR. MACK:  And again,  their operational

5  failures are -- are very much relevant to this case.  And

6  Sevenson continues to be involved, my understanding is,

7  to this day over the last --

8          THE COURT:  With what?  With what?

9          MR. MACK:  With --

10          THE COURT:  You see, that's the problem.

11  You're saying they're involved to this day, then you drop

12  it off there.  And the problem is involved with what?

13  Involved with the construction activity, the sewer work

14  that occurred on January 11?  Involved with the

15  monitoring aspect of the containment system that you are

16  not contesting?  Because if it's the -- if it's the

17  latter, there's no cause of action against them.  If it's

18  the former, there might be.

19          So, you can't just say they're still involved

20  with operational aspects and leave it there.  You got to

21  define what the operational aspects is.  And from what I

22  understand from the Defendants, that's pretty much why

23  they feel your pleadings are lacking and they're trying

24  -- they're trying to convince me because they don't

25  flesh out exactly what you're claiming.

LISA A. MULLANE
OFFICIAL SUPREME COURT REPORTER

| | |
|---|---|
| 1 | MR. MACK:  Your Honor, with respect to |
| 2 | Sevenson, we believe this Defendant has been involved in |
| 3 | remedial environmental activities at least over the last |
| 4 | three years.  And you know, all these parties are |
| 5 | involved in Love Canal work, many of them to this day. |
| 6 | And we can't know as we stand here on a motion to |
| 7 | dismiss, you know, your role was this, this other |
| 8 | Defendant's role was that. |
| 9 | THE COURT:  But that's unfair.  Because what |
| 10 | you're doing is you're causing the Defendants to go into |
| 11 | a litigation and to bear the expense of this when you're |
| 12 | not sure, you're just hunting. |
| 13 | MR. MACK:  But no, Judge, I'm forced.  When New |
| 14 | York moved from joint and several liability to several |
| 15 | liability, if I don't include somebody that has to be |
| 16 | here, I have to stand here and defend an empty chair. |
| 17 | THE COURT:  Or you can do your work before |
| 18 | suing people. |
| 19 | MR. MACK:  We did -- we did, Judge.  And that's |
| 20 | -- you know, and if -- if there are Defendants that have |
| 21 | valid arguments for why they shouldn't be here, they |
| 22 | should call me and we'll talk about this and we don't -- |
| 23 | we don't -- |
| 24 | THE COURT:  Your phone will be very busy the |
| 25 | next few days. |

LISA A. MULLANE
OFFICIAL SUPREME COURT REPORTER

1         MR. MACK:  Judge, we don't have any interest in

2  having people here that don't belong here.  In fact,

3  we've dismissed one Defendant and we're in the process of

4  voluntarily dismissing a second Defendant because we had

5  such conversations.

6         THE COURT:  Well, I'll give you thirty days

7  before I issue a decision to clean up the stuff on your

8  own.  Then I'll start issuing decisions.  How's that?

9         MR. PEREL:  Nelson Perel for Cecos.  I just

10  point out there's no dispute Cecos's only involvement was

11  in the early days.  Everybody knew about Cecos at the

12  time.  Everybody knew about the early work.  You had all

13  these lawsuits --

14         THE COURT:  You know what, I put yours off to

15  the side because I couldn't figure it out.  That's why I

16  really needed to take oral arguments.  I was saying to

17  myself, why exactly are these guys in this?

18         MR. PEREL:  There were thousands of lawsuits

19  brought in the eighties, nineties and early two thousands

20  by Plaintiffs, sophisticated counsel.  They knew Cecos

21  was out there.  Not a single lawsuit against Cecos.

22         THE COURT:  Try to clean it up.  If not, I'll

23  issue a decision.  Anybody else needs to be heard?

24         MR. MACK:  Just to clarify, your Honor, we have

25  thirty days to re-plead the complaint; is that what your

1   order --

2          THE COURT:  Well, if you re-plead the

3   complaint, I think everybody would be overjoyed.  Some

4   would.  Some maybe wouldn't.  No.

5          MR. PEREL:  No, we want out, your Honor.

6          THE COURT:  Well, you may be out.  That's --

7   that's what re-pleading means, maybe refining it and

8   sending the right people out the door.

9          You can do whatever you want to clean it up.  I

10  would suggest you would.  You're a bright guy.  All

11  right.

12         MR. MACK:  Thank you, Judge.

13         THE COURT:  We'll see you.

14         MR. HOGAN:  Judge, thanks very much.

15              (PROCEEDINGS CONCLUDED.)

16                  *     *     *

17

18

19

20  Certified to be a true and accurate transcript of the
    above-entitled matter.
21

22

    LISA A. MULLANE, RPR
23  Official Court Reporter

24

25

LISA A. MULLANE
OFFICIAL SUPREME COURT REPORTER