# EXHIBIT
# 7

FILED: NIAGARA COUNTY CLERK 02/14/2014

NYSCEF DOC. NO. 1

INDEX NO. E152327/2014

RECEIVED NYSCEF: 02/14/2014

STATE OF NEW YORK
SUPREME COURT:  COUNTY OF NIAGARA

| | |
|---|---|
| KURDELIAH TAUHEEDAH ABDULLAH; WAREZ K. ABDULLAH; KEVIN ADAMEC; DEMETRIA BARNES, Individually and as Parent and Natural Guardian of RASHID TAHIR BIBBS, Infant; CHRISTOPHER ANDRE BETTON; ESTILLETA C. BURCH; CATRICE BYRD - PIPPENS; MARCUS CALDWELL; LATASHA SHERISE COOPER; REGINALD COOPER; SHELDON TODD COOPER, Individually and as Parent and Natural Guardian of NADIA COOPER, ISAAC COOPER, Infants; DEBRA CROWELL; LETITIA CZINE; ANTHONY L. DANIELS; DOROTHY LEE DAVIS; WILLIE REBECCA DIXON; BERNICE DRAKE; RICHARD FETTER; VICTOR P. FETTER; PATRICIA A. GARNER; PATRICK ROY GAYLE, JR.; RODRIGUEZ GAYLE; THOMAS GEORGE, JR.; EDWIN S. GODFREY; MARTHA F. GREEN; PHYLLIS GUEST-BALY; AARON HAMILTON; BRAYTON M. HAMILTON; SAMUEL LEE HAMILTON, JR.; QURRISE CURTIS HARRIS; WORLIE L. HARRIS; ANNIE MAE HILL; TERRY R. HILL; JILLIAN CAROL HORNER; LOREE W. JOHNSON; KEVIN MAURICE KING; ROBERT LAWRENCE, SR.; SHERRY SPENCER LEE; KATHERINE LOVERDI; JULIANNE PATRICE MACIAS; RASHAWN M. MARTIN; FATIMA R. MATHEWS, Individually and as Parent and Natural Guardian of DEONTE MATHEWS and LONDYN MATHEWS, Infants; MARY DANIELS MCPHERSON; KENDRIC Q. MITCHELL, Individually and as Parent and Natural Guardian of QUIANDRA ELIZABETH MITCHELL, Infant; MARGARET MITCHELL; RHONDA CHERISE MITCHELL; DAVID L. MORGAN, SR. Infant; CONNIE JEAN MOSS; DARRELL MOYER, JR.; LINDA MURPHY; MICHAEL D. NALLS; WALTER PRICE; WILLIE PRICE, Individually and as Parent and Natural Guardian of ALEXIS PRICE, Infant; JANICE RIDGEWAY; DOMINIQUE ROGERS; | **Index No.:**

**SUMMONS** |

{00016370}

GERALDINE ROGERS; PRISCILLA ROGERS;
PORSHA SIMS; WILLIE MAE SIMS; APRIL
KATHLEEN SMITH; MICHAEL
STURDIVANT; BENNIE TAMBORELLO;
RODERICK VAILS; JANELLE E. MITCHELL
WALKER; JIMMIE WALKER; RASHID
WALKER; CHRISTINE WESCHE; DOROTHY
BRANDON WISNIEWSKI;

Plaintiffs,

vs.

CITY OF NIAGARA FALLS;  NIAGARA
FALLS WATER BOARD; GLENN SPRINGS
HOLDINGS, INC.; CONESTOGA-ROVERS &
ASSOCIATES; CECOS INTERNATIONAL;
INC.; GROSS PHC LLC; DAVID GROSS
CONTRACTING CORP.; GROSS PLUMBING
& HEATING CO., INC.; MILLER SPRINGS
REMEDIATION MANAGEMENT, INC.;
OCCIDENTIAL CHEMICAL CORPORATION ,
Individually and as Successor in Interest to
Hooker Chemicals and Plastics Corporation; OP-
TECH ENVIRONMENTAL SERVICES; ROY'S
PLUMBING, INC.; SCOTT LAWN YARD,
INC.; and SEVENSON ENVIRONMENTAL
SERVICES, INC.

Defendants.

**TO THE ABOVE NAMED DEFENDANTS:**

**YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to
serve a copy of your answer, or, if the complaint is not served with this summons, to serve a
notice of appearance, on the plaintiffs' attorney within 20 days after the service of this
summons, exclusive of the day of service (or within 30 days after the service is complete if
this summons is not personally delivered to you within the State of New York); and in case
of your failure to appear or answer, judgment will be taken against you by default for the

relief demanded in the complaint.

DATED:     New York, New York
            February 14, 2014

         Phillips & Paolicelli, LLP
         *Attorneys for Plaintiffs*

         By:  /s/ William H. Mack
         **PHILLIPS & PAOLICELLI, LLP**
         Steven J. Phillips
         William H. Mack
         Melissa L. Stewart
         747 Third Avenue, 6th Floor
         New York, New York 10027
         Telephone: (212) 388-5100

         **WATERS & KRAUS, LLP**
         Peter Kraus
         Charles Siegel
         (*pro hac vice* applications forthcoming)
         3219 McKinney Avenue
         Dallas, Texas 75204
         Telephone: (214) 357-7252

         **FANIZZI & BARR, PC**
         Paul K. Barr
         2303 Pine Avenue
         Niagara Falls, NY 14301
         Telephone: (716) 284-8888

         **CHRISTEN CIVILETTO MORRIS, ESQ.**
         8313 West Point Drive
         East Amherst, New York  14051
         (716) 741-8555

         Attorneys for Plaintiffs

STATE OF NEW YORK
SUPREME COURT:  COUNTY OF NIAGARA

KURDELIAH TAUHEEDAH ABDULLAH;
WAREZ K. ABDULLAH; KEVIN ADAMEC;
DEMETRIA BARNES, Individually and as
Parent and Natural Guardian of RASHID TAHIR
BIBBS, Infant; CHRISTOPHER ANDRE
BETTON; ESTILLETA C. BURCH; CATRICE
BYRD - PIPPENS; MARCUS CALDWELL;
LATASHA SHERISE COOPER; REGINALD
COOPER; SHELDON TODD COOPER,
Individually and as Parent and Natural Guardian
of NADIA COOPER, ISAAC COOPER, Infants;
DEBRA CROWELL; LETITIA CZINE;
ANTHONY L. DANIELS; DOROTHY LEE
DAVIS; WILLIE REBECCA DIXON; BERNICE
DRAKE; RICHARD FETTER; VICTOR P.
FETTER; PATRICIA A. GARNER; PATRICK
ROY GAYLE, JR.; RODRIGUEZ GAYLE;
THOMAS GEORGE, JR.; EDWIN S.
GODFREY; MARTHA F. GREEN; PHYLLIS
GUEST-BALY; AARON HAMILTON;
BRAYTON M. HAMILTON; SAMUEL LEE
HAMILTON, JR.; QURRISE CURTIS HARRIS;
WORLIE L. HARRIS; ANNIE MAE HILL;
TERRY R. HILL; JILLIAN CAROL HORNER;
LOREE W. JOHNSON; KEVIN MAURICE
KING; ROBERT LAWRENCE, SR.; SHERRY
SPENCER LEE; KATHERINE LOVERDI;
JULIANNE PATRICE MACIAS; RASHAWN
M. MARTIN; FATIMA R. MATHEWS,
Individually and as Parent and Natural Guardian
of DEONTE MATHEWS and LONDYN
MATHEWS, Infants; MARY DANIELS
MCPHERSON; KENDRIC Q. MITCHELL,
Individually and as Parent and Natural Guardian
of QUIANDRA ELIZABETH MITCHELL,
Infant; MARGARET MITCHELL; RHONDA
CHERISE MITCHELL; DAVID L. MORGAN,
SR. Infant; CONNIE JEAN MOSS; DARRELL
MOYER, JR.; LINDA MURPHY; MICHAEL D.
NALLS; WALTER PRICE; WILLIE PRICE,
Individually and as Parent and Natural Guardian
of ALEXIS PRICE, Infant; JANICE
RIDGEWAY; DOMINIQUE ROGERS;

**Index No.:**

**COMPLAINT**

{00016370}

GERALDINE ROGERS; PRISCILLA ROGERS;
PORSHA SIMS; WILLIE MAE SIMS; APRIL
KATHLEEN SMITH; MICHAEL
STURDIVANT; BENNIE TAMBORELLO;
RODERICK VAILS; JANELLE E. MITCHELL
WALKER; JIMMIE WALKER; RASHID
WALKER; CHRISTINE WESCHE; DOROTHY
BRANDON WISNIEWSKI;

                              Plaintiffs,

vs.

CITY OF NIAGARA FALLS;  NIAGARA
FALLS WATER BOARD; GLENN SPRINGS
HOLDINGS, INC.; CONESTOGA-ROVERS &
ASSOCIATES; CECOS INTERNATIONAL;
INC.; GROSS PHC LLC; DAVID GROSS
CONTRACTING CORP.; GROSS PLUMBING
& HEATING CO., INC.; MILLER SPRINGS
REMEDIATION MANAGEMENT, INC.;
OCCIDENTIAL CHEMICAL CORPORATION ,
Individually and as Successor in Interest to
Hooker Chemicals and Plastics Corporation; OP-
TECH ENVIRONMENTAL SERVICES; ROY'S
PLUMBING, INC.; SCOTT LAWN YARD,
INC.; and SEVENSON ENVIRONMENTAL
SERVICES, INC.

                              Defendants.

Plaintiffs, by their undersigned attorneys, PHILLIPS & PAOLICELLI, LLP, WATERS

& KRAUS, LLP, CHRISTEN CIVILETTO MORRIS, ESQ., and FANIZZI & BARR, P.C., for

their Second Amended Complaint against the Defendants, allege that:

## I.      <u>INTRODUCTION</u>

1.      This action is brought on behalf of injured current and former residents of Niagara

Falls' Love Canal neighborhood, who have suffered physical injury and economic harm as a

result of the intentional, reckless, wanton, negligent, or otherwise wrongful conduct of each of

the Defendants.  Each Plaintiff has suffered myriad physical injuries as a result of Defendants'

misconduct, and will continue to suffer physical injury in the future.  Such injuries include but

are not limited to a wide array of birth defects.

2.      Each of the Plaintiffs has injuries, which may include, but is not limited to: (i)

autoimmune disorders; (ii) cancer; (iii) endocrine disorders; (iv)severe heart conditions;  (v) soft

and/or crumbling teeth; (vi) gastrointestinal disorders; (vii) genitourinary/reproductive disorders;

(viii) hematologic disorders; (ix) neurological disorders; (x) occular disorders; (xi) pulmonary

disorders; and/or (xiii) were otherwise injured; all of which were caused by exposure to toxins in

the Love Canal area.

3.      Defendants' conduct – which includes but is not limited to the wrongful dumping

of toxic substances, the negligent, reckless, and/or ineffective remediation of such

contamination, the negligent and/or reckless performance of work in, around, and adjacent to the

sewers in proximity to Love Canal, and repeated failures to alert the public at large (and

Plaintiffs in particular) of concerns regarding the neighborhood's safety – has created a public

health catastrophe.

4.      As a result of all Defendants' misconduct, chemicals have been and continue to be

visible to the naked eye on area roads, sidewalks, and grass, and throughout the sewers and storm

drains of this residential community, as well as within Cayuga Creek.  In addition to the illness

and disease suffered by Plaintiffs (and indeed rampant in the neighborhood), the Love Canal

community to this day presents the stigmata of widespread contamination.  For example, the area

has an unnatural absence of worms, mice, and other normal biodata.  It is also strewn with dead

trees and grass.  Plaintiffs' and their neighbors' pets are sick.  Dead animals are a common sight

throughout the area.

{00016370}                                3

5.     The contamination resulting from Defendants' actions has also caused the adult Plaintiffs severe economic harm.  For instance, Defendants' actions have vastly diminished the value of the properties that such Plaintiffs own or owned in the Love Canal area.

6.     The economic harms that each Plaintiff has suffered also include substantial medical expenses, including but not limited to out of pocket expenses, to treat the various medical conditions caused by Defendants' misconduct.

7.     Accordingly, Plaintiffs seek compensatory and punitive damages for, *inter alia*, personal injuries, lost quality of life, economic loss of services and support of the infant Plaintiffs, economic losses, future medical damages, and property value diminution.

## II.     PARTIES

### A. Plaintiffs

8.     Plaintiff WAREZ K. ABDULLAH, a former resident of the Love Canal area, is a citizen and resident of the City of Anniston, County of Calhoun, Alabama.  Plaintiff resides at 423 Chestnut Avenue, Anniston, Alabama, 36201.

9.     Plaintiff KURDELIAH TAUHEEDAH ABDULLAH, a former resident of the Love Canal area, is a citizen and resident of the City of Eastaboga, County of Calhoun, Alabama. Plaintiff resides at 258 Rosser Street, Eastaboga, Alabama, 36260.

10.    Plaintiff KEVIN ADAMEC, a current resident of the Love Canal area, is a citizen and resident of the City of Niagara Falls, County of Niagara, New York.  Plaintiff resides at 343 70th Street, Niagara Falls, New York, 14304.

11.    Plaintiff DEMETRIA BARNES, a current resident of the Love Canal area, is a citizen and resident of the City of Glen Allen, County of Henrico, Virginia and is the parent and natural guardian of infant Plaintiff RASHID TAHIR BIBBS, who is a citizen and resident of the

City of Glen Allen, County of Henrico, Virginia.  Plaintiff and infant Plaintiff reside at 7815 Shadowood Court, Apt A, Glen Allen, Virginia, 23228.

12.    Plaintiff CHRISTOPHER ANDRE BETTON, a former resident of the Love Canal area, is a citizen and resident of the City of Wheatville, County of Genesee, New York. Plaintiff resides at 30 Skylark Lane, Wheatville, New York, 14304.

13.    Plaintiff ESTILLETA C. BURCH, a current resident of the Love Canal area, is a citizen and resident of the City of Niagara Falls, County of Niagara, New York.  Plaintiff resides at 1342 Michigan Avenue, Apt 1, Niagara Falls, New York, 14304.

14.    Plaintiff CATRICE BYRD-PIPPENS, a former resident of the Love Canal area, is a citizen and resident of the City of Snellville, County of Gwinnett, Georgia.  Plaintiff resides at 3890 Willowmeade Drive, Snellville, Georgia, 30039.

15.    Plaintiff MARCUS CALDWELL, a former resident of the Love Canal area, is a citizen and resident of the City of Indianapolis, County of Marion, Indiana.  Plaintiff resides at 1609 Asbury Street, Indianapolis, Indiana, 46203-2804.

16.    Plaintiff LATASHA SHERISE COOPER, a current resident of the Love Canal area, is a citizen and resident of the City of Niagara Falls, County of Niagara, New York. Plaintiff resides at 1309 Cleveland Avenue, Niagara Falls, New York, 14305.

17.    Plaintiff REGINALD COOPER, a former resident of the Love Canal area, is a citizen and resident of the City of Wesley Chapel, County of Pasco, Florida.  Plaintiff resides at 29620 Eagle Station Drive, Wesley Chapel, Florida, 33543.

18.    Plaintiff SHELDON TODD COOPER, a current resident of the Love Canal area, is a citizen and resident of the City of Niagara Falls, County of Niagara, New York and is the parent and natural guardian of infant Plaintiffs NADIA COOPER and ISAAC COOPER, who

are citizens and residents of the City of Niagara Falls, County of Niagara, New York.  Plaintiff and infant Plaintiffs reside at 2319 24th Street, Niagara Falls, New York, 14305.

19.     Plaintiff DEBRA CROWELL, a current resident of the Love Canal area, is a citizen and resident of the City of Niagara Falls, County of Niagara, New York.  Plaintiff resides at 1348 Whitney Avenue, Niagara Falls, New York, 14301.

20.     Plaintiff LETITIA CZINE, a former resident of the Love Canal area, is a citizen and resident of the City of Lockport, County of Niagara, New York.  Plaintiff resides at 6060 Robinson Road, Lockport, New York, 14094.

21.     Plaintiff ANTHONY L. DANIELS, a current resident of the Love Canal area, is a citizen and resident of the City of Niagara Falls, County of Niagara, New York.  Plaintiff resides at 9 D Street, Niagara Falls, New York, 14303.

22.     Plaintiff DOROTHY LEE DAVIS, a current resident of the Love Canal area, is a citizen and resident of the City of Niagara Falls, County of Niagara, New York.  Plaintiff resides at 2954 Porter Road, Niagara Falls, New York, 14305.

23.     Plaintiff WILLIE REBECCA DIXON, a current resident of the Love Canal area, is a citizen and resident of the City of Niagara Falls, County of Niagara, New York.  Plaintiff resides at 2257 Whitney Ave., Niagara Falls, New York, 14301.

24.     Plaintiff BERNICE DRAKE, a current resident of the Love Canal area, is a citizen and resident of the City of Niagara Falls, County of Niagara, New York.  Plaintiff resides at 2823 23rd Street, Niagara Falls, New York, 14305.

25.     Plaintiff RICHARD FETTER, a former resident of the Love Canal area, is a citizen and resident of the City of Henderson, County of Vance, North Carolina.  Plaintiff resides at 8981 NC 39 Highway South, Henderson, North Carolina, 27537.

26.     Plaintiff VICTOR P. FETTER, a current resident of the Love Canal area, is a citizen and resident of the City of Niagara Falls, County of Niagara, New York.  Plaintiff resides at 173 67th Street, Niagara Falls, New York, 14304.

27.     Plaintiff PATRICIA A. GARNER, a current resident of the Love Canal area, is a citizen and resident of the City of Niagara Falls, County of Niagara, New York.  Plaintiff resides at 619 61st Street, Apt. C, Niagara Falls, New York, 14304.

28.     Plaintiff PATRICK ROY GAYLE, JR., a current resident of the Love Canal area, is a citizen and resident of the City of Niagara Falls, County of Niagara, New York.  Plaintiff resides at 1913 Whitney Avenue, Niagara Falls, New York, 14301.

29.     Plaintiff RODRIGUEZ GAYLE, a current resident of the Love Canal area, is a citizen and resident of the City of Niagara Falls, County of Niagara, New York.  Plaintiff resides at 1942 Whitney Avenue, Niagara Falls, New York, 14301.

30.     Plaintiff THOMAS GEORGE, JR., a current resident of the Love Canal area, is a citizen and resident of the City of Niagara Falls, County of Niagara, New York.  Plaintiff resides at 3242 Ontario Avenue, Niagara Falls, New York, 14305.

31.     Plaintiff EDWIN S. GODFREY, a former resident of the Love Canal area, is a citizen and resident of the City of Riverdale, County of Clayton, Georgia.  Plaintiff resides at 6933 Cottonwood Trail, Riverdale, Georgia, 30296.

32.     Plaintiff MARTHA F. GREEN, a former resident of the Love Canal area, is a citizen and resident of the City of Jackson, County of Hinds, Mississippi.  Plaintiff resides at 5109 Post Oak Road, Jackson, Mississippi, 39206.

33.     Plaintiff PHYLLIS GUEST-BALY, a former resident of the Love Canal area, is a citizen and resident of the City of Surprise, County of Maricopa, Arizona.  Plaintiff resides at 15114 N. 173rd Drive, Surprise, Arizona, 85388.

34.     Plaintiff AARON HAMILTON, a former resident of the Love Canal area, is a citizen and resident of the City of San Diego, County of San Diego, California.  Plaintiff resides at 1245 Market Street, San Diego, California, 92101.

35.     Plaintiff BRAYTON M. HAMILTON, a current resident of the Love Canal area, is a citizen and resident of the City of Niagara Falls, County of Niagara, New York.  Plaintiff resides at  552 25th Street, Niagara Falls, New York, 14301.

36.     Plaintiff SAMUEL LEE HAMILTON, Jr., a current resident of the Love Canal area, is a citizen and resident of the City of Niagara Falls, County of Niagara, New York.  Plaintiff resides at 613 Sixth Street, Apt. 2, Niagara Falls, New York, 14301.

37.     Plaintiff QURRISE CURTIS HARRIS, a current resident of the Love Canal area, is a citizen and resident of the City of Niagara Falls, County of Niagara, New York.  Plaintiff resides at 6822 Plaza Drive Apartment 5, Niagara Falls, New York, 14304.

38.     Plaintiff WORLIE L. HARRIS, a current resident of the Love Canal area, is a citizen and resident of the City of Niagara Falls, County of Niagara, New York.  Plaintiff resides at 1736 Lafayette Avenue, #57, Niagara Falls, New York, 14305.

39.     Plaintiff ANNIE MAE HILL, a current resident of the Love Canal area, is a citizen and resident of the City of Niagara Falls, County of Niagara, New York.  Plaintiff resides at 1658 Niagara Ave., Apt. 1, Niagara Falls, New York, 14305.

40.     Plaintiff TERRY R. HILL, a former resident of the Love Canal area, is a citizen and resident of the City of Lockport, County of Niagara, New York.  Plaintiff resides at 260 North Transit Street Lower, Lockport, New York, 14094.

41.     Plaintiff JILLIAN CAROL HORNER, a current resident of the Love Canal area, is a citizen and resident of the City of Niagara Falls, County of Niagara, New York.  Plaintiff resides at 1419 Walnut Avenue, Apt. 2, Niagara Falls, New York, 14301.

42.     Plaintiff LOREE W. JOHNSON, a current resident of the Love Canal area, is a citizen and resident of the City of Niagara Falls, County of Niagara, New York.  Plaintiff resides at 3262 Ontario Avenue, Niagara Falls, New York, 14305.

43.     Plaintiff KEVIN MAURICE KING, a current resident of the Love Canal area, is a citizen and resident of the City of Niagara Falls, County of Niagara, New York.  Plaintiff resides at 2022 Lockport Street, Niagara Falls, New York, 14305.

44.     Plaintiff ROBERT LAWRENCE, SR., a former resident of the Love Canal area, is a citizen and resident of the City of Selma, County of Dallas, Alabama.  Plaintiff resides at 1821 Bienville Street, Selma, Alabama, 36701.

45.     Plaintiff SHERRY SPENCER LEE, a current resident of the Love Canal area, is a citizen and resident of the City of Niagara Falls, County of Niagara, New York.  Plaintiff resides at 719 59th St., Niagara Falls, New York, 14304.

46.     Plaintiff KATHERINE LOVERDI, a current resident of the Love Canal area, is a citizen and resident of the City of Niagara Falls, County of Niagara, New York.  Plaintiff resides at 826 84th St., Niagara Falls, New York, 14304.

47.     Plaintiff JULIANNE PATRICE MACIAS, a current resident of the Love Canal area, is a citizen and resident of the City of Niagara Falls, County of Niagara, New York. Plaintiff resides at 220 73rd Street, Niagara Falls, New York, 14304.

48.     Plaintiff RASHAWN M. MARTIN, a current resident of the Love Canal area, is a citizen and resident of the City of Niagara Falls, County of Niagara, New York.  Plaintiff resides at 2022 Lockport Street, Niagara Falls, New York, 14305.

49.     Plaintiff FATIMA R. MATHEWS, a current resident of the Love Canal area, is a citizen and resident of the City of Niagara Falls, County of Niagara, New York and is the parent and natural guardian of infant Plaintiffs DEONTE MATHEWS and LONDYN MATHEWS, who are citizens and residents of the City of Niagara Falls, County of Niagara, New York. Plaintiff and infant Plaintiffs reside at 613 20th St., Niagara Falls, New York, 14301.

50.     Plaintiff MARY DANIELS MCPHERSON, a current resident of the Love Canal area, is a citizen and resident of the City of Niagara Falls, County of Niagara, New York. Plaintiff resides at 9 D Street, Niagara Falls, New York, 14303.

51.     Plaintiff KENDRIC Q. MITCHELL, a current resident of the Love Canal area, is a citizen and resident of the City of Niagara Falls, County of Niagara, New York and is the parent and natural guardian of infant Plaintiff QUIANDRA ELIZABETH MITCHELL, who is a citizen and resident of the City of Niagara Falls, County of Niagara, New York.  Plaintiff and infant Plaintiff reside at 447 1/2 6th Street, Niagara Falls, New York, 14305.

52.     Plaintiff MARGARET MITCHELL, a current resident of the Love Canal area, is a citizen and resident of the City of Niagara Falls, County of Niagara, New York.  Plaintiff resides at 529 16th Street, Niagara Falls, New York, 14301.

53.     Plaintiff RHONDA CHERISE MITCHELL, a current resident of the Love Canal area, is a citizen and resident of the City of Niagara Falls, County of Niagara, New York. Plaintiff resides at 529 16th Street Apt # 1, Niagara Falls, New York, 14301.

54.     Plaintiff DAVID L. MORGAN, SR., a current resident of the Love Canal area, is a citizen and resident of the City of Niagara Falls, County of Niagara, New York Plaintiff resides at 1715 16th Street, Niagara Falls, New York, 14305.

55.     Plaintiff CONNIE JEAN MOSS, a current resident of the Love Canal area, is a citizen and resident of the City of Niagara Falls, County of Niagara, New York.  Plaintiff resides at 550 17th Street, Niagara Falls, New York, 14301.

56.     Plaintiff DARRELL MOYER, JR., a former resident of the Love Canal area, is a citizen and resident of the City of Puyallup, County of Pierce, Washington.  Plaintiff resides at 608 39th Avenue SW Apt J306, Puyallup, Washington, 98373.

57.     Plaintiff LINDA MURPHY, a former resident of the Love Canal area, is a citizen and resident of the City of Depew, County of Erie, New York.  Plaintiff resides at 7 Colgate Drive, Depew, New York, 14043.

58.     Plaintiff MICHAEL D. NALLS, a current resident of the Love Canal area, is a citizen and resident of the City of Niagara Falls, County of Niagara, New York.  Plaintiff resides at 720 10th Street Apt. 305, Niagara Falls, New York, 14305.

59.     Plaintiff WALTER PRICE, a former resident of the Love Canal area, is a citizen and resident of the City of Buffalo, County of Erie, New York.  Plaintiff resides at 49 Edison Avenue, Buffalo, New York, 14215.

60.     Plaintiff WILLIE PRICE, a current resident of the Love Canal area, is a citizen and resident of the City of Niagara Falls, County of Niagara, New York and is the parent and

natural guardian of infant Plaintiff ALEXIS PRICE, who is a citizen and resident of the City of Niagara Falls, County of Niagara, New York.  Plaintiff and infant Plaintiff reside at 2208 Forest Avenue, Niagara Falls, New York, 14301.

61.    Plaintiff JANICE RIDGEWAY, a former resident of the Love Canal area, is a citizen and resident of the City of Anchorage, County of Anchorage, Alaska.  Plaintiff resides at 2454 E. 52nd Avenue Unit A, Anchorage, Alaska, 99507.

62.    Plaintiff DOMINIQUE ROGERS, a former resident of the Love Canal area, is a citizen and resident of the City of Eustis, County of Lake, Florida.  Plaintiff resides at 328 E. Clifford Avenue A,  Eustis, Florida, 32726.

63.    Plaintiff GERALDINE ROGERS, a current resident of the Love Canal area, is a citizen and resident of the City of Niagara Falls, County of Niagara, New York.  Plaintiff resides at 800 Niagara Avenue, Niagara Falls, New York, 14305.

64.    Plaintiff PRISCILLA ROGERS, a former resident of the Love Canal area, is a citizen and resident of the City of Augusta, County of Richmond, Georgia.  Plaintiff resides at 2910 Richmond Hill Road,  Apt. 12C, Augusta, Georgia, 30906.

65.    Plaintiff PORSHA SIMS, a former resident of the Love Canal area, is a citizen and resident of the City of Orrville, County of Wayne, Ohio.  Plaintiff resides at 1100 Matthew Drive Apt. #1, Orrville, Ohio, 44667.

66.    Plaintiff WILLIE MAE SIMS, a former resident of the Love Canal area, is a citizen and resident of the City of Wooster, County of Wayne, Ohio.  Plaintiff resides at 1936 Highland Park Road #12, Wooster, Ohio, 44691.

67.     Plaintiff APRIL KATHLEEN SMITH, a former resident of the Love Canal area, is a citizen and resident of the City of North Tonawanda, County of Niagara, New York. Plaintiff resides at 2919 Walck Drive, North Tonawanda, New York, 14120.

68.     Plaintiff MICHAEL STURDIVANT, a current resident of the Love Canal area, is a citizen and resident of the City of Niagara Falls, County of Niagara, New York.  Plaintiff resides at 755 Pierce Avenue, Niagara Falls, New York, 14301.

69.     Plaintiff BENNIE TAMBORELLO, a current resident of the Love Canal area, is a citizen and resident of the City of Niagara Falls, County of Niagara, New York.  Plaintiff resides at 3218 Jerauld Avenue, Niagara Falls, New York, 14305.

70.     Plaintiff RODERICK VAILS, a current resident of the Love Canal area, is a citizen and resident of the City of Niagara Falls, County of Niagara, New York.  Plaintiff resides at 2108 Ontario Avenue, Niagara Falls, New York, 14305.

71.     Plaintiff JANELLE E. MITCHELL WALKER, a current resident of the Love Canal area, is a citizen and resident of the City of Niagara Falls, County of Niagara, New York. Plaintiff resides at 1353 Ashland Avenue, Niagara Falls, New York, 14301.

72.     Plaintiff JIMMIE WALKER, a former resident of the Love Canal area, is a citizen and resident of the City of Rochester, County of Niagara, New York.  Plaintiff resides at 80 Wilton Terrace, Rochester, New York, 14619.

73.     Plaintiff RASHID WALKER, a current resident of the Love Canal area, is a citizen and resident of the City of Niagara Falls, County of Niagara, New York.  Plaintiff resides at 3262 Ontario Avenue, Niagara Falls, New York, 14305.

74.     Plaintiff CHRISTINE WESCHE, a former resident of the Love Canal area, is a citizen and resident of the City of Lakeland, County of Polk, Florida.  Plaintiff resides at 7002 O'Doniel Loop W, Lakeland, Florida, 33809.

75.     Plaintiff DOROTHY BRANDON WISNIEWSKI, a current resident of the Love Canal area, is a citizen and resident of the City of Niagara Falls, County of Niagara, New York. Plaintiff resides at 6822 Plaza Drive Apt. #9, Niagara Falls, New York, 14304-2976.

76.     The Plaintiffs described in the foregoing paragraphs as current residents of the Love Canal area are "**Current Resident Plaintiffs**" and have suffered injury by virtue of their exposure to Love Canal toxins.

77.     The Plaintiffs described in the foregoing paragraphs as former residents of the Love Canal area are "**Former Resident Plaintiffs**" meaning that they once resided in the Love Canal area, and have suffered injury by virtue of their exposure to Love Canal toxins during such residency, but who no longer reside in the Love Canal area.

**B.**     **Defendants**

78.     Defendant OCCIDENTAL CHEMICAL CORPORATION, Individually and as Successor in Interest to HOOKER CHEMICAL AND PLASTICS CORPORATION ("OCCIDENTAL/HOOKER"), is a corporation organized under the laws of the State of New York.

79.     Defendant CITY OF NIAGARA FALLS ("CITY") is a municipal corporation of the State of New York.

80.     Defendant NIAGARA FALLS WATER BOARD ("NFWB") is a public benefit corporation created by a special act of the New York State Legislature.

81.     Defendant GLENN SPRINGS HOLDINGS, INC. ("GSH") is a corporation organized under the laws of the State of New York, and is a wholly owned subsidiary of Defendant OCCIDENTAL/HOOKER.

82.     Defendant CONESTOGA-ROVERS & ASSOCIATES ("CRA") is an engineering consulting firm conducting business within the State of New York.

83.     Defendant CECOS INTERNATIONAL, INC. f/k/a NEWCO CHEMICAL WASTE SYSTEMS, INC. ("CECOS") is a corporation organized under the laws of the State of New York.

84.     Defendant DAVID GROSS CONTRACTING CORP. ("GROSS CONTRACTING") is a corporation organized under the laws of the State of New York.

85.     Defendant GROSS PLUMBING & HEATING. CO., INC. ("GROSS PLUMBING") is and was a corporation organized under the laws of the state of New York. It was dissolved by proclamation on or about June 23, 1999, and recertified as a corporation on or about February 28, 2013.

86.     Defendant GROSS PHC, LLC ("GROSS PHC"), individually and as successor-in-interest to GROSS PLUMBING and/or GROSS CONTRACTING is a limited liability company organized under the laws of the State of New York. GROSS PHC was incorporated in or about February 2012. At such time, upon information and belief, either: (i) GROSS PHC expressly assumed the liabilities of GROSS PLUMBING and/or GROSS CONTRACTING, (ii) there was a consolidation and/or merger of GROSS PHC and GROSS PLUMBING, and/or a consolidation and/or merger of GROSS PHC and GROSS CONTRACTING, or (iii) GROSS PHC was a mere continuation of GROSS PLUMBING and/or GROSS CONTRACTING. Upon information and belief, GROSS PHC was formed in or about February 2012 for the purpose of

{00016370}                          15

continuing the operations of GROSS PLUMBING and GROSS CONTRACTING while GROSS PLUMBING owner John Gross, Jr. served a 33 month sentence in federal prison for bid-rigging and tax-evasion charges committed in connection with his operation of GROSS CONTRACTING.  GROSS PHC is a mere continuation of GROSS PLUMBING and/or GROSS CONTRACTING because, *inter alia*, the new business continued the operations of GROSS PLUMBING and/or GROSS CONTRACTING, continued to operate out of the same Gross offices occupied by GROSS CONTRACTING and/or GROSS PLUMBING (at 2104 Niagara Street, Niagara Falls, N.Y.), and continued to employ the more than 50 employees of the predecessor entities.

87.     Collectively, GROSS PHC, GROSS PLUMBING, and GROSS CONTRACTING shall be referred to as "GROSS."

88.     Defendant MILLER SPRINGS REMEDIATION MANAGEMENT, INC. ("MSRM") is a corporation organized under the laws of the State of Delaware and registered to conduct business in the State of New York.  Defendant MILLER SPRINGS REMEDIATION MANAGEMENT, INC. is a subsidiary of Defendant OCCIDENTAL PETROLEUM CORPORATION and a predecessor in interest to Defendant GSH.

89.     Defendant OP-TECH ENVIRONMENTAL SERVICES, INC. ("OP-TECH") is a corporation organized under the laws of the State of Delaware conducting business in the State of New York.

90.     Defendant ROY'S PLUMBING, INC. d/b/a ROY'S PLUMBING, HEATING, AND COOLING ("ROY'S") is a corporation organized under the laws of the State of New York.

91.     Defendant SCOTT LAWN YARD, INC. ("SCOTT") is a corporation organized under the laws of the State of New York.

92.     Defendant SEVENSON ENVRIONMENTAL SERVICES, INC. f/k/a SEVENSON CONSTRUCTION COMPANY f/k/a ALBERT ELIA BUILDING COMPANY ("SEVENSON") is a corporation organized under the laws of the State of New York.

93.     As used herein, the term "**Landfill Defendant**" shall mean a defendant alleged to have engaged in intentional, negligent, careless, reckless, or otherwise tortious conduct relating to the initial contamination of the Love Canal Site and/or remediation, abatement, and/or cleanup of the area known as the Love Canal Superfund Site ("Love Canal Site"), including but not limited to the maintenance and monitoring of the Love Canal Site, continuing to the present.

94.     As used herein, the term "**Sewer Defendant**" shall mean a defendant alleged to have engaged in intentional, negligent, careless, reckless, or otherwise tortious conduct relating to the maintenance, refurbishment, rebuilding, and/or removal of the water and/or sewer systems and/or utility corridors in the Love Canal area of Niagara Falls, N.Y.  As described herein, the sewer and/or water systems in the Love Canal area have contained and do contain toxic Love Canal materials, and such materials have been leaching, migrating, surfacing, escaping, and/or moving onto and into Plaintiffs' homes, thus causing them harm, during their entire occupation of said homes.

95.     As used herein, the term "**2011 Sewer Incident Defendant**" shall mean a defendant alleged to have been involved in conduct relating to the January 11, 2011 discovery and/or release of toxic chemicals (that had been leaching migrating, surfacing, escaping, and/or moving onto and into Plaintiffs homes, thus causing them harm, during their entire occupation of said homes) and the ongoing aftermath of such discovery and/or release, in connection with

sewer repair work taking place in the area of 96th Street and Colvin Boulevard in Niagara Falls, New York (the "Colvin Trench Site").  Such conduct includes work relating to the Niagara Falls sewer remediation project, as well as the aftermath of and response to such discovery and/or release of chemicals, including but not limited to the remediation of the toxic discovery and/or release, the investigation thereof, and/or the failure to notify area residents (including Plaintiffs) of the dangerous nature of such toxins.

96.    Each of the following Defendants is a **LANDFILL DEFENDANT**:

      a.  OCCIDENTAL/HOOKER

      b.  GSH

      c.  MSRM

      d.  CRA

      e.  CITY OF NIAGARA FALLS

      f.  CECOS

      g.  GROSS

      h.  SEVENSON

97. Each of the following Defendants is a **SEWER DEFENDANT:**

      a.  OCCIDENTAL/HOOKER

      b.  GSH

      c.  MSRM

      d.  CRA

      e.  CITY OF NIAGARA FALLS

      f.  NIAGARA FALLS WATER BOARD

      g.  GROSS

h.   SEVENSON

98. Each of the following Defendants is a **2011 SEWER INCIDENT DEFENDANT:**

a.   OCCIDENTAL/HOOKER

b.   GSH

c.   CRA

d.   CITY OF NIAGARA FALLS

e.   NIAGARA FALLS WATER BOARD

f.   OP-TECH

g.   SCOTT

h.   GROSS

i.   ROY'S

99.    To the extent that certain Former Resident Plaintiffs no longer resided in the Love Canal area as of January 11, 2011, such Plaintiffs do not allege injury caused by or seek damages from the 2011 Sewer Incident Defendants by virtue of such 2011 Sewer Incident Defendants' involvement in conduct relating to the 2011 sewer incident and its ongoing aftermath as described *supra*.

100.    To the extent that certain Former Resident Plaintiffs no longer resided in the Love Canal area as of the formation of the Niagara Falls Water Board in 2003, such Former Resident Plaintiffs do not allege injury caused by or seek damages from Defendant Niagara Falls Water Board by virtue of its activities as a Sewer Defendant except to the extent that Defendant Niagara Falls Water Board assumed any liabilities of the prior owner of such sewers and/or is otherwise responsible for conduct occurring prior to its formation.

101.     To the extent that certain Former Resident Plaintiffs no longer resided in the Love Canal area as of the declaration of a state of emergency on or about August 2, 1978, such Plaintiffs seek damages only from Defendants OCCIDENTAL/HOOKER and CITY OF NIAGARA FALLS, and/or any other party that is obligated to provide an indemnity to these Defendants, or otherwise may be liable for their conduct.

### C.  <u>Nature of Each Defendant's Conduct</u>

102.     Without prejudice and upon information and belief, Defendant OCCIDENTAL/HOOKER, acting knowingly and either alone or in concert, engaged in the following misconduct:

a.  dumping approximately 21,000 tons of toxins at the Love Canal Site;

b.  intentional, negligent, careless, reckless, and/or otherwise tortious conduct in connection with the initial remediation of the toxins it had dumped at the Love Canal site;

c.  intentional, negligent, careless, reckless, and/or otherwise tortious conduct in connection with the ongoing maintenance, monitoring, and/or oversight of the Love Canal Site and surrounding area from in or about 1995 (when control of the Love Canal Site was transferred to OCCIDENTAL/HOOKER), and continuing to the present day;

d.  failing to ensure that toxins were not leaching, migrating, surfacing, escaping, and/or moving from within the Love Canal containment system following its construction and continuing to the present day;

e.  failing to report to relevant authorities and/or the public that toxins were escaping from the Love Canal containment system following its construction and continuing to the present day;

f.  failing to ensure that the area sewers and/or water systems and/or utility corridors were free from Love Canal contamination;

g.  failing to report to relevant authorities and/or the public that Love Canal toxins were and are present within area sewers and/or water systems and/or utility corridors;

h.  intentional, negligent, careless, reckless, and/or otherwise tortious conduct relating to the response and ongoing aftermath to the January 11, 2011 release of toxic chemicals at the Colvin Boulevard trench site as alleged herein, including but not limited to the failure to advise area residents (including Plaintiffs) of the dangerous nature of the toxins to which they were exposed;

i.  failing to advise area residents, including Plaintiffs, of the dangerous nature of the toxins to which they were exposed beginning from the time of the initial dumping of toxins at Love Canal and continuing to the present;

j.  unlawfully releasing and allowing to escape and/or migrate into the environment substances hazardous to public health, safety, and/or the environment, acutely hazardous to public health, safety or the environment, and/or a hazardous waste;

k.  failing to properly investigate the potential negative health effects of the chemicals that it had dumped on the Love Canal site in the 1940s and 1950s,

despite its early recognition and understanding of the dangers posed by the chemicals that it had improperly dumped at the Love Canal Site;

l.  failing to advise relevant government authorities of the dangerous nature of the toxins being released from the Love Canal site and/or the surrounding sewer and water systems;

m.  failing to adequately monitor the actual effects of the chemicals that it had wrongfully dumped at Love Canal on the surrounding neighborhood, including but not limited to adverse health effects such as those suffered by Plaintiffs, as well as the contamination of the surrounding soil, water, and air;

n.  failing to consider the particular local geography and geology in evaluating the effects or likely effects of the chemicals that it had improperly disposed at the Love Canal site;

o.  making false, misleading, and deceptive statements to the public at large, as well as to relevant governmental agencies, concerning the Love Canal site, including but not limited to statements concerning the toxins which it had dumped on the land and the safety and/or contamination of the neighborhoods surrounding the Love Canal site;

p.  concealing information from and failing to warn the public at large, as well as relevant governmental agencies, concerning the Love Canal site, including but not limited to information concerning the toxins which it had dumped on the land and the safety and/or contamination of the neighborhoods surrounding the Love Canal site;

q.   failing to issue appropriate warnings concerning the likely environmental and public health implications of its conduct, when it knew or should have known of the growing development of medical and scientific knowledge concerning the toxicity and/or harmful medical effects of substances it had dumped on the Love Canal Site;

r.   failing to continuously monitor and warn the Niagara Falls school board of the dangers posed by the material it had dumped on the Love Canal site, when it knew or should have known that a school had been constructed on the site;

s.   failing to continuously monitor and warn the neighborhood residents (including Plaintiffs) of the dangers posed by the materials it had dumped on the Love Canal Site, when it knew or should have known that a residential community was being developed in dangerously close proximity to the land on which it had dumped 21,000 tons of toxins.

103.   Without prejudice and upon information and belief, Defendant CITY OF NIAGARA FALLS, acting knowingly and either alone or in concert, engaged in the following misconduct:

a.   failing to properly maintain and operate the water and sewer facilities in the Love Canal area up until 2003 (when such ownership was supposedly transferred to Defendant Niagara Falls Water Board upon its creation);

b.   failing to maintain water and sewer facilities that were free from Love Canal toxins during its ownership and/or management of said sewers;

c.   failing to adequately inspect the water and sewer facilities in the Love Canal area to ensure that they were free of toxins;

d.  failing to advise relevant government authorities of the dangerous nature of the toxins being released from the Love Canal site and/or the surrounding sewer and water systems;

e.  allowing Love Canal toxins from sewer and water facilities under its ownership and/or control to leach, migrate, surface, escape, and/or move onto and into the properties of Plaintiffs;

f.  failing to remediate Love Canal contamination present within the water and sewer facilities under its ownership, care, and control;

g.  negligently, recklessly, carelessly, and/or otherwise tortiously awarding contracts for Love Canal Site remediation work to contractors which were unqualified to perform such work;

h.  negligently, recklessly, carelessly, and/or otherwise tortiously failing to terminate such contracts for Love Canal work upon learning that such contractors were unqualified to perform such work;

i.  dumping of toxic waste at the Love Canal site;

j.  intentional, negligent, careless, reckless, and/or otherwise tortious conduct relating to the response and ongoing aftermath to the January 11, 2011 release and/or discovery of toxic chemicals at the Colvin Boulevard trench site as alleged herein, including but not limited to CITY's hiring, supervision, or delegated authority;

k.  intentionally, negligently, carelessly, recklessly, and/or otherwise tortiously leaving inactive sewer channels in place, thus further contributing to the

migration of contaminants away from the Love Canal Site, and onto and into the homes of Plaintiffs;

l.  failing to advise area residents, including Plaintiffs, of the dangerous nature of their exposure to Love Canal toxins as a result of CITY's systemic and longstanding practice (either individually or through agents) of installing bypass pumps at critical junctures (including but not limited to 93rd Street and Colvin Boulevard) in order to direct toxic material directly to Cayuga Creek, which also has the effect of vaporizing and/or venting such toxins into the air, and thus, Plaintiffs homes;

m.  failing to advise area residents, including Plaintiffs, of the dangerous nature of the toxins to which they were exposed;

n.  unlawfully releasing into the environment substances hazardous to public health, safety, and/or the environment, acutely hazardous to public health, safety or the environment, and/or a hazardous waste.

104.   Without prejudice and on information and belief, Defendant NIAGARA FALLS WATER BOARD, acting knowingly and either alone or in concert, engaged in the following misconduct:

a.  failing to properly maintain and operate the water and sewer facilities in the Love Canal area from 2003 (when such ownership was supposedly transferred to Defendant Niagara Falls Water Board upon its creation) to the present;

b.  failing to maintain water and sewer facilities that were free of Love Canal toxins during its ownership and/or management of said sewers;

c.  failing to adequately inspect the water and sewer facilities in the Love Canal area to ensure that they were free of toxins;

d.  allowing Love Canal toxins from sewer and water facilities under its ownership to leach, migrate, surface, escape, and/or move onto and into the properties of Plaintiffs;

e.  intentionally, negligently, carelessly, recklessly, and/or otherwise tortiously leaving inactive sewer channels in place, thus further contributing to the migration of contaminants away from the Love Canal Site, and onto and into the homes of Plaintiffs;

f.  failing to remediate Love Canal contamination present within the water and sewer facilities under its ownership, care, and control;

g.  failing to advise relevant government authorities of the dangerous nature of the toxins being released from the Love Canal site and/or the surrounding sewer and water systems;

h.  negligently, carelessly, recklessly, and/or otherwise tortiously excavating a 50-foot section of sanitary pipe (located at or about Colvin Boulevard and 96th Street in Niagara Falls, N.Y.) on January 11, 2011, resulting in a discovery and/or further acute release of Love Canal toxins in to the environment (in addition to the baseline Love Canal toxins to which Plaintiffs were exposed prior to and after the January 11 incident);

i.  the negligent, careless, reckless, and otherwise tortious ongoing response to the 2011 discovery and/or release of chemicals, including but not limited to

the "jetting" of such toxic sediments, which further disbursed the material onto and into the Plaintiffs' homes;

j.   failing to advise area residents, including Plaintiffs, of the dangerous nature of the toxins to which they were exposed;

k.   intentionally, negligently, recklessly, carelessly, or otherwise tortiously operating bypass pumps (either individually or through agents) to remove toxic sediment and other hazardous materials from area sewers in the Love Canal area and pumping said material directly into Cayuga Creek, thus further exposing area residents (including Plaintiffs) to toxic chemicals;

l.   failing to advise area residents, including Plaintiffs, of the dangerous nature of their exposure to Love Canal toxins as a result of NFWB's systemic and longstanding practice of installing bypass pumps at critical junctures (including but not limited to 93rd Street and Colvin Boulevard) in order to direct toxic material directly to Cayuga Creek, which also has the effect of vaporizing and/or venting toxins into the air, and thus, Plaintiffs homes;

m.   unlawfully releasing into the environment substances hazardous to public health, safety, and/or the environment, acutely hazardous to public health, safety or the environment, and/or a hazardous waste.

105.   Without prejudice and on information and belief, Defendant GSH, acting knowingly and either alone or in concert, engaged in the following misconduct:

a.   since approximately 1995 and continuing to the present, negligently, recklessly, carelessly, or otherwise tortiously executing its duties of operation, maintenance, and monitoring ("OM&M") of the Love Canal Site, including

{00016370}                                    27

but not limited to: (i) groundwater monitoring at various wells on or around

the site; (ii) groundwater elevation measurement at piezometers located

around the site; (iii) operation and maintenance of the leachate collection and

treatment system; and, (iv) an annual performance assessment of the leachate

collection and treatment facility and the barrier drain system;

b.   failing to ensure that there is no off-site migration of chemical contaminants

from the Love Canal Site;

c.   failing to report the off-site migration of chemical contaminants from the

Love Canal Site;

d.   failing to advise relevant government authorities of the dangerous nature of

the toxins being released from the Love Canal site and/or the surrounding

sewer and water systems;

e.   negligent, careless, reckless, and otherwise tortious conduct relating to the

2011 release and/or discovery of toxins from the Colvin Trench and ongoing

aftermath, including but not limited to the following activities: (i) replacing

the broken 50-foot sanitary sewer section, (ii) cleaning the sanitary sewer

from 97th Street to 91st Street, and (ii) cleaning the 91st Street lift station;

f.   failing to advise area residents, including Plaintiffs, of the dangerous nature of

the toxins to which they were exposed;

g.   failing to routinely and/or adequately monitor the air, soil, or surface water in

and around the Love Canal Site;

h. unlawfully releasing into the environment substances hazardous to public health, safety, and/or the environment, acutely hazardous to public health, safety or the environment, and/or a hazardous waste.

106. Without prejudice and on information and belief, Defendant CRA, acting knowingly and either alone or in concert, engaged in the following misconduct:

a. negligently, carelessly, recklessly, or otherwise tortiously performing OM&M and reporting activities at the Love Canal Site (under GSH's direct management and/or control);

b. negligently, recklessly, carelessly, or otherwise tortiously performing services on behalf of GSH in the response to the 2011 sewer incident and ongoing aftermath at the Colvin Trench Site;

c. failing to advise area residents, including Plaintiffs, of the dangerous nature of the toxins to which they were exposed;

d. failing to advise relevant government authorities of the dangerous nature of the toxins being released from the Love Canal site and/or the surrounding sewer and water systems;

e. failing to routinely and/or adequately monitor the air, soil, or surface water in and around the Love Canal Site;

f. unlawfully releasing into the environment substances hazardous to public health, safety, and/or the environment, acutely hazardous to public health, safety or the environment, and/or a hazardous waste.

107. Without prejudice and on information and belief, Defendant CECOS, acting knowingly and either alone or in concert, engaged in the following misconduct:

a.  improperly obtaining the Love Canal contract through bribery of a CITY OF NIAGARA FALLS official, including cash, a mortgage guarantee, and a job with a CECOS subsidiary in Florida.

b.  negligently, carelessly, recklessly, or otherwise tortiously performing its duties to implement the pollution abatement plan for the Love Canal site;

c.  utilizing substandard materials (including but not limited to the "rings" utilized to secure the Love Canal cap) in its construction that CECOS knew or should have known were not to specification and/or were not sufficient to pass inspection;

d.  utilizing permeable clay that was mixed with dirt (as opposed to "pure" clay which would be less permeable, as required by the work specifications) in constructing the clay cap at the Love Canal site;

e.  utilizing the services of Defendant GROSS to bribe public officials such that the work performed by CECOS at the Love Canal site would pass inspection;

f.  bribing public officials so that the Love Canal remedial system would pass inspection, while knowing that substandard work had been performed;

g.  failing to adequately clean, remove, and/or dispose of toxic materials and/or sediment that it or its agents had removed from the Love Canal Site;

h.  failing to adequately clean, remove, and/or dispose of toxic materials and/or sediment  from the sewers surrounding the Love Canal Site;

i.  unlawfully releasing into the environment substances hazardous to public health, safety, and/or the environment, acutely hazardous to public health, safety or the environment, and/or a hazardous waste.

108.    Without prejudice, and on information and belief, GROSS, acting knowingly and either alone or in concert, engaged in the following misconduct:

a.  through GROSS PLUMBING, unlawfully serving as a "front" to bribe government inspectors on behalf of CECOS, such that the work that CECOS inadequately performed in constructing the Love Canal remedial system would pass inspection;

b.  through GROSS PLUMBING and/or GROSS CONTRACTING, negligently, carelessly, recklessly, or otherwise tortiously performing inspections at homes throughout the Love Canal area, advising residents (including Plaintiffs) that their homes were safe and/or free of toxic contamination (when in fact they were not), and otherwise misleading residents (including Plaintiffs) as to the cause of the sludge present in the sewers, pipes, and sump pumps;

c.  through GROSS PLUMBING and/or GROSS CONTRACTING, negligently, carelessly, recklessly, or otherwise tortiously performing its function of cleaning the sewers in the Love Canal area (and/or representing that it had cleaned certain sewers when in fact it had not), so as to further expose area residents (including Plaintiffs) to Love Canal toxins;

d.  through GROSS CONTRACTING, negligently, carelessly, recklessly, or otherwise tortiously performing functions relating to the Colvin Trench project as a subcontractor for Defendant SCOTT;

e.  through GROSS, GROSS PLUMBING, and GROSS CONTRACTING, intentionally, negligently, carelessly, recklessly, or otherwise tortiously failing to report the presence of toxic and/or otherwise suspicious materials in area

homes (including those of Plaintiffs) after being contracted almost enclusively to inspect such homes by, *inter alia*, Defendants CITY, NFWB, GSH, and CRA;

f.   unlawfully releasing and allowing to escape and/or migrate into the environment substances hazardous to public health, safety, and/or the environment, acutely hazardous to public health, safety or the environment, and/or a hazardous waste.

109.   Without prejudice, and on information and belief, MILLER SPRINGS REMEDIATION MANAGEMENT, INC., acting knowingly and either alone or in concert, engaged in the following misconduct:

a.   from on or about July 1998 until on or about October 1, 2008 (when GSH transferred OM&M responsibility to CRA), intentionally, negligently, carelessly, recklessly, or otherwise tortiously performed OM&M and reporting activities at the Love Canal Site (under GSH's direct management and/or control);

b.   failing to routinely and/or adequately monitor the air, soil, or surface water in and around the Love Canal Site;

c.   intentionally, negligently, recklessly, carelessly, or otherwise tortiously performing services on behalf of GSH in the response to the 2011 sewer incident at the Colvin Trench Site and the ongoing aftermath thereof;

d.   failing to advise area residents, including Plaintiffs, of the dangerous nature of the toxins to which they were exposed;

e. failing to advise relevant government authorities of the dangerous nature of the toxins being released from the Love Canal site and/or the surrounding sewer and water systems;

f. unlawfully releasing into the environment substances hazardous to public health, safety, and/or the environment, acutely hazardous to public health, safety or the environment, and/or a hazardous waste.

110. Without prejudice and on information and belief, OP-TECH, acting knowingly and either alone or in concert, engaged in the following misconduct:

a. intentionally, negligently, carelessly, recklessly, or otherwise tortiously performing its functions as a contractor that GSH and/or other Defendants retained to assist in completing the sewer replacement at the Colvin Trench and assist in sewer cleaning following the 2011 sewer incident at the Colvin Trench, and continuing to the present;

b. intentionally, negligently, carelessly, recklessly, or otherwise tortiously causing chemicals and toxins to be further disbursed into the environment, and onto and into Plaintiffs homes, thus causing damage to the Plaintiffs;

c. as part of its engagement following the 2011 sewer incident, intentionally, negligently, carelessly, recklessly, or otherwise tortiously retaining a subcontractor to utilize a high-pressure "jetting" device to clean the roadway and sewers following the 2011 sewer incident, thus further disbursing toxins into the environment, including onto and into the homes of Plaintiffs;

    d.   unlawfully releasing into the environment substances hazardous to public health, safety, and/or the environment, acutely hazardous to public health, safety or the environment, and/or a hazardous waste.

111.   Without prejudice and on information and belief, ROY's PLUMBING, acting knowingly and either alone or in concert, engaged in the following misconduct:

    a.   intentionally, negligently, carelessly, recklessly, or otherwise tortiously performing its functions as a subcontractor that OP-TECH and/or other Defendants retained to assist in completing the sewer replacement at the Colvin Trench and assist in sewer cleaning following the 2011 sewer incident at the Colvin Trench;

    b.   intentionally, negligently, carelessly, recklessly, or otherwise tortiously utilizing a high-pressure "jetting" device to clean the roadway and sewers following the 2011 sewer incident, thus further disbursing toxins into the environment, including onto and into the homes of Plaintiffs;

    c.   intentionally, negligently, carelessly, recklessly, or otherwise tortiously representing to Love Canal area residents (including Plaintiffs) that their homes were safe following the 2011 sewer incident and ongoing aftermath, when in fact they were not, and indeed ROY'S workers had observed NAPL in such homes;

    d.   intentionally, negligently, carelessly, recklessly, or otherwise tortiously failing to advise Love Canal area residents (including Plaintiffs) that their homes were not safe following the 2011 sewer incident and ongoing aftermath, when in fact they knew or should have known that to be the case;

e. unlawfully releasing into the environment substances hazardous to public health, safety, and/or the environment, acutely hazardous to public health, safety or the environment, and/or a hazardous waste.

112.     Without prejudice and on information and belief, SCOTT LAWN YARD, acting knowingly and either alone or in concert, engaged in the following misconduct:

a. Intentionally, negligently, carelessly, recklessly, or otherwise tortiously performing its functions as a contractor retained by NFWB in early 2011 to repair and/or replace 17 existing sewer lines in the LaSalle area of Niagara Falls, N.Y., including the sewer line at the site of the Colvin Trench;

b. intentionally, negligently, carelessly, recklessly, or otherwise tortiously causing the release of toxic chemicals from the Colvin Trench on or about January 11, 2011;

c. intentionally, negligently, carelessly, recklessly, or otherwise tortiously failing to advise area residents (including Plaintiffs) that it would be performing work on the sewers in close proximity to Love Canal, and advising them to take precautions;

d. intentionally, negligently, carelessly, recklessly, or otherwise tortiously failing to advise relevant government agencies that it would be performing work on the sewers in close proximity to Love Canal;

e. intentionally, negligently, carelessly, recklessly, or otherwise tortiously undertaking the project at the Colvin Trench even though it lacked the requisite licensing, training, equipment, and/or expertise to work with

hazardous Love Canal toxins, when in fact company representatives believed that toxins would be present in the Colvin Trench;

f.   unlawfully releasing into the environment substances hazardous to public health, safety, and/or the environment, acutely hazardous to public health, safety or the environment, and/or a hazardous waste.

113.   Without prejudice and on information and belief, SEVENSON ENVIRONMENTAL, acting knowingly and either alone or in concert, engaged in the following misconduct:

a.   intentionally, negligently, carelessly, recklessly, or otherwise tortiously undertaking responsibility as a principal contractor for the initial remediation work at Love Canal (despite historically being a contracting company and never previously having been involved in an environmental remediation project);

b.   negligently, carelessly, recklessly, or otherwise tortiously performing its duties to implement the pollution abatement plan for the Love Canal site;

c.   utilizing substandard materials in its construction of either the leachate collection and/or the clay cap, such that toxins were not and are not contained within the Love Canal containment system;

d.   negligently, carelessly, recklessly, or otherwise tortiously performing its function of excavating, handling, and disposing of extremely high concentrations of hazardous waste at the Love Canal site continuing to the present day, such that area residents (including Plaintiffs) continue to be exposed to such material;

e.  negligently, carelessly, recklessly, or otherwise tortiously cleaning 12 miles of storm sewer in the Love Canal area, such that said sewers were not rendered free of Love Canal toxins;

f.  intentionally, negligently, recklessly, or otherwise tortiously failing to advise area residents of the presence of Love Canal contamination in the sewers and/or other public works in the Love Canal area, despite the fact that it knew or should have known of such contamination by virtue of SEVENSON routinely performing work related to the ongoing functioning of the Love Canal containment system;

g.  intentionally, negligently, carelessly, recklessly, and/or otherwise tortiously leaving inactive sewer channels in place, thus further contributing to the migration of contaminants away from the Love Canal Site, and onto and into the homes of Plaintiffs;

h.  failing to adequately clean, remove, and/or dispose of toxic materials and/or sediment that it or its agents had removed from the Love Canal Site;

i.  intentionally, negligently, recklessly, carelessly, or otherwise tortiously failing to advise relevant government agencies of the presence of Love Canal contamination in the sewers and/or other public works in the Love Canal area, despite the fact that it knew or should have known of such contamination by virtue of SEVENSON routinely performing work related to the ongoing functioning of the Love Canal containment system;

j.   unlawfully releasing into the environment substances hazardous to public health, safety, and/or the environment, acutely hazardous to public health, safety or the environment, and/or a hazardous waste.

## III.   GENERAL ALLEGATIONS

### A.  Introduction

114.   The allegations contained in paragraph "1" through "113" inclusive are hereby realleged as more fully set forth herein.

115.   Defendants are individually and collectively responsible for callously, wrongfully, and dishonestly exposing Plaintiffs to a host of deadly chemicals which, upon information and belief, include, but are not limited to, benzene hexachloride (the main component of the pesticide lindane, a neurotoxin), chlorobenzenes (used in the synthesis of DDT), Bis(2-ethylhexyl)phthalate (commonly known as DEHP), and dozens of other toxins, many of which Defendants knew or should have known were toxic.  For ease of reference, Defendants have been divided into one of three categories (Landfill Defendants, Sewer Defendants, and 2011 Sewer Incident Defendants) to distinguish between each Defendant's conduct and how such behavior caused Plaintiffs' injuries.

116.   Among other chemicals to which there was wrongful exposure is 2,3,7,8-tetrachlorodibenzo-p-dioxin, commonly called dioxin, which is a byproduct of trichlorophenol manufacture and among the world's most carcinogenic chemicals.

117.   All of these chemicals are known or believed to be reproductive toxins, carcinogens, teratogens, and/or otherwise harmful to the human body.

118.    In addition to the birth defects alleged above, all Plaintiffs have been exposed to toxins known to inflict cancers and/or other latent diseases and injuries, and also known to adversely impact reproductive capacity.

119.    As a result of the foregoing, each Plaintiff also suffers from the emotional distress associated with, *inter alia*, their individual illnesses, their prospective and/or latent illnesses, the illnesses of their family members, the prospective loss of their family members, and the economic turmoil that Defendants' conduct has caused.

### B. <u>Love Canal Prior to 1954</u>

120.    Love Canal received its name from William T. Love, an entrepreneur and developer in Niagara Falls, New York in the late 1800s.

121.    In 1892, Love proposed connecting the upper and lower Niagara River by digging a canal six to seven miles long, in hopes of harnessing the water of the of the upper Niagara River into a navigable channel, which would create a man-made waterfall with a 280-foot drop into the lower Niagara River, providing cheap hydroelectric power.

122.    Love's dream abruptly collapsed after the invention of alternating-current electricity, which could travel farther by wire than direct current, thus obviating the need for factories to locate near the falls.

123.    The Love Canal left behind became nothing more than a half-mile-long swimming hole until such time as Defendant OCCIDENTAL/HOOKER purchased the site.

124.    In or about 1941, Defendant OCCIDENTAL/HOOKER wrongfully began using the Love Canal site as an industrial and municipal dumpsite for hazardous waste disposal. Engineers at Defendant OCCIDENTAL/HOOKER negligently and/or recklessly opined that the

clay composition of the soil beneath the Love Canal site somehow made it ideal for the "safe" dumping of toxins.

125.    From approximately 1941 to 1953, Defendant OCCIDENTAL/HOOKER improperly dumped more than 21,000 tons of toxic waste on the Love Canal site, some of it loose and some of it in metal drums buried just beneath the surface.

126.    The toxic waste that Defendant OCCIDENTAL/HOOKER disposed of at Love Canal is made up of approximately 253 distinct chemicals.

127.    In addition to the materials wrongfully dumped by Defendant OCCIDENTAL/HOOKER, Defendant CITY OF NIAGARA FALLS also utilized the Love Canal site for waste disposal.

## C. Transfer of the Love Canal Site

128.    In or about 1953, after prolonged and wrongful deposit of toxic waste at the Love Canal site and cosmetically concealing this misconduct by covering the waste with dirt and grass, Defendant OCCIDENTAL/HOOKER sold the land to the Niagara Falls Board of Education for one dollar.

129.    Fully aware of the grave dangers associated with its wrongful conduct, Defendant OCCIDENTAL/HOOKER endeavored to hide the full extent of its wrongdoing and evade responsibility therefor while including in the deed transfer a sham "warning" indicating that in the course of its business it had buried certain wastes on the property, and noting that such materials should not be disturbed by digging.

130.    Following Defendant OCCIDENTAL/HOOKER's sale of the Love Canal land, and with the full knowledge of Defendant OCCIDENTAL/HOOKER, the Niagara Falls Board of Education began in or about 1954 to construct an elementary school on the canal property.

131.    Because the school board had no way of knowing the full extent of Defendant OCCIDENTAL/HOOKER's wrongful dumping, a school was constructed without a basement. This "99th Street School" was completed in or about 1955, situated atop 21,000 tons of lethal toxins.  Thereafter, it served approximately 400 young students per year.

132.    Residential homebuilding around Love Canal boomed in the 1950s and, upon information and belief, Defendant OCCIDENTAL/HOOKER knew or should have known of this fact.

133.    Despite being fully aware of the host of lethal chemicals it had dumped on the Love Canal site, and also fully aware that the area was undergoing extensive residential development, Defendant OCCIDENTAL/HOOKER provided homeowners moving into the area with no warning or other information that would indicate that the property was situated in proximity to deadly toxins that it had wrongfully dumped.

134.    Most families who moved into the area were understandably unaware of the Love Canal landfill and its poisons, largely because Defendant OCCIDENTAL/HOOKER had concealed the fact of its wrongful toxic dumping by giving the Love Canal a cosmetic "face-lift" prior to its sale to the school board.  Specifically, Defendant OCCIDENTAL/HOOKER had covered the Love Canal with dirt and grass, and planted trees rendering it innocent-looking to the naked eye.

135.    By 1978, there were approximately 800 private single-family homes and 240 low-income apartments built in close proximity to the Love Canal.

136.    The 99th Street School was located near the center of the landfill.  The Niagara River, to the south, and Bergholtz Creek, to the north, formed natural boundaries for the area affected by the migrating toxins.

### D. __Resident Complaints and Government's Response__

137.    From the late 1950s through the 1970s, Love Canal area residents repeatedly complained to authorities of strange odors in the neighborhood and/or chemical residues surfacing near or in their yards and on the playground of the 99th Street School.

138.    Defendant CITY OF NIAGARA FALLS, responding to these complaints, visited the area and negligently did little more than cover the chemical substances complained of with dirt or clay.

139.    Although Defendant CITY OF NIAGARA FALLS knew or should have known of the fact of the wrongful dumping of both Defendants OCCIDENTAL/HOOKER and CITY OF NIAGARA FALLS, it did not conduct further investigation, remediation, or issue any warnings.

140.    During or prior to 1976, after years of complaints, Defendant CITY OF NIAGARA FALLS finally hired a consultant to investigate.

141.    In 1976, the Calspan Corporation completed a study of the Love Canal area and, not surprisingly, found toxic chemical residues in the air and in the sump pumps in a significant number of homes near the southern end of the Love Canal.

142.    Calspan also found metal drums, presumably filled with dangerous chemicals, at or just beneath the surface, and high levels of PCBs in the storm sewer system.

143.    Calspan recommended that the Love Canal be covered with clay, home sump pumps be sealed off, and a tile drainage system be installed to control the migration of wastes.

144.    Defendant CITY OF NIAGARA FALLS carelessly, negligently, and/or recklessly elected not to adopt any of these Calspan recommendations, and instead merely placed window fans in a few select homes believed to contain abnormal levels of chemical residues.

145.    In or about 1978, authorities from the New York State Department of Health ("NYSDOH") began to study the Love Canal area, and released preliminary findings that women living near the southern end of the Canal were experiencing greater than normal rates of miscarriage and birth defects.

146.    On or about August 2, 1978, NYSDOH commissioner Robert Whalen issued a health order and announced a state of emergency at Love Canal.  The health order recommended that the 99th Street School be closed and that pregnant women and children under the age of two temporarily evacuate.

147.    Soon thereafter, New York Governor Hugh Carey announced that the State would purchase the 239 homes closest to Love Canal and evacuate residents of those homes.

148.    The State defined the affected area and erected a 10-foot fence around the evacuated land.  This decision was arbitrary because at that time, and to this day, nobody knew or knows how far into the surrounding residential neighborhoods the chemicals improperly dumped by Defendant OCCIDENTAL/HOOKER had spread or how many people were affected.

149.    As the investigation continued, additional evacuation orders were implemented. In total, approximately 950 families were evacuated from a 10-square-block area surrounding the landfill.

### E.    "Remediation" and its Aftermath

150.    Following the evacuation orders, an interagency task force was charged with making recommendations concerning the construction of a drainage system to prevent further migration of toxic chemicals from Love Canal.

151.    In February 1978, Defendant CITY OF NIAGARA FALLS retained Defendant CRA to develop a groundwater pollution abatement plan.

152.    As part of this program, Defendants OCCIDENTAL/HOOKER, SEVENSON

ENVIRONMENTAL SERVICES, INC., and CECOS INTERNATIONAL, INC. were involved

in negligently, carelessly, and/or recklessly remediating the contamination.  As noted above,

neither CECOS nor SEVENSON were qualified to undertake this task, and in fact CECOS

obtained its contract through improper payments to CITY OF NIAGARA FALLS officials.

153.    The work performed was rife with intentional, negligent, careless, reckless, and/or

otherwise tortious operational failures, which are demonstrated by the fact that dangerous toxins

continued to be present in the Niagara Falls sewer system at the time of the January 11, 2011

incident at the Colvin Trench (*see* § II(C), *infra*), and continuing to the present.

154.    Upon information and belief, CECOS' wrongful behavior includes, but is not

limited to, that which is described *supra*.  Such misconduct rendered the Love Canal containment

system wholly inadequate to achieve its purpose of containing and preventing the further spread

and/or disbursement of the toxins which OCCIDENTAL/HOOKER had wrongfully dumped at

Love Canal.

155.    Similarly, SEVENSON was negligent, careless, and/or reckless, *inter alia*, in

undertaking the remediation project in the first place.  Indeed, at the time, SEVENSON was

primarily a contracting company and had insufficient experience with an environmental

remediation on the scale of Love Canal.  As such, SEVENSON was wholly unqualified to

undertake this work, and did a substandard job in remediating Love Canal waste, *inter alia*, for

the reasons stated *supra*.   The cleanup plan consisted of a tile drain collection system designed

to "contain" the waste and prevent any outward migration of chemical leachate.

156.    A graded trench system was dug around the canal's perimeter to intercept

migrating leachate and to create a barrier drain system.

157.    The leachate collected from this drain system is pumped to an on-site treatment plant that utilizes a series of filters, including activated charcoal, in an attempt to remove toxic chemicals from the waste stream.

158.    The remaining, theoretically "clean" water is then flushed down the regular municipal sanitary sewer system.

159.    Notably, dangerous chemicals such as mercury and other heavy metals are *not* intended to be removed by this treatment system.

160.    A clay cap was placed over the Love Canal as a cover in an attempt to minimize rainwater from entering the canal surface, to prevent chemicals from vaporizing into the air, and to prevent the outside environment from any direct contact with contaminated soil.

161.    A monitoring system to evaluate the effectiveness of this system was not established until five years after the system's original implementation.

162.    Thus, there were no baseline data on contaminant levels in the groundwater following the original remediation efforts.

163.    Once a monitoring system was put into place, however, it revealed that toxins were systematically leaking into the nearby Niagara River.

164.    Such leaking was not a surprise, since there was no bottom to the so-called "containment" system (and given the negligent conduct of certain Landfill Defendants in the construction of the containment system as alleged herein).

165.    Other data also indicated that contaminants were increasing in the monitoring wells outside the Love Canal.

166.    Landfill Defendants were also otherwise negligent in the design, implementation, and construction of infrastructure in connection with the Love Canal remediation.

167.     For example, Landfill Defendants were reckless, negligent, and/or careless in the selection of polyvinyl chloride ("PVC") pipe to replace underground pipes (sewer and otherwise) in the Love Canal area during and after the original Love Canal remediation.  PVC pipe is easily corroded by the toxins at issue in this case, and Landfill Defendants knew or should have known that such piping would disintegrate over time as a result of the foreseeable contact with such chemicals, thus resulting in further dispersion of chemicals.

168.     In addition to the attempted remediation of the Love Canal site itself, efforts were made to remediate the surrounding sewers, creeks, and berms.  This included (a) hydraulically cleaning the sewers; (b) removal and disposal of the contaminated sediments; (c) inspecting the sewers for defects that could allow contaminants to migrate; (d) limiting access, dredging and hydraulically cleaning the Black Creek culverts; and (e) removing and storing Black and Bergholtz creeks' contaminated sediments.

169.     Approximately 62,000 linear feet of storm and sanitary sewers were supposed to have been cleaned in or about 1986, and an additional approximately 6,000 feet were supposed to have been cleaned in or about 1987.  Upon information and belief, Defendant GROSS, SEVENSON, and/or CECOS were charged contracted for this task, and either did not perform the work that had been contracted, or performed such work negligently, carelessly, recklessly, or otherwise tortiously, resulting in the continued exposure of area residents (including Plaintiffs) to Love Canal toxins to the present.

170.     In 1989, Black and Bergholtz Creeks were dredged of approximately 14,000 cubic yards of sediments.  Clean riprap was supposed to have been placed in the creek beds, and the banks were replanted with grass.

171.    Prior to final disposal, the sewer and creek sediments from these cleaning projects and other wastes [approximately 33,500 cubic yards] were stored at Defendant OCCIDENTAL/HOOKER's Niagara Falls facilities, within Defendant OCCIDENTAL/HOOKER's exclusive control.

172.    In addition, the contaminated sediments and wastes from the sewers and creeks, as well as other Love Canal wastes, were intended to be removed and thermally treated (but were not) prior to disposal at Defendant OCCIDENTAL/HOOKER's Niagara Falls facility.

173.    Thus, upon information and belief, due to the actions of Landfill Defendants, the remediation program did not properly remediate the toxins within the Love Canal containment area and/or did not properly contain such toxins and prevent them from spreading throughout the Love Canal neighborhood from the time of its inception up to and including the present day.

174.    During and following the remediation, certain Love Canal area homeowners filed suit against Defendant OCCIDENTAL/HOOKER.

175.    Defendant OCCIDENTAL/HOOKER resolved these lawsuits.

176.    In addition to that private litigation, Defendant OCCIDENTAL/HOOKER agreed to pay $98 million to cover New York State's Love Canal cleanup costs, and $129 million to cover the federal government's Love Canal cleanup costs.

177.    Although Defendant OCCIDENTAL/HOOKER resolved these Love Canal matters, nothing in these litigations or the terms of their resolution eliminates or alters in any way Defendant OCCIDENTAL/HOOKER's obligations and/or duties to the instant Plaintiffs.

178.    None of the instant Plaintiffs were parties to any previous litigation relating to Love Canal.

**F.    Love Canal "Revitalization"**

179.    In or about 1988, NYSDOH publicly declared the area north of Love Canal to be safe for habitation on the basis of an interagency review.

180.    Empty homes in the Love Canal area were refurbished and/or cosmetically improved and sold for approximately 20% below market value as an enticement to repopulate and revitalize the area.

181.    In or about August 1990, the Love Canal Revitalization Agency renamed a portion of Love Canal as Black Creek Village in an attempt to shed the stigma associated with the name "Love Canal," and entice homebuyers to consider settling their families in the neighborhood.

182.    In or about November 1990, without knowledge or reason to believe that Landfill Defendants had recklessly, negligently, and/or carelessly performed their duties in connection with Love Canal remediation and/or otherwise fraudulently concealed the full extent of the dangers associated with the Love Canal neighborhood, the first new family moved into the area.

183.    Additional families thereafter purchased homes in the Love Canal neighborhood.

184.    Since the rehabilitation program began, approximately 260 homes have been sold in the Love Canal area.

185.    In addition, a new senior citizen housing development has been constructed on vacant property in the so-called "habitable" portion of the emergency declaration area.

186.    In or about 1995, Defendants GSH and CRA, at Defendant OCCIDENTAL/HOOKER's direction, assumed responsibility for the ongoing management, operation, maintenance and/or monitoring of the Love Canal site.

187.    Thereafter, and in particular from in or about 1998 until in or about 2008, Defendant OCCIDENTAL/HOOKER assigned Defendant MILLER SPRINGS REMEDIATION

MANAGEMENT, INC. the responsibility of operation and maintenance of certain pumps and treatment equipment in the Love Canal containment area.

188.     Thus, at all relevant times, Defendants CRA, GSH, and MILLER SPRINGS REMEDIATION MANAGEMENT, INC. acted as agents, servants, and/or employees of Defendant OCCIDENTAL/HOOKER, thereby and otherwise rendering Defendant OCCIDENTAL/HOOKER responsible for their conduct.  Throughout the relevant period, such Defendants have negligently, recklessly, carelessly, or otherwise tortiously performed their OM&M monitoring activities in the Love Canal area by failing to report the presence of toxins, thus causing area residents (including Plaintiffs) to be exposed to dangerous materials and, thus, causing them harm.  For example, such Defendants failed to perform routine surface water, soil, or air testing, despite knowing that they were often rife with dangerous volatile organic compounds from Love Canal.

189.     Similarly, the Sewer Defendants were each responsible for ensuring that the water and sewer systems in proximity to Love Canal were free from toxic chemicals.  They failed to sufficiently perform this function insofar as Love Canal toxins were and continue to be present in the area public works, thus causing harm to area residents (including Plaintiffs).  For example, such Defendants failed to perform smoke and/or dye testing and/or other inspections to ensure that the remediation had been successful and/or the sewers were free of Love Canal toxins.

### G. Sewer "Refurbishment" and the January 2011 Acute Release of Chemicals

190.     At all relevant times following its creation in 2003, Defendant NIAGARA FALLS WATER BOARD has owned and operated the drinking water and waste water treatment systems and storm water conveyance facilities in the City of Niagara Falls.

191.     Defendant NIAGARA FALLS WATER BOARD has been engaged in a multi-year program of sewer refurbishment in the Love Canal area, which includes, *inter alia*, sewer replacement, root and debris removal, trenching, pipelining, manhole rehabilitation, leaky joint grouting, cross connection identification and removal, sewer line upgrading, and sludge/contaminant removal (the "Sewer Remediation Program").

192.     On or about January 11, 2011, as part of the Sewer Remediation Program, Defendants or their agents, employees, representatives or contractors (and specifically, workers from Defendant SCOTT LAWN YARD and/or GROSS) – working on Colvin Boulevard within 250 feet of the northern boundary of the Love Canal containment area – recklessly, negligently, and/or carelessly disturbed, exposed, and discharged a substantial amount of contaminated sediment that was present within the sewers.

193.     Upon releasing this material into the environment, workers from SCOTT LAWN YARD and/or GROSS knew immediately that the material released into the environment did not come from normal dirt.  Rather, SCOTT LAWN YARD believed that it was some historic contamination, and based on other work that SCOTT LAWN YARD had performed in the area, believed such material could be traced to HOOKER/OCCIDENTAL and the Love Canal.

194.     Defendant SCOTT LAWN YARD had been contracted by Defendant NFWB to perform certain sewer repairs and replacements in Niagara Falls, including but not limited to the work at the Colvin Trench.  SCOTT LAWN YARD proceeded with the work at the Colvin Trench even though it had expressed concerns to CITY OF NIAGARA FALLS and NFWB officials during pre-construction meetings regarding the proximity of the work site to the Love Canal site.  A SCOTT LAWN YARD official has stated that, given the proximity of the work site to Love Canal, "we figured something would be there."  Thus, Defendants SCOTT LAWN

YARD, NFWB, and CITY OF NIAGARA FALLS knew or should have known of the high risk that Love Canal toxins would be present in the sewer lines in which they were working.

195.    The work that Defendants SCOTT LAWN YARD, GROSS, NFWB, and CITY OF NIAGARA FALLS negligently performed prior to and on or about January 11, 2011 and thereafter resulted in the discharge of myriad hazardous chemicals onto and into the property and homes of the Plaintiffs.

196.    Upon releasing the toxic materials into the environment, Defendant SCOTT LAWN YARD contacted Defendant CITY OF NIAGARA FALLS.  According to CITY OF NIAGARA FALLS Mayor Paul Dyster, CITY officials drew a sample from the broken sewer line, and sent the residue to a private laboratory for analysis.  The mayor stated that "it appears as though the material is something from [Occidental Chemical]."  The laboratory analysis concluded that such chemicals included highly dangerous chlorinated organic compounds, halogenated hydrocarbons, and certain "signature" Love Canal contaminants, including but not limited to non-aqueous phase liquids ("NAPL"), a toxic chemical "stew."

197.    Love Canal toxins should not have been present in area sewer lines to begin with, particularly because: (i) Defendant OCCIDENTAL/HOOKER should not have wrongfully dumped the toxins on the Love Canal site in the first place; and (ii) the Landfill Defendants should have discharged their duties to adequately monitor, remediate and/or contain such materials within the Love Canal containment area from the time of the original Love Canal cleanup and continuing to the present day.

198.    Nevertheless, given the proximity of the January 2011 Colvin Boulevard Sewer Remediation Program work to Love Canal's northern boundary, and/or the fact that Defendants NFWB, SCOTT LAWN YARD, CITY OF NIAGARA FALLS, OCCIDENTAL/HOOKER,

GSH, and/or CRA knew or should have known that toxins had leaked from the Love Canal site in the past, such Defendants knew or should have known of the possibility of the presence of dangerous chemicals within the sewers and/or otherwise in proximity to Defendants' work. In fact, as noted above, Defendant SCOTT LAWN YARD raised these concerns with Defendant NFWB, and yet chose to proceed with the work in any event.  SCOTT LAWN YARD is primarily a construction and landscaping company, and the crew that was dispatched to the Colvin Trench project was wholly unqualified to deal with the contaminants that SCOTT LAWN YARD knew or should have known would be present in the trench.

199.    Defendants performing Sewer Remediation Program work in the Love Canal area, including SCOTT LAWN YARD, GROSS NFWB, and CITY OF NIAGARA FALLS failed to exercise due care to prevent the possibility of the escape of such chemicals.

200.    SCOTT LAWN YARD notified CITY OF NIAGARA FALLS following the sudden release of Love Canal toxins into the environment, and CITY OF NIAGARA FALLS, in turn, notified the New York State Department of Environmental Conservation ("DEC").  DEC notified OCCIDENTAL/HOOKER and GSH and requested that they develop a remedial plan to address the contamination.

201.    Upon recklessly, negligently, and/or carelessly causing the release of such chemicals or becoming aware of such release, each of these Defendants failed to adequately warn area residents, including Plaintiffs, of the dangerous nature of such chemicals.  Indeed, Plaintiffs were not informed of the dangerous nature of the chemicals to which they were exposed, and did not learn about same until much later.

202.    Following Defendants' reckless, negligent, and/or careless release and/or disturbance of chemicals, Defendants OCCIDENTAL/HOOKER, GSH, NFWB, CITY OF

NIAGARA FALLS, and SCOTT LAWN YARD failed to follow appropriate procedures to eliminate additional hazards to area residents, including Plaintiffs.  Specifically, Defendants knew or should have known of the environmental and health risks posed by the presence of the NAPL residue and other chemicals on the roadway and in the residential sewer or drain system, and should have exercised due care by taking appropriate remedial action to contain the toxins.

203.   Instead, Defendant NFWB, OCCIDENTAL/HOOKER, GSH, CITY OF NIAGARA FALLS, and/or SCOTT LAWN YARD retained the services of contractor Defendant OP-TECH to assist in completing the sewer replacement work at the Colvin Trench and to assist in cleaning, remediating and containing the release of toxins. As part of the remediation and/or cleaning plan, OP-TECH retained the services of subcontractor Defendant ROY's PLUMBING to provide sewer jetting services whereby ROY'S would apply water from high pressure hoses to the affected area of the sewers. OP-TECH and ROY'S, at the direction of NFWB, OCCIDENTAL/HOOKER, GSH, CITY OF NIAGARA FALLS, and/or SCOTT LAWN YARD recklessly, negligently, and/or carelessly, and with callous disregard for the health and safety of Plaintiffs and others in the surrounding community, applied water from high pressure hoses to wash the roadway and storm drains, thus further dispersing the contaminants onto and into Plaintiffs' property and homes, thus further exposing Plaintiffs to dangerous toxins and causing them further harm.

204.   Defendants OCCIDENTAL/HOOKER, GSH, NFWB, CITY OF NIAGARA FALLS, SCOTT LAWN YARD, OP-TECH, and ROY'S were further reckless, negligent, and/or careless in that they wrongfully allowed pressure to continue to build within the sewer system, and left the Colvin Boulevard trench open for weeks following the 2011 sewer incident, thus

allowing contaminants to further escape from the sewers and onto and into Plaintiffs' property and homes, thus further exposing Plaintiffs to dangerous toxins and causing them further harm.

205.    As a result of the above actions, dangerous OCCIDENTAL/HOOKER toxins were continuously dispersed onto and into Plaintiffs' homes following the January 11, 2011 incident in addition to those Love Canal toxins which had been chronically and silently leaching, migrating, surfacing, escaping, and/or moving onto and into Plaintiffs' homes throughout their entire occupation of said homes. Such dispersion and release continues to the present.

206.    In the months following the January 11, 2011 incident, Defendants OCCIDENTAL/HOOKER, GSH, and CRA refused to perform testing in the Colvin Trench and/or in and around Plaintiffs' homes for critical substances, including but not limited to dioxin.

207.    Plaintiffs continue to be exposed to Love Canal toxins as a result of, *inter alia*, the Landfill Defendants' failure to properly contain and remediate the contamination in the first place, the Landfill Defendants' historical and ongoing failure to warn the Plaintiffs of the identity of the exact chemicals present and the inherent exposure risks, the Sewer Defendants' failure to maintain public works free from Love Canal contaminants, and the 2011 Sewer Incident Defendants' failure to exercise due care when performing work functions in proximity to Love Canal and their failure to act appropriately following the incident.

208.    Certain Defendants have, at various times, blatantly misrepresented the dangers inherent in the OCCIDENTAL/HOOKER toxins by indicating to Plaintiffs that the exposure to such chemicals would not harm their health, that it was safe to continue to live in their homes, and that Plaintiffs need take no precautions concerning the chemicals to which they have been exposed.

209.    As a result of Defendant OCCIDENTAL/HOOKER's dumping of hazardous materials at the Love Canal site, the failure of Landfill Defendants to appropriately remediate and contain Love Canal toxins, and both the Landfill and Sewer Defendants' failure to adequately inspect, maintain, repair and remediate sewer pipes, and as a result of the 2011 Sewer Defendants' negligent, grossly negligent, careless and reckless handling of the toxic sediment at, leading up to, and following the 2011 sewer incident, Plaintiffs were continuously exposed during their entire occupation of their homes to toxic OCCIDENTAL/HOOKER contaminants from the Love Canal, and as a result, have each become ill, have suffered permanent and severe injury, and have incurred and will in the future incur additional expenses for medical and other care.

210.    Thus, the chemicals that Defendant OCCIDENTAL/HOOKER wrongfully dumped on the Love Canal site beginning in the 1940s led to a public health emergency beginning in the late 1970s that continues to the present day.

211.    Although both state and federal authorities ordered the Love Canal area to be environmentally remediated, at present the toxins that Defendant OCCIDENTAL/HOOKER wrongfully dumped on the site continue to escape from the Love Canal containment area, continue to be present in and around the sewers in the Love Canal area (including the homes of Plaintiffs), and continue to systemically invade the adjacent neighborhoods.

212.    The original Love Canal remediation, thus, was insufficient and/or negligently performed by the Landfill Defendants insofar as such remediation did not prevent the continued escape of chemicals from the site and onto and into the homes presently owned by the Plaintiffs, continuing to the present.

213.    Following the original remediation efforts at the Love Canal site, Landfill Defendants made numerous false public representations that Love Canal toxins had been properly remediated and contained within the Love Canal containment area, and that surrounding area, including Plaintiffs' homes, was free of such toxins.

214.    All Defendants' conduct was grossly negligent, intentional, conscious, and was undertaken with callous and malicious disregard for the health, well being, and safety of Plaintiffs and others.

215.    As a consequence of the foregoing misconduct on the part of Defendants, as alleged herein, each Plaintiff sustained and with reasonable probability will in the future sustain the following injuries and/or damages:

    a.  birth defects;

    b.  physical pain and suffering;

    c.  physical disabilities;

    d.  mental anguish;

    e.  loss of the enjoyment of life's pleasures;

    f.  inability to participate in her usual employment and activities;

    g.  lost income, and lost earning opportunities;

    h.  medical expenses (past and future);

    i.  other economic loss (including damage to the value of real property owned and/or rented by such Plaintiffs in the Love Canal area);

    and was otherwise damaged.

216.    As a consequence of the foregoing misconduct, each adult Plaintiff alleging an injury on behalf of an infant Plaintiff, individually as the parent of their infant Plaintiffs, suffered

individual economic damages through the loss of support and loss of services of such infant

Plaintiff, incurred medical and other expenses, and was otherwise damaged.

217.    Each Plaintiff's cause of action is timely under the relevant statutory authority,

including but not limited to CPLR 214-c(4) and/or 42 U.S.C. § 9658.

218.    Each of Plaintiffs' personal injuries and property damages have been caused or

contributed to by exposure to hazardous substances, pollutants, and contaminants that have been

released into the environment from the Love Canal facility.

219.    Each of the municipal Defendants has been notified of this lawsuit by the service

of a Notice of Claim pursuant to Section 50 of the General Municipal Law of the State of New

York more than 30 days prior to the filing of this lawsuit.

220.    To the extent that any Defendant pleads, or otherwise seeks to rely upon Article

16 of the New York Civil Practice Law and Rules (CPLR) to have fault apportioned to another

allegedly culpable party, Plaintiffs expressly state that Defendants' conduct falls within one or

more of the subdivisions of CPLR § 1602.

## FIRST CAUSE OF ACTION
## NEGLIGENCE

221.    The allegations contained in paragraph "1" through "220" inclusive are hereby

realleged as more fully set forth herein.

222.    Defendants' negligence, carelessness and recklessness consisted of the following:

   a. Despite the fact that 2011 Sewer Incident Defendants knew or should have known

      of the presence of these hazardous chemicals, 2011 Sewer Incident Defendants

      negligently, carelessly and recklessly disturbed, discharged and flushed these

chemicals, sometimes in a sudden and acute manner, throughout the neighborhood and onto and into the homes of the Plaintiffs;

b. Landfill Defendants' failure to properly remediate the Love Canal site during and after the original remediation, and continuing to the present day, such that hazardous Love Canal contaminants escaped and continue to escape from the Love Canal site;

c. Failure to properly monitor the chemicals in the Love Canal containment area on the part of Defendants OCCIDENTAL/HOOKER, GSH, MSRM, CRA, NFWB, and CITY OF NIAGARA FALLS;

d. Failure to properly and/or routinely test for chemicals within the sewer system, and in the ground upon which the sewer pipe lay, to determine whether hazardous chemicals were present so that heightened safety measures could be applied and neighborhood residents could be appropriately warned on the part of Defendants OCCIDENTAL/HOOKER, GSH, MSRM, CRA, NFWB, and CITY OF NIAGARA FALLS;

e. Failure to have proper response protocols in place in the event that hazardous materials were found as a general matter, and specifically as work was being undertaken in the sewer system on the part of Defendants OCCIDENTAL/HOOKER, GSH, MSRM, CRA, NFWB, CITY OF NIAGARA FALLS, OP-TECH, ROY'S, GROSS, and SCOTT LAWN YARD;

f. By improperly allowing the chemicals to escape the sewer system and flush into and onto the property and homes of the Plaintiffs, both chronically and following the January 2011 excavation project, on the part of Defendants

OCCIDENTAL/HOOKER, GSH, MSRM, CRA, NFWB, CITY OF NIAGARA

FALLS, OP-TECH, SCOTT LAWN YARD, GROSS, and ROY'S;

g. By allowing hazardous chemicals to contaminate the air, soil and water in the

surrounding area, including Plaintiffs' property and homes on the part of

Defendants OCCIDENTAL/HOOKER, GSH, MSRM, CRA, NFWB, CITY OF

NIAGARA FALLS, OP-TECH, SCOTT LAWN YARD, GROSS, and ROY'S;

h. By taking no action to abate or otherwise stop the pollution and contamination of

the surrounding area, including the Plaintiffs' property and homes on the part of

Defendants OCCIDENTAL/HOOKER, GSH, MSRM, CRA, NFWB, CITY OF

NIAGARA FALLS, OP-TECH, SCOTT LAWN YARD, GROSS, and ROY'S;

i. By improperly replacing certain pipes with "PVC" piping which the Defendants

knew or should have known would deteriorate upon contact with the chemicals at

issue herein on the part of Defendants OCCIDENTAL/HOOKER, GSH, MSRM,

CRA, NFWB, and CITY OF NIAGARA FALLS;

j. By failing to advise Plaintiffs of the risks and safety hazards of being exposed to

the NAPL chemicals and other hazardous substances as indicated herein on the

part of Defendants OCCIDENTAL/HOOKER, GSH, MSRM, CRA, NFWB,

CITY OF NIAGARA FALLS, OP-TECH, SCOTT LAWN YARD, GROSS, and

ROY'S;

k. By falsely advising Plaintiffs that such continuing exposure is safe and would

cause no adverse health effects to them on the part of DEFENDANTS

OCCIDENTAL/HOOKER, GSH, CRA, NFWB, GROSS, ROY's and CITY OF

NIAGARA FALLS;

l.  By acting in such a manner as to cause toxic and hazardous substances to be released to or otherwise enter the environment on the part of all Defendants;

m.  By failing to take, implement or use proper and adequate control measures to minimize the contamination of water, soil, and air with toxic and hazardous substances on the part of all Defendants;

n.  By failing to observe accepted relevant industry standards in the operation, maintenance and refurbishment of the City sewer system, and the handling of the toxic substances as alleged herein on the part of Defendants OCCIDENTAL/HOOKER, GSH, MSRM, CRA, NFWB, and CITY OF NIAGARA FALLS;

o.  By improperly entrusting the operation, maintenance and refurbishing of the sewer system to persons not able, competent or adequately trained to handle such operations correctly upon the discovery of hazardous chemicals within the sewer system on the part of Defendants NFWB and CITY OF NIAGARA FALLS.

223.  Defendants' negligence, carelessness or recklessness as set forth herein, directly and proximately caused the harm (past and future) suffered by Plaintiffs, including harm to their persons, property and economic security, including the cost of future monitoring of the contamination created by release of hazardous and toxic substances.

224.  As a proximate result, each Plaintiff and each infant Plaintiff, as set forth above, has been damaged in sums which exceed the jurisdictional limitations of all courts of limited jurisdiction.

<u>**SECOND CAUSE OF ACTION**</u>
<u>**ABNORMALLY DANGEROUS ACTIVITY**</u>

225. The allegations contained in paragraph "1" through "224" inclusive are hereby realleged as more fully set forth herein.

226. Defendants OCCIDENTAL/HOOKER, GSH, MSRM, CRA, SCOTT LAWN YARD, GROSS, NFWB, CITY OF NIAGARA FALLS, OP-TECH, and ROY'S knew or should have known that the original Love Canal remediation work and subsequent maintenance and/or monitoring work involved the attempted containment of the highly dangerous OCCIDENTAL/HOOKER chemicals, such Defendants knew or should have known that such chemicals were present (and indeed were already chronically leaching, migrating, surfacing, escaping, and/or moving ), and had the potential to be acutely released from the sewer pipes if any work was done negligently, and further that the nearby neighborhood consisted of numerous residential properties, including the property and homes of the Plaintiffs herein, the original Love Canal remediation work and its ongoing maintenance and/or monitoring was an abnormally dangerous activity.

227. Since Defendants NFWB, CITY OF NIAGARA FALLS, and SCOTT LAWN YARD knew or should have known that the sewer system upon which they were working as part of the Sewer Remediation Program was in close proximity to the Love Canal containment area, they therefore knew or should have known that there was a likelihood that hazardous chemicals would be present and had the potential to be released if any work was done within the sewer system, and further that the nearby neighborhood consisted of numerous residential properties, including the property and homes of many of the Plaintiffs herein, the maintenance and refurbishment of the sewer system was an abnormally dangerous activity.

228.     Because Defendants engaged in an abnormally dangerous activity, as alleged herein, they owed the highest duty of care to the Plaintiffs, which each Defendant breached, thereby proximately causing injury to Plaintiffs, as more particularly described herein.

229.     The activities of Defendants, as alleged herein, presented a high degree of risk of harm to the person and properties of Plaintiffs, and such harm has caused significant injury to Plaintiffs.

230.     To the extent that Defendants, as alleged herein, may have used reasonable care in their operations, they were unable to eliminate the risk of contamination through such exercise of reasonable care.

231.     The remediation and subsequent maintenance and/or monitoring of a hazardous waste site, where it was known that hazardous substances were contained, is not a matter of common usage, and the manner in which the Defendants, as alleged herein, attempted to remediate and maintain and/or monitor the Love Canal site in this populated area is and was inappropriate.

232.     The operation, maintenance and refurbishment of a sewer system nearby a hazardous waste containment site, where it was known that hazardous substances were contained, is not a matter of common usage, and the manner in which the Defendants, as alleged herein, attempted to maintain and refurbish the sewer system in this populated area is and was inappropriate.

233.     As a result of the Defendants, as alleged herein, engaging in such abnormally dangerous activities, Plaintiffs sustained injury and suffered losses.

234.    As a proximate result, each Plaintiff and each infant Plaintiff, as set forth above, has been damaged in sums which exceed the jurisdictional limitations of all courts of limited jurisdiction.

## THIRD CAUSE OF ACTION
## PRIVATE NUISANCE

235.    The allegations contained in paragraph "1" through "234" inclusive are hereby realleged as though more fully set forth herein.

236.    The acts and omissions of all Defendants as alleged in this Complaint created a private nuisance through substantial and unreasonable interference with the use and enjoyment of Plaintiffs' property.

237.    This nuisance continues to this day, and is likely to continue into the future.

238.    As a proximate result, each Plaintiff, as set forth above, has been damaged in sums which exceed the jurisdictional limitations of all courts of limited jurisdiction.

## FOURTH CAUSE OF ACTION
## TRESPASS

239.    The allegations contained in paragraph "1" through "238" inclusive are hereby realleged as though more fully set forth herein.

240.    Through the acts and omissions of Defendants, as alleged in this Complaint, the Defendants have intentionally taken actions which have caused contamination to spread from the their property and/or property which such Defendants were charged with maintaining and/or property on which such Defendants were performing work, including the Love Canal site and the surrounding sewer system, to the property and homes of the Plaintiffs herein, and trespass upon the Plaintiffs' property and their homes.

241.    As a proximate result, each Plaintiff, as set forth above, has been damaged in sums which exceed the jurisdictional limitations of all courts of limited jurisdiction.

## FIFTH CAUSE OF ACTION (against OCCIDENTAL/HOOKER) NEGLIGENCE

242.    The allegations contained in paragraph "1" through "241" inclusive are hereby realleged as though more fully set forth herein.

243.    Between the years of approximately 1942 and 1953, Defendant OCCIDENTAL/HOOKER dumped more than 21,000 tons of toxic chemicals into the Love Canal site.

244.    To date, nearly 250 separate chemicals have been identified in the dump.

245.    Defendant OCCIDENTAL/HOOKER knew or should have known that the dumping of chemicals at the Love Canal site presented a serious risk of injury to persons and property.

246.    Defendant OCCIDENTAL/HOOKER had a duty to warn Plaintiffs of the dangers to which they were exposed as a result of OCCIDENTAL/HOOKER's contamination of the Love Canal neighborhood.

247.    Defendant OCCIDENTAL/HOOKER's negligence, carelessness or recklessness, as set forth herein, directly and proximately caused the harm (past and future) suffered by Plaintiffs, including harm to their persons, property and economic security, including the cost of future monitoring of the contamination created by the presence of hazardous and toxic substances.

248.    As a proximate result, each Plaintiff and each infant Plaintiff, as set forth above, has been damaged in sums which exceed the jurisdictional limitations of all courts of limited jurisdiction.

## SIXTH CAUSE OF ACTION (against OCCIDENTAL/HOOKER)
## ABNORMALLY DANGEROUS ACTIVITY

249.    The allegations contained in paragraph "1" through "248" inclusive are hereby

realleged as though more fully set forth herein.

250.    Defendant OCCIDENTAL/HOOKER knew or should have known that the

dumping of more than 21,000 tons of chemical waste upon land in proximity to a residential area

constituted an abnormally dangerous activity.

251.    Defendant OCCIDENTAL/HOOKER also knew or should have known that,

because the land upon which it dumped the contaminants was in proximity to what eventually

became a residential area and two school buildings, that there was a likelihood that hazardous

chemicals would escape into the homes and property of individuals living in the area.

252.    Because Defendant OCCIDENTAL/HOOKER engaged in an abnormally

dangerous activity, it owed the highest duty of care to the Plaintiffs, which it breached, thereby

proximately causing injury to Plaintiffs, as more particularly described herein.

253.    Defendant OCCIDENTAL/HOOKER's activities presented a high degree of risk

of harm to the person and properties of Plaintiffs, and such harm has caused significant injury to

Plaintiffs.

254.    To the extent that Defendant OCCIDENTAL/HOOKER may have used

reasonable care in its dumping of hazardous chemicals onto the Love Canal site, it was unable to

eliminate the risk of contamination and harm to Plaintiffs through such exercise of reasonable

care.

255.    The operation of a hazardous waste site is not a matter of common usage, and the

manner in which Defendant OCCIDENTAL/HOOKER disposed of hazardous materials on the

Love Canal site, in proximity to a residential area, is and was inappropriate.

256.     As a result of Defendant OCCIDENTAL/HOOKER's engaging in such abnormally dangerous activities, Plaintiffs sustained injury and suffered losses.

257.     As a proximate result, each Plaintiff, as set forth above, has been damaged in sums which exceed the jurisdictional limitations of all courts of limited jurisdiction.

## SEVENTH CAUSE OF ACTION (against OCCIDENTAL/HOOKER) PRIVATE NUISANCE

258.     The allegations contained in paragraph "1" through "257" inclusive are hereby realleged as though more fully set forth herein.

259.     The acts and omissions of Defendant OCCIDENTAL/HOOKER in dumping more than 21,000 tons of hazardous waste in proximity to a residential area, as alleged in this Complaint, created a private nuisance through substantial and unreasonable interference with the use and enjoyment of Plaintiffs' property.

260.     As a proximate result, each Plaintiff, as set forth above, has been damaged in sums which exceed the jurisdictional limitations of all courts of limited jurisdiction.

## EIGHTH CAUSE OF ACTION (against OCCIDENTAL/HOOKER) TRESPASS

261.     The allegations contained in paragraph "1" through "260" inclusive are hereby realleged as though more fully set forth herein.

262.     By dumping more than 21,000 of hazardous substances in the Love Canal area, Defendant OCCIDENTAL/HOOKER has intentionally taken actions which have caused contamination to spread from the Love Canal site to the property and homes of Current Resident Plaintiffs herein, and trespass upon the Plaintiffs' property and their homes.

263.     As a proximate result, each Plaintiff, as set forth above, has been damaged in sums which exceed the jurisdictional limitations of all courts of limited jurisdiction.

## NINTH CAUSE OF ACTOIN
## LOSS OF SERVICES and SUPPORT

264.    The allegations contained in paragraph "1" through "263" inclusive are hereby realleged as though more fully set forth herein.

265.    At all relevant times, each adult Plaintiff herein asserting a cause of action on behalf of a minor child was and still is entitled to the services of their respective infant plaintiffs.

266.    By reason of the foregoing misconduct on the part of each of the Defendants as alleged herein, each adult Plaintiff has been deprived of the services and support of their respective infant plaintiffs and has suffered and will continue to suffer substantial economic damages and was otherwise damaged.

267.    As a result of the foregoing, each adult Plaintiff asserting a claim on behalf of an infant plaintiff has been damaged in an amount to be determined by the jury at trial, but far in excess of the jurisdictional requirements of all lower courts.

## TENTH CAUSE OF ACTION
## LOSS OF SPOUSAL COMPANIONSHIP SERVICES and SUPPORT

268.    The allegations contained in paragraph "1" through "267" inclusive are hereby realleged as though more fully set forth herein.

269.    At all relevant times, certain Plaintiffs captioned above are spouses of each other, and as such, each is entitled to the other's services, society, comfort, consortium, companionship and support.

270.    By reason of the intentional, negligent, careless, reckless, and/or otherwise tortious conduct as described herein on the part of the Defendants, such Plaintiffs have been deprived of the services, society, comfort, consortium, companionship, and support of his/her

spouse, and have suffered and will continue to suffer substantial economic damages and was otherwise damaged.

271.    By reason of the foregoing, such Plaintiffs have each been damaged in sums which exceed the jurisdiction limitations of all courts of limited jurisdiction.

## PRAYER FOR PUNITIVE DAMAGES AGAINST DEFENDANTS OCCIDENTAL CHEMICAL CORPORATION, GLENN SPRINGS HOLDING, INC., CONESTOGA-ROVERS & ASSOCIATES, MILLER SPRINGS REMEDIATION MANAGEMENT, INC., CITY OF NIAGARA FALLS, AND NIAGARA FALLS WATER BOARD

272.    The allegations contained in paragraph "1" through "271" inclusive are hereby realleged as though more fully set forth herein.

273.    The conduct of Defendant OCCIDENTAL/HOOKER in dumping more than 21,000 tons of toxic waste on land adjacent to a residential area was done with utter disregard to the potential adverse health effects which could ensue.

274.    The conduct of Defendants OCCIDENTAL/HOOKER, GSH, CRA, MSRM, CITY OF NIAGARA FALLS, and NIAGARA FALLS WATER BOARD, in assuring the Plaintiffs that they are at no risk of harm to their health and safety, when they knew or should have known that exposure to the toxic chemicals, as alleged herein, in fact put the Plaintiffs at significant risk of injury and disease, was done with the intention of attempting to avoid litigation and to be held responsible for the contamination of the Plaintiffs' property and home, and the exposure of the Plaintiffs to such hazardous chemicals, and was done with utter disregard to the potential adverse health effects that could ensue.

As a result of these activities as alleged hereinabove, Plaintiffs are entitled to recover punitive damages in an amount to be determined by the finder of fact.

## AD DAMNUM

**WHEREFORE:**

Each of the plaintiffs separately demands compensatory damages in each of the above enumerated clams in amounts exceeding the jurisdictional limitations of all courts of lesser jurisdiction;

Each of the Plaintiffs separately demands punitive and exemplary damages in an amount to be determined by the trier of fact;

Each of the Plaintiffs separately demands the recovery of costs, disbursements or any other elements of damages or expenses which might be recoverable as a matter of law and/or equity; and

Each of the Plaintiffs separately demands such other relief as to the Court may seem just and proper.

DATED:     New York, New York
             February 14, 2014

Yours, etc.,

By:       /s/ William H. Mack
**PHILLIPS & PAOLICELLI, LLP**
Steven J. Phillips
William H. Mack
Melissa L. Stewart
747 Third Avenue, 6th Floor
New York, New York 10027
Telephone: (212) 388-5100

**WATERS & KRAUS, LLP**
Peter Kraus
Charles Siegel
(*pro hac vice* applications forthcoming)
3219 McKinney Avenue
Dallas, Texas 75204

Telephone: (214) 357-7252

**FANIZZI & BARR, PC**
Paul K. Barr
2303 Pine Avenue
Niagara Falls, NY 14301
Telephone: (716) 284-8888

**CHRISTEN CIVILETTO MORRIS, ESQ.**
8313 West Point Drive
East Amherst, New York  14051
(716) 741-8555

Attorneys for Plaintiffs