```
 1                    UNITED STATES DISTRICT COURT

 2                   WESTERN DISTRICT OF NEW YORK

 3    - - - - - - - - - - - - - - - X          20-CV-136(G)
      JOANN ABBO-BRADLEY,JOANN
 4    ABBO-BRADLEY AS PARENT AND
      NATURAL GUARDIAN OF D.B.,
 5    JOANN ABBO-BRADLEY AS PARENT             Buffalo, New York
      AND NATURAL GUARDIAN OF T.B.,            May 28, 2020
 6    JOANN ABBO-BRADLEY AS PARENT             2:11 p.m.
      AND NATURAL GUARDIAN OF C.B.,
 7    ZACHERY HERR, MELANIE HERR,
      ZACHARY HERR AS PARENT AND
 8    NATURAL GUARDIAN OF C.H.,
      ZACHARY HERR AS PARENT AND
 9    NATURAL GUARDIAN OF H.H.,
      ELENA KORSON, ELENA KORSON
10    AS PARENT AND NATURAL GUARDIAN
      OF L.K., NATHAN E. KORSON,
11                        Plaintiffs
      vs.
12
      CITY OF NIAGARA FALLS, NIAGARA
13    FALLS WATER BOARD, GLENN SPRINGS
      HOLDINGS, INC., CONESTOGA-ROVERS
14    & ASSOCIATES, CECOS INTERNATIONAL,
      INC., MILLER SPRINGS REMEDIATION
15    MANAGEMENT, INC., OCCIDENTAL CHEMICAL
      CORPORATION INDIVIDUALLY AND AS
16    SUCCESSOR IN INTEREST TO HOOKER
      CHEMICALS AND PLASTICS CORPORATION,
17    OP-TECH ENVIRONMENTAL SERVICES,
      ROY'S PLUMBING, INC., SCOTT LAWN YARD,
18    INC., AND SEVENSON ENVIRONMENTAL
      SERVICES, INC.,
19                  Defendants.
      - - - - - - - - - - - - - - - X
20                  TRANSCRIPT OF VIDEO PROCEEDINGS
              BEFORE THE HONORABLE JEREMIAH J. MCCARTHY
21                  UNITED STATES MAGISTRATE JUDGE

22    AUDIO RECORDER:    Joanna Dickinson

23    TRANSCRIBER:       Christi A. Macri, FAPR-CRR-RMR-CSR(CA/NY)
                         (585) 613-4310
24                       100 State Street, Room 2120
                         Rochester, New York 14614
25    (Proceedings recorded by electronic sound recording,
      transcript produced by computer).
```

2

**A P P E A R A N C E S**

WATERS & KRAUS, LLP
BY: CHARLES S. SIEGEL,  ESQ.
    LESLIE C. MACLEAN, ESQ.
    PETER A. KRAUS, ESQ.
3141 Hood Street, Suite 720
Dallas, Texas 75219
          - and -
CHRISTEN CIVILETTO, ES.
8313 West Point Drive
East Amherst, New York 14051
          - and -
PHILLIPS & PAOLICELLI, LLP
BY: MELISSA L. STEWART, ESQ.
747 Third Avenue, 6th Floor
New York, New York 10017
Appearing on behalf of the Plaintiffs

CITY OF NIAGARA FALLS
BY: THOMAS J. DEBOY, ES.
Department of Law, P.O. Box 69
Niagara Falls, New York 14302
Appearing on behalf of City of Niagara Falls

RUPP, BAASE, PFALZGRAF, CUNNINGHAM & COPPOLA LLC
BY: CORY JOHN WEBER, ESQ.
424 Main Street, Suite 1600
Buffalo, New York 14202
Appearing on behalf of Niagara Falls Water Board

PHILLIPS LYTLE LLP
BY: ANDREW P. DEVINE, ESQ.
    DEENA KATHERINE MUELLER-FUNKE, ESQ.
    KEVIN M. HOGAN, ESQ.
One Canalside, 125 Main Street
Buffalo, New York 14203-2887
          - and -
DECHERT LLP
BY: DOUGLAS E. FLEMING, III, ESQ.
    SHEILA L. BIRNBAUM, ESQ.
Three Bryant Park
1095 Avenue of the Americas
New York, New York 10036
Appearing on behalf of Occidental Chemical Corporation, Glenn
Springs Holdings, Inc. And Miller Springs Remediation
Management, Inc.

ALSO PRESENT: Frank Parigi
              Anthony Young

**A P P E A R A N C E S**

HODGSON RUSS LLP
BY: JEFFREY C. STRAVINO, ESQ.
The Guaranty Building, Suite 100
140 Pearl Street
Buffalo, New York 14202-4040
Appearing on behalf of Conestoga-Rovers & Associates

GREENBERG TRAURIG, LLP
BY: ZACKARY KNAUB, ESQ.
54 State Street, 6th Floor
Albany, New York 12207
Appearing on behalf of CECOS International, Inc.

PILLINGER MILLER TARALLO, LLP
BY: JEFFREY D. SCHULMAN, ESQ.
507 Plum Street, Suite 120
Syracuse, New York 13204
Appearing on behalf of OP-Tech Environmental Services

THE KNOER GROUP, PLLC
BY: ALICE J. CUNNINGHAM, ESQ.
424 Main Street, Suite 1820
Buffalo, New York 14202
Appearing on behalf of Roy's Plumbing, Inc.

SUGARMAN LAW FIRM LLP
BY: BRIAN F. SUTTER, ESQ.
1600 Rand Building
14 Lafayette Square
Buffalo, New York 14203
Appearing on behalf of Scott Lawn Yard, Inc.

HURWITZ & FINE, P.C.
BY: AGNIESZKA ANNA WILEWICZ, ESQ.
      DAVID R. ADAMS, ESQ.
      PATRICIA ANN RAUH, ESQ.
1300 Liberty Building
Buffalo, New York 14202
Appearing on behalf of Sevenson Environmental Services, Inc.

**P R O C E E D I N G S**

```
1                          *    *    *
2             THE CLERK:  Judge McCarthy, good afternoon.
3             MAGISTRATE JUDGE MCCARTHY: Good afternoon,
4    everyone.
5             THE CLERK: Judge, I think we have everyone --
6    someone for every party except the City of Niagara Falls.
7             MAGISTRATE JUDGE MCCARTHY: Okay.  Anybody know
8    where they are?
9             UNIDENTIFIED SPEAKER: No, Your Honor.
10   (Indiscernible) for the plaintiff.
11            MAGISTRATE JUDGE MCCARTHY: Joanna, who is counsel
12   for the city?
13            THE CLERK: Tom Deboy and Tom O'Donnell.
14            MAGISTRATE JUDGE MCCARTHY: Okay, do you want to
15   just try to shoot them an e-mail?  And they can join in.  I'm
16   not gonna hold up everything for them.
17            Matt Yusick, I believe you're on the line, maybe
18   you could do that?
19            MR. YUSICK: Judge, I'll take care of it right now.
20            THE CLERK: That would be great, thank you.  I've
21   lost my office connection, so I apologize.
22            MAGISTRATE JUDGE MCCARTHY: Okay.
23            THE CLERK:  Judge, whenever you're ready I can -- I
24   can call the case and go through who is appearing.
25            MAGISTRATE JUDGE MCCARTHY: All right, you may do
```

1   so, please.

2           **THE CLERK:**  On the record in civil proceeding No.

3   20-CV-136 through 20-CV-155, we are here today for an oral

4   argument being held by video.

5           The lead cases for purposes of today's argument is

6   Abbo-Bradley, et al. vs. City of Niagara Falls, et al..

7           For various plaintiffs in this matter appearing are

8   Charles Siegel, Christen Civiletto, Leslie MacLean, Melissa

9   Stewart and Peter Kraus.

10          For the defendant Niagara Falls Water Board, Cory

11  Weber.

12          For defendants Glenn Springs Holdings, Inc., Miller

13  Springs Remediation Management, Inc. and Occidental Chemical

14  Corporation, we have Kevin Hogan, Deena Mueller-Funke and

15  Andrew Devine.

16          Also for Occidental we have Sheila Birnbaum, Frank

17  Parigi and Anthony Young.

18          For Conestoga-Rovers & Associates, Jeffrey

19  Stravino.

20          For CECOS International, Inc., Zachary Knaub.

21          For OP-Tech Environmental Services, Jeffrey

22  Schulman.

23          For Roy's Plumbing, Inc., Alice Cunningham.

24          For Scott Lawn Yard, Inc., Brian Sutter.

25          And for Sevenson Environmental Services, Anna

1  Wilewicz, Patricia Rauh and Dave Adams.

2         The Honorable Jeremiah J. McCarthy presiding.

3         **MAGISTRATE JUDGE MCCARTHY:** All right, good

4  afternoon everyone.  And, Joanna, after going through all that

5  I should just let you take the rest of the day off.

6         **THE CLERK:** Phew!

7         **MAGISTRATE JUDGE MCCARTHY:** I hope -- I hope

8  everybody's doing well under these unusual circumstances and I

9  will -- let me just begin by saying to all of you that I have

10 read the papers carefully, although not for the last time; I

11 will be reading them perhaps one or two more times.

12        But with that in mind we can proceed.  How many --

13 how many counsel are going to be arguing?

14        **MR. SIEGEL:** Your Honor, this is Charles Siegel for

15 the plaintiffs.  I will be making the argument.  I do have my

16 co-counsel Mr. Kraus and Ms. Stewart and Ms. MacLean are also

17 present in the hearing and I would ask that if there is a

18 question or something to do with what has gone on in state

19 court, that they be allowed to -- to speak; they're perhaps

20 more familiar with the goings on in state court, but I will be

21 handling the argument.

22        **MAGISTRATE JUDGE MCCARTHY:** Okay, thank you.  And

23 how about for the defendants?

24        **MR. FLEMING:** And, Your Honor, this is Doug Fleming

25 for Occidental defendants.  I'm not sure if my appearance is

1  noted, but similar to what Mr. Siegel said, I'll be arguing on

2  behalf of the Occidental defendants together with co-counsel

3  Mr. Hogan at Phillips Lytle who may participate on additional

4  issues as well, but the plan is for me to conduct the

5  argument.

6          I'm not aware that any other defendants are

7  planning on arguing.

8          **MAGISTRATE JUDGE MCCARTHY:** Okay, thank you.  And

9  when you mention Kevin Hogan, I just want to reiterate what I

10 have said to you all in the past is that up to 2007 I was a

11 partner at Phillips Lytle where Kevin, I believe, is now the

12 managing partner.

13         I may -- I don't believe I handled any cases for

14 Occidental, but I have no further connection with that firm,

15 financial or otherwise, and that has no bearing on my handling

16 of the case, and I believe the parties have previously agreed

17 to that disclosure.

18         In any event, why don't we get going?  And I

19 guess -- there are a number of issues here, one of which,

20 though, I'd like both counsel to address with respect to

21 timeliness as we lead off and then we can get into other

22 issues.

23         I understand that there are many arguments made as

24 to timeliness of the removal of the third amended complaint,

25 but one of those arguments is -- or I should say timeliness or

1   untimeliness, one of the arguments is that the clock should

2   have started running with the state court scheduling order

3   saying that the -- the plaintiffs could -- or setting a date

4   by which the plaintiffs would file an amended complaint.

5           Now, that doesn't strike me -- and I've seen the

6   reference to the cases that say that a court order granting

7   leave to amend can start the clock running, but I think

8   normally in that context there has been a specific pleading

9   identified by way of a motion for leave to amend.  And so when

10  the Court gives its imprimatur to the filing of that amended

11  pleading, that starts the clock running, but doesn't seem that

12  we have that scenario here.

13          I mean, it was a scheduling order that said by -- I

14  believe it was January 6th or whatever date it was, the

15  plaintiffs would file, but there was no identification at that

16  time of specifically what the third amended complaint would

17  be.  I know there had been various drafts exchanged.

18          So at least as to that argument, as I sit here

19  right now, I'm not overly persuaded, but I'll certainly hear

20  from counsel on both sides of that issue.

21          **MR. SIEGEL:** Thank you, Your Honor, this is Charles

22  Siegel for the plaintiffs.

23          **MAGISTRATE JUDGE MCCARTHY:** Yes.

24          **MR. SIEGEL:** And I will address that argument

25  initially, but I will say it is -- it is our secondary time

1 | limits argument, not our --

2 | **MAGISTRATE JUDGE MCCARTHY:** I understand that, but

3 | it's one that I can get my arms around perhaps --

4 | **MR. SIEGEL:** Okay.

5 | **MAGISTRATE JUDGE MCCARTHY:** -- more readily than

6 | some of the others.  So I wanted to address that first.

7 | **MR. SIEGEL:** Understood.  The reason that we say

8 | that removal should have been triggered no later than November

9 | 26th, 2019 when the state court signed its scheduling order is

10 | that, yes, the cases that the defendants rely on typically

11 | involve a situation in which there's been a motion for leave

12 | to amend and the defendant has opposed that motion, and the

13 | defendant has seen the proposed amended complaint or knows

14 | what the substance of the new allegations is going to be, but

15 | there's no certainty yet whether those allegations are going

16 | to come into the case because the state court may or may not

17 | grant leave to amend.

18 | We don't have a motion for leave to amend in this

19 | case.  What -- there was never -- as the defendants harp on,

20 | there was never a motion for leave to amend and, therefore,

21 | there was never any uncertainty about whether amendment would

22 | be granted and no need for the parties to wait for the state

23 | court to decide whether or not to grant leave to amend.

24 | Here it was all agreed and so we say it would be

25 | the supreme exultation of form over substance to say, well,

1  removal was never triggered because there was no formal motion

2  and, thus, no formal order.

3          What you had on November 26th was Judge Kloch in

4  state court saying I have entered this text -- he enters the

5  text docketing order with a scheduling order on the same day

6  stating, quote, this is the quote from Judge Kloch's order,

7  the plaintiffs will file amended complaints as the defendants

8  have consented by January 6th, 2002.

9          So what you have is not a situation in which there

10  was uncertainty in state court.  You have defendants all along

11  for the process extending back nearly a year, all along

12  saying, okay, we understand, this is what you're going to

13  amend with and we understand you're going to make these

14  amendments, let's negotiate about, well, we see you've added

15  these plaintiffs and these former plaintiffs should have been

16  not added because they were already dropped from the case and

17  so on.

18          But the substance of the amendments -- in other

19  words, the allegations about the new sources of exposure, were

20  in the case from -- from early in 2019.

21          And then what Judge Kloch said on November 26th is

22  the plaintiffs shall file the amended complaints as the

23  defendants have consented.  That takes the place of what you

24  have in the other cases that the defendants rely on, the

25  normal practice of motion and state court decision.  Their

1  leading case is this case from the District of Vermont called

2  *Israel vs. Volkswagen* and this is what is -- what that court

3  says at 2016 WL 9344707*7, he says that the Second Circuit

4  cases talking about removal being triggered by the service of

5  something other than a formal complaint are inapplicable

6  because there is a proposed amendment that, quote, may or may

7  not be granted.

8           We didn't have that uncertainty in this case.  We

9  had an agreement.  Judge Kloch endorsed that agreement saying,

10 well, November 26th, here the defendants have consented to the

11 filing of these amended complaints.

12          And so the purpose of that rule that triggers

13 removal upon the receipt of the amended complaint is

14 fulfilled.  There was no uncertainty, which is the point of

15 the other cases that the defendants rely on.

16          I hope I've explained our position about that.

17          **MAGISTRATE JUDGE MCCARTHY:** Yes, but weren't

18 there -- I mean, didn't there continue to be negotiations

19 about what the exact language would be even after the date of

20 Judge Kloch's order?

21          **MR. SIEGEL:** I don't believe so, Your Honor, no.  I

22 don't believe there were any -- I don't believe there were any

23 further negotiations about the substance of the complaint.

24          And there were further stipulations thereafter

25 and on January 2nd the defendants signed a stipulation, on the

1  6th we filed the complaint, but there was no further

2  negotiation.  The process of exchanging complaints, draft

3  amended complaints ended, I believe, on November 26th.

4          And, again, it has to be borne in mind, there was

5  no -- there was no uncertainty about the substance here.  What

6  had gone on for many months prior to November of 2019 was

7  simply a process by which the plaintiffs were weeding out

8  certain named claimants in the various amended complaints or

9  to be amended complaints.

10          There was no change of the substance whatsoever way

11  before November 26th.

12          **MAGISTRATE JUDGE MCCARTHY:** Okay.

13          **MR. FLEMING:** Your Honor, may I be heard?

14          **MAGISTRATE JUDGE MCCARTHY:** Who is -- Mr. Fleming?

15  I'm certainly going to turn to you.

16          **MR. FLEMING:** Sure, thank you, Your Honor.  I didn't

17  mean to interrupt you.

18          But some of what Mr. Siegel said, you know, I think

19  unintentionally is just simply not accurate.  There was no

20  specified agreed complaint that was ever presented to

21  Justice Kloch; there was no specified agreed complaint as of

22  November 27th.

23          In fact, Mr. Hogan's affidavit shows that the

24  amended complaint continued to change after November 27th,

25  despite the statements you just heard.  On December 6th, 2019

1   plaintiffs' counsel proposed to dismiss more plaintiffs.  On

2   December 27th defendants identified more errors in the

3   complaint and the record is absolutely clear that on January

4   3rd they finally e-mailed the final revised drafts and the

5   stipulation was entered on January 3rd, 2020.

6           Ultimately it was filed with the Court on January

7   6th, 2020.  We removed within 30 days of both of those dates.

8           There was never a set pleading that was agreed to

9   or that was presented to Justice Kloch prior to that date.

10          The plaintiffs also go back and cite a

11  November 15th letter from Mr. Hogan whereby they claim that we

12  agreed to the complaints, notwithstanding the record shows

13  that they continued to change after that.

14          But they omit -- the letter specifically says

15  there's a tentative agreement conditioned on plaintiffs

16  simultaneously filing proposed amended complaints in the other

17  18 lawsuits, and the parties expect that in the near future

18  they will be in a position to present to the Court the 19

19  proposed amended complaints and stipulations to permit the

20  filings.

21          And it's clear from the face of that stipulation

22  that was entered that the agreement was contingent on

23  defendants agreeing to the form of all 19 complaints and that

24  they all be filed at the same time.

25          So this is very much, you know, unlike a situation

1  even where a proposed amended complaint is submitted to the

2  Court, now the minority rule, not the majority, finds that the

3  notice of removal is triggered on a proposed amended complaint

4  being submitted to the Court.

5          But most courts say, you know what?  That would be

6  premature to remove of course until you know what the claims

7  are in the case.

8          Here we're a step removed from that.  We didn't

9  have a proposed amended complaint submitted to the Court or an

10  agreement as to any specified complaint.  I mean, can you

11  imagine if we filed with the Court a draft amended complaint

12  as a basis for removal?  I think the Clerk wouldn't be too

13  happy with us and might bounce it on its face.  I think the

14  Court as a matter of policy wouldn't be too happy with

15  premature removals based on draft complaints to which the

16  plaintiffs hadn't committed and to which there was no

17  stipulation.

18          So I agree with Your Honor, I think you can easily

19  dispense with this notion that these draft complaints -- a

20  time to removal.  The record is -- is -- can't be

21  contradicted.  The stipulation was signed on January 3rd and

22  first presented to the Court on January 6th.

23          **MAGISTRATE JUDGE MCCARTHY:** All right. Well, Mr.

24  Fleming, I'm going to caution you and I'm going to caution

25  everybody, don't agree with me on anything yet because I don't

1   know for certain, you know, which way I'll come down.  But I'm

2   just -- and as I ask questions going forward, don't read too

3   much into any question.  I'm just wrestling with all of these

4   issues.

5           But what -- Mr. Fleming, let me ask you then, what

6   is the significance of the statement in Judge Kloch's November

7   26th order "as defendants have consented"?

8         **MR. FLEMING:** Yeah, I --

9         **MAGISTRATE JUDGE MCCARTHY:** You wouldn't agree to

10   something that you didn't know what it was going to entail,

11   would you?

12         **MR. FLEMING:** Yeah, I think, Your Honor, what

13   Justice Kloch was getting at was exactly what the stipulation

14   says, that if the -- if the plaintiffs were to present 19

15   complaints in acceptable format, the defendants would be

16   prepared to stipulate to their filing so long as they were all

17   filed at the same time.

18           And that's what the stipulation says, and I think

19   that is what Justice Kloch is getting at.

20           And further, you know, the record does show, Your

21   Honor, that subsequent to that there continued to be draft

22   complaints exchanged, underscoring that the stipulation was

23   not actually entered and agreed to and signed until January

24   3rd when we had the full collection of complaints to which we

25   agreed.

1          **MAGISTRATE JUDGE MCCARTHY:** Okay.  All right, thank

2    you.  Now, let me -- and I'm going to give every -- Mr.

3    Siegel, rest assured, I'll give you full opportunity to argue

4    as I will you, Mr. Fleming, but I want to get my preliminary

5    questions out of the way first.

6          Mr. Fleming, to you for a moment, the other aspect

7    of timeliness or untimeliness is what is really new about the

8    amended -- the third amended complaint in terms of grounds for

9    removal other than it does identify different -- different

10   sites, but in terms of the legal issues raised, what is new?

11         What was not or could not have been presented to

12   Judge Curtin back in 2013?

13         **MR. FLEMING:** Thank you, Your Honor.  And what could

14   not have been presented to Judge Curtin back in 2013 are the

15   operative facts that have been added to this case that form

16   the basis for the current removal.

17         The plaintiffs are alleging essentially entirely

18   new sites that supposedly are sources of exposure that

19   relate -- relate to separate conduct that gives rise to

20   federal officer removal and federal question jurisdiction that

21   by definition could not have been raised previously because

22   they were not in the complaint.

23         We think the *O'Bryan* case is very instructive on

24   this, Your Honor, and that's under -- it shows that this

25   removal would be timely under 1446(b)(3).  That's out of the

1    Tenth Circuit.  Importantly there, Your Honor, the Tenth

2    Circuit clarified that when you look at sort of what's new,

3    you don't necessarily look at the legal theory.

4              So in other words, if federal question jurisdiction

5    was asserted previously as a grounds for removal, that doesn't

6    mean you can't later raise federal question jurisdiction.  It

7    makes very clear that you look at the new set of operative

8    facts that are alleged, which may give rise to a similar and

9    same legal theory.  That doesn't mean it's the same grounds

10   for removal.

11             The *MG* case out of the Western District of New York

12   also cited that very same principle.  So in that Tenth Circuit

13   case, Your Honor, *O'Bryan,* it was a libel action that was

14   filed.  The defendant removed it.  It happened to be a judge,

15   believe it or not, and the judge moved under color of federal

16   office.  The District Court remanded it back to state court.

17             Later the plaintiff actually changed the libel that

18   it was identifying and identified a different publication for

19   the libel.  The defendant removed again and the same legal

20   theory under color of federal officer, but a different set of

21   factual allegations, different bases, different operative

22   facts, different libel.

23             So the Court looked at 1446(b)(3), right?  And

24   1446(b)(3), which we're relying on, has a couple of

25   requirements and I'll just read it, Your Honor, because I

1  think it's important to frame it or paraphrase it.

2          If the case stated by initial pleading is not

3  removable, a notice of removal may be filed within 30 days

4  after receipt by the defendant -- and it goes on  -- through

5  service or otherwise, amended pleading or other paper from

6  which it first may be ascertained that the case is one in

7  which is or has become removable.

8          So looking at that first question, right?  Was the

9  initial action removable, the Tenth Circuit looked at the

10 District Court opinion and decision on that, just like we have

11 here, and didn't take long to determine that the initial

12 action was not removable because the District Court judge

13 found such.

14         So the first requirement was satisfied.  The

15 initial action was not removable.  This wasn't a case where

16 there was no prior removal; there was a prior removal.  We had

17 a ruling from Judge Curtin that it was not removable.

18         Then it looked at the next requirement, is there an

19 amendment or paper showing for the first time that the

20 actual -- the action was removable, again, not on the same

21 grounds as the prior removal?  And the Court found, well ,

22 yes, there's an entirely new libel publication that is giving

23 grounds for removal and, therefore, it's a new set of

24 operative facts.

25         Again, you don't look at that initial -- you don't

1 have to look at the legal theory and conclude that it's the

2 same grounds.  And that really squarely applies, we believe,

3 in our case.  Again, you know --

4           **MAGISTRATE JUDGE MCCARTHY:** Let me --

5           **MR. FLEMING:** I'm sorry, Your Honor.

6           **MAGISTRATE JUDGE MCCARTHY:** Let me just interrupt

7 for a second.  But in that case, if I recall correctly, there

8 was -- I mean, there were different material facts as to the

9 new libel.

10          Here, granted there are different sites involved,

11 but in terms of the, you know, obligations under CERCLA or

12 otherwise or state law, I mean, what is different from what

13 was in the original site that -- that Judge Curtin ruled on?

14          **MR. FLEMING:** So a few things, Your Honor.  We would

15 say that while the legal theories may be similar, it's an

16 entirely different set of allegations, disconnected,

17 disjointed.

18          I mean, for example, these waste sites continued

19 into the '70's; Love Canal closed in the '40's.  It's a whole

20 30 years of new conduct.

21          The plaintiffs have been alleging in these lawsuits

22 for seven years now that the Love Canal landfill is migrating

23 despite EPA's conclusions to the contrary, creating a public

24 health catastrophe in the neighborhood.

25          Now they say, well, wait a minute, some seven years

1   later, it's actually coming from air emissions at the Buffalo

2   Avenue plant.  Air emissions have never been alleged

3   previously.

4            There's actually, according to them, we dispute it,

5   there's drinking water contamination which has never been

6   alleged before.  These sites -- one of them is five miles away

7   from the Love Canal landfill.  They implicate entirely

8   different consent decrees, entirely different conduct.

9            One of the sites actually has a -- another entity,

10  the Olin Corporation, the Hyde Park site, who is also

11  responsible for the site and hasn't previously been alleged to

12  be involved in any way.

13           Further, plaintiffs have tried to make the point

14  that, you know, while it really hasn't changed because the

15  liability is the same; an injury is an injury and your

16  liability is the same regardless of the sources.

17           That's just not true.  The Love Canal allegations

18  previously involved eight other defendants.  While all

19  defendants are denying liability, to the extent that

20  apportionment came into play, there would be eight other

21  defendants involved in the Love Canal allegations.

22           In contrast with regard to these new sites,

23  Occidental is alleged to be the only defendant responsible for

24  those sources, which clearly would change, you know, we deny

25  liability, the potential liability mix.  So we believe, Your

1  Honor, that, you know, they have substantially changed the
2  character of this case.

3          They also add, Your Honor, a new allegation that
4  squarely conflicts with the consent decrees in these cases
5  that wasn't previously alleged.  They allege at paragraphs
6  157, I believe, and 159 that the Occidental defendants are
7  incinerating waste, and actually seek to impose liability
8  based on the incineration of waste at the S-Area.

9          Well, Your Honor, we cited in our papers at the
10  five year review of EPA relating to that site which clearly
11  shows that incineration was actually required under a Record
12  of Decision entered by EPA in 1990.

13          So that squarely puts into play very different
14  allegations and issues not considered by Judge Curtin
15  previously.

16          **MAGISTRATE JUDGE MCCARTHY:** Okay, okay, thank you.

17          Mr. Siegel, I'll turn back to you, I guess, on that
18  same question.

19          **MR. SIEGEL:** Thank you, Your Honor.  I think Your
20  Honor's assessment at the outset is exactly right, and I don't
21  mean to be agreeing with you in the --

22          **MAGISTRATE JUDGE MCCARTHY:** Yeah, don't.

23          **MR. SIEGEL:** -- but, yes, the primary timeliness
24  argument we make is that removals are untimely by years,
25  years.  If the cases were removable, they were removable way

1    back when the Love Canal allegations were made and there's no

2    way around that other than to assert, as the defendants do, to

3    doctrines that they say are exceptions to that obvious rule.

4            The first doctrine is they say that the case is now

5    newly removable under 1446(b), which says if the case stated

6    by the original complaint is not removable, but it then later

7    becomes removable, then you -- then you have a new 30 days.

8            That was the statute that -- that yielded or drove

9    the decision in the Tenth Circuit case from the 1970s they

10   cite involving the federal judge, and I want to dwell on that

11   case for one second.

12           That was a very unusual case involving a federal

13   judge as a defendant.  He removed it the first time, it was

14   remanded, then the plaintiff did something completely

15   inconsistent apparently in state court upon which the

16   defendant removed again.

17           And what the Tenth Circuit said is what you must

18   have under 1446(b) is -- well, this is the Tenth Circuit at

19   page 410 of that opinion, according to the statute itself,

20   referring to 1446(b), there must be both an amended pleading

21   or paper and a ground for asserting removability that exists

22   for the first time.

23           The defendants removed *Abbo-Bradley* and *Peirini* on

24   federal question grounds.  They were unsuccessful, but the

25   same allegations if there was a substantial federal question

1   in those cases asserted by the defendants, then of course

2   there was in the other 17 complaints.

3          The question is, is there now a new ground that

4   exists for the first time, as the Tenth Circuit put it, what

5   would that ground be?  Well, the first ground is a substantial

6   federal question.  No.  If that existed -- if it exists now,

7   then it existed in the Love Canal complaints in the earlier

8   complaints in all 19 cases.

9          Would that be federal officer jurisdiction?  No,

10  because that also existed.  That was an available ground of

11  removal back when all of these cases were first filed.

12         How do we know this?  We know this from the

13  defendants' statements themselves.  I'd like to read Mr.

14  Hogan's letter to the Court, this is his exhibit, it's

15  exhibit -- or the defendants' exhibit, it's Exhibit 32 to

16  their response brief, it's actually document 42-11.  This is

17  when earlier in November 2019 he is writing on behalf of all

18  parties to acknowledge -- to let Judge Kloch know that the

19  parties have reached an agreement and have been working

20  together toward the filing of these amended complaints.

21         **MAGISTRATE JUDGE MCCARTHY:** Mr. Siegel, if you -- I

22  apologize for interrupting, but do you have the -- happen to

23  have the docket number or what exhibit was that?

24         **MR. SIEGEL:** It's docket 42-11.

25         **MAGISTRATE JUDGE MCCARTHY:** Okay, let me pull that

1    up.  I see, okay.  Give me a second.  So it's a November 15th,

2    2019 letter to Judge -- Justice Kloch, right?

3              **MR. SIEGEL:** That's right, Your Honor.

4              **MAGISTRATE JUDGE MCCARTHY:** Okay.

5              **MR. SIEGEL:** What Mr. Hogan says in the second

6    paragraph there is the parties thought they should provide the

7    Court with a short report on recent developments.  Plaintiffs

8    have presented defendants with draft third amended complaint

9    in the Abbo-Bradley lawsuit in which they seek to raise new

10   claims similar to those they previously raised with respect to

11   the Love Canal site, but relating to three more landfills and

12   the Occidental Niagara Falls plant.

13             That is defense counsel saying these complaints are

14   similar, and of course they are similar.  They all concern the

15   same injury claimed -- the exact same injury is -- damages are

16   sought for the exact same injury by the same plaintiffs, and

17   the only difference is allegations about three new sites of

18   exposure.  So that is defendants themselves saying in which

19   the claims are "similar."

20             Then we have defendants' response brief in response

21   to our motion for remand -- this is page 28 of their -- of

22   their response in which they -- in which they acknowledge that

23   if there was a federal officer issue in these cases, then

24   there was a federal officer issue in the Love Canal case

25   because this is what they say at page 28 of their response:

1   Just as the Occidental defendants act under color of a federal

2   officer concerning the remediation of the three new sites

3   under federal consent decrees, so too do they act under color

4   of a federal officer concerning the remediation of the

5   Love Canal site under federal consent decrees.

6           There's simply no way around the fact that the

7   claims are not any different and they acknowledge this, albeit

8   perhaps unintentionally, but they acknowledge it both in their

9   response briefing and I think very straightforwardly in Mr.

10  Hogan's letter to the state court in November of 2019.

11          Now, the other exception to this obvious timeliness

12  problem that they have is the revival doctrine and that's the

13  doctrine that says, well, maybe -- unlike the situation in

14  1446(b), if you have a case that was removable before, but you

15  didn't remove it, but then it becomes a completely new kind of

16  case, well then, the right to removal will be "revived."

17          And we have cited the cases in our -- in our

18  briefing to the effect that this is a very rarely applied

19  exception.  They do rely on one case from this court, the *MG*

20  case, and I think the language from the *MG* case itself

21  explains exactly why it is not applicable here.

22          The *MG* case, Your Honor, we'll -- we'll remember is

23  a case in which two plaintiffs file a lawsuit seeking $162,000

24  in damages.  Case was removable on diversity grounds.  The

25  defendants didn't remove it; they were more concerned with

1    arbitration issues, so they didn't remove it, they pursued

2    arbitrability of those issues in state court.

3           Then all of a sudden the plaintiffs amended the

4    case to assert a nationwide class action on behalf of

5    thousands and thousands of plaintiffs making new substantive

6    allegations seeking $15 billion in damages.  Kind of a new

7    case.

8           And what the *MG* opinion said is if we're going --

9    and the MG opinion said in this kind of narrow situation, we

10   will allow revival because it's a fundamentally new case.  The

11   liability has astronomically increased and the new factual

12   allegations and theories are different.

13          And all you have to do is look at the standard set

14   up by the *MG* case itself.  The *MG* case says you can have

15   revival if the plaintiffs' amended complaint "dramatically

16   changes the essential character of the action."

17          Then the court quotes an earlier opinion from the

18   Southern District, one of the infinite number of *MTBE*

19   opinions, it's hard to keep them all straight, but this

20   particular *MTBE* opinion was quoted and this is part of -- this

21   is the *MG* -- this is this court, I believe it was

22   Judge Larimer, yes, it was Judge Larimer quoting the *MTBE*

23   decision saying where the newly added claims bear no

24   resemblance -- no resemblance to the original allegations or

25   the parties are reassigned such that, for example,

1  co-defendants become plaintiffs, a District Court may apply

2  the revival exception.

3        Do we have that in this case?  Of course we don't.

4  Do we have an astronomical increase in the defendants'

5  potential liability?  Absolutely not.  We have a massive

6  decrease in the defendants' potential liability because the

7  defendants acknowledge in their pleadings that between the

8  time of the second amended complaint and the third amended

9  complaint 500 plaintiffs were dropped from the litigation.

10        So what you have in this new set of third amended

11  complaints is a massive decrease in the defendants' liability.

12  Has the defendants' liability to any specific plaintiff

13  increased?  No, not at all.  The injury is still the same.

14        If a particular plaintiff is claiming some, let's

15  say, pulmonary injury or gastrointestinal injury, well, that

16  injury hasn't changed.  The only question is has the -- has

17  the -- the only change is an assertion of additional sources

18  of exposure.

19        It's kind of like filing an asbestos complaint and

20  in the first complaint you have, you know, plaintiff was

21  exposed to defendant's products at this job site.  And then in

22  the second complaint you have plaintiff was exposed to

23  defendant's products at job sites B, C and D.  That doesn't

24  fundamentally change the complaint within the meaning of this

25  revival exception.

1          Have the allegations themselves fundamentally

2  changed?  Have the legal theories changed?  Of course not.

3  Have the factual theories changed?  Of course not.

4          And we know that again from the defendants' own

5  statements, from Mr. Hogan's letter calling the allegations

6  similar and from the defendants' response brief saying just as

7  you've got a federal officer directing everything for these

8  sites, you have a federal officer directing everything for the

9  federal -- for the Love Canal site.

10          I think the revival exception is applied in a very,

11  very small handful of cases.  We cited this opinion, very

12  extensive look at the doctrine from the Middle District of

13  Tennessee, the *Slattery* case that we filed -- or that we

14  cited.  That -- that is an exhaustive -- it's almost a law

15  review article looking at this doctrine.

16          In that case as it's very, very rarely applied only

17  in extreme situations like the *MG* case, and this situation is

18  not that case.  I hope I've addressed Your Honor's concerns

19  about that.

20          **MAGISTRATE JUDGE MCCARTHY:** Thank you.  Mr. Fleming,

21  I assume you'll have --

22          **MR. FLEMING:** Thank you.

23          **MAGISTRATE JUDGE MCCARTHY:** -- anything you want to

24  say?

25          **MR. FLEMING:** Thank you, Your Honor.

1        **MAGISTRATE JUDGE MCCARTHY:** Go ahead.

2        **MR. FLEMING:** I appreciate it, thank you.

3        I didn't address the revival doctrine which I would

4   like to do.  Just preliminarily I'll mention 1446(b)(3), as I

5   agree with the construct that I think Mr. Siegel is laying

6   out, that we've charted really two paths here for timeliness

7   that we believe Your Honor can rely on.

8        The first is under 1446(b)(3); and separately and

9   independently we have alternative grounds under this revival

10  doctrine.

11       We think, you know, it's important to look at the

12  purpose of these rules and the doctrines when we're applying

13  them and the policies surrounding the whole timeliness

14  provisions, especially when federal officer removal is at

15  stake, which as you know from your *Badilla* opinion creates a

16  presumption actually in favor of removal.

17       But the timeliness provisions, they're not really

18  designed as, you know, gotcha's to prevent defendants from

19  getting to federal court, especially when federal officer

20  jurisdiction is asserted.

21       But, rather, they're there to discourage parties

22  from quote/unquote sleeping on their rights or litigating in

23  state court and seeing how they fair and then tactfully -- you

24  know, tactically deciding to gain an undue advantage by

25  removing to federal court.

1          And the procedural history here shows nothing of

2    the sort is at issue.  We removed back in 2013 and

3    Judge Curtin decided that the actions were not removable.

4          When we had live complaints, we removed right away

5    in 2020 raising these new grounds.

6          But on 1446(b)(3) -- before returning, Your Honor,

7    to the revival doctrine, you know, again I just reiterate it

8    doesn't matter if federal officer jurisdiction's asserted

9    previously then again; it doesn't matter if federal question

10   jurisdiction is asserted previously then again.

11         That *O'Bryan* case from the Tenth Circuit, which the

12   *MG* decision of the Western District of New York also cites and

13   quotes, similarly says that the legal phrase "same grounds"

14   does not mean the same cause of action or theory of recovery,

15   right?

16         The different grounds -- this is quoting the

17   case -- more precisely mean a different set of facts that

18   state a new ground for removal.

19         So we would submit again that it's -- it's neither

20   here nor there that federal question jurisdiction was asserted

21   before is asserted now, if these are here nor there that

22   federal officer allegations could have been asserted against

23   the Love Canal allegations previously.  That's the legal

24   theory.

25         What's changed is this new set of operative facts.

1 That's -- those are the new grounds relating to these three

2 new sites.

3          So, Your Honor, we would say that under the statute

4 1446(b)(3) we can avail ourselves to it because the action was

5 not previously removable as I've explained.

6          But if you wanted to go into alternative grounds,

7 we believe the revival doctrine squarely applies here and it's

8 not, you know, narrowly applied, we believe, as the plaintiffs

9 make it out to be.

10          The *MG* decision again of this district,

11 Judge Larimer, I mean, this is quoting from the opinion, he

12 specifically states "there's a considerable long-standing body

13 of case law, long-standing body of case law, that holds that

14 an amendment that substantially changes the character of a

15 lawsuit can give rise to a new right to remove, irrespective

16 of whether the legal basis for removal is the same as before."

17          So it's a substantial change to the character of

18 the lawsuit.  He's very quick to point out I think, unlike

19 some of the, you know, arguments in plaintiffs' briefs, that

20 there is no litmus test for this revival doctrine, right?

21          It doesn't -- you don't have to have a conversion

22 to massive liability, although I think we've explained there

23 is a change in Occidental's liability even though it denies

24 it.

25          This is a case-by-case analysis.  This is the

1  opinion saying that you've got to view the facts against the

2  reasons for both the 30 day rule and the revival exception.

3          And, again, going back to the 30 day rule, we don't

4  believe we bump into any of the policy reasons for having the

5  30 day timeliness provisions, but we believe we fall squarely

6  under kind of the purpose and poly -- policy of this revival

7  exception.

8          I mean, imagine the scenario here where seven years

9  into the litigation for the first time they're bringing in

10 three entirely different CERCLA sites, entirely different

11 regulatory structures and consent decrees, and the toxic tort

12 case, different chemicals they're now alleging are causing

13 these people's injuries purportedly, different exposure,

14 migration pathways.

15         Before supposedly chemicals were emanating from the

16 Love Canal landfill through the sewers.  Now there's air

17 deposition from the Buffalo Avenue plant.  Now there's

18 migration from these three different sites in different areas

19 not even all in Niagara Falls; some in Niagara.

20         Now they're alleging water contamination, drinking

21 water contamination.  I mean, this substantially changes the

22 character of a toxic tort lawsuit.

23         I mean, plaintiffs simply can't, you know -- I

24 don't know when they first decided to make these allegations.

25 We know they presented them to us and they requested a

1   settlement.  If we didn't settle, they would file these

2   claims.  We declined.  And then, you know, we're off to the

3   races here in 2020.

4            So we think it would be completely unfair for the

5   plaintiffs to be able to inject -- substantially change the

6   character of the case, all of these different sites and

7   different chemicals and not have us allowed to remove, to have

8   us basically precluded.

9            We don't believe that the rules provide for such,

10  you know, in the federal officer context, kind of a begrudging

11  interpretation of the rules and we think the revival doctrine

12  would squarely apply.

13           You know, we think that the *Residents and Families*

14  *United* case from the Eastern District of New York in 2017

15  shows that this is a case-by-case analysis and the facts, you

16  know, don't always have to be nearly as extreme as we believe

17  the plaintiffs argue.

18           There the plaintiffs challenged housing policies by

19  the defendant and asserted that they were violating

20  (inaudible).  Defendants didn't remove even though federal

21  question jurisdiction was inarguably stated.

22           Later the plaintiff amended the complaint to add

23  that the housing policies violated a settlement agreement, not

24  just regulations.  The defendant removed and argued that, hey,

25  that injected a constitutional question that gave grounds for

1   removal.

2           The plaintiff argued, well, it was previously

3   removable.  The Court found under the revival doctrine that

4   they really substantially changed the character of the case

5   because the plaintiffs' target was no longer just the

6   regulations.  The defendant was the same, but the target

7   conduct was no longer violations of the regulations only.  It

8   now was violations of the settlement agreement.

9           And here the target conduct that the plaintiffs are

10  making in this amended complaint is no longer, after all this

11  time, it's no longer -- Occidental's disputed it, EPA has

12  ruled repeatedly that the Love Canal landfill is not migrating

13  as plaintiffs purport to allege here -- but, nevertheless,

14  they've been alleging that for seven years.

15          Now all of a sudden again they say you know what?

16  We actually think that it's coming from way over here, five

17  miles away, a totally different theory of migration.

18          In a toxic tort suit, I can't think of anything

19  more fundamental that would change the character of the suit

20  than changing the theory of migration, then changing the

21  location , then changing the people involved, then changing

22  the chemicals at issue.  This is a dramatic change.

23          So not to belabor it, Your Honor, but we believe

24  you would be on ample grounds to rely on the revival doctrine

25  as well and I think when you, you know, take a look again at

1   the *MG* case, you'll see that it very clearly describes the

2   revival doctrine in the Western District as a case-by-case

3   analysis that is heavily fact dependent and doesn't require

4   the extreme changes that I believe plaintiffs argue.

5            **MAGISTRATE JUDGE MCCARTHY:** All right, thank you.

6            **MR. SIEGEL:** Can I respond just briefly to that,

7   Your Honor?

8            **MAGISTRATE JUDGE MCCARTHY:** Yes, Mr. Siegel.

9            **MR. SIEGEL:** Thank you, Your Honor.  Just very

10  briefly about this appeal to the underlying purposes of the

11  revival doctrine.

12           Yes, it is a case-by-case analysis.  It is an

13  extremely rare situation in which that analysis leads to an

14  application of revival.

15           The courts -- and this is true for any kind of

16  subject matter jurisdiction basis, the Second Circuit has held

17  that courts strictly enforce the timeliness requirements when

18  it comes to removal.

19           And -- and if Your Honor -- Your Honor already has

20  plenty of briefing to read, but we're happy to submit plenty

21  of cases, a further brief with plenty of cases showing that

22  even when it comes to federal officer removal, cases are

23  routinely remanded for failure to satisfy the timeliness

24  requirements.

25           Assuming that it is a case-by-case analysis, we are

1  perfectly happy to have ourselves compared to the *MG* case.

2  That was a dramatic total restructuring of the case that went

3  from $162,000 in liability to $15 billion.

4        And as I said, what we have here is a massive

5  decrease in the defendants' liability.

6        The defendants -- Mr. Fleming just cited the case

7  from the Eastern District, the *Residents and Families United*

8  case.  We're happy to be compared to that case, too.  This is

9  one of the rare examples in which a District Court in this

10 circuit has granted or has upheld removal on the basis of the

11 revival doctrine.

12        What that court said, what Judge Garaufis said in

13 that case was referring to the second amended complaint, which

14 was the complaint that yielded removal, the second amended

15 complaint, therefore, introduces, one, a different legal

16 theory, the right to free speech rather than the right to

17 intimate association; two, involving a different class of

18 victims -- the adult home operators versus the adult home

19 residents; and, three, premised on a new set of facts -- what

20 the operators can and cannot say to the adult home residents

21 in the course of their work.

22        Do we have anything like that in this case?  We

23 don't have a different legal theory.  We're still proceeding

24 on basic garden variety New York common law tort -- toxic tort

25 theories.

1           We don't have a different class of victims.  The
2   victims are still exactly the same except there are 500 fewer
3   of them.
4           It is a -- again, it is true that once in a while
5   you find a court applying this doctrine, but we cited -- I
6   believe we cited the most recent case we could find from this
7   circuit, from a district in this circuit, this is the *Rivera*
8   case from the District of Vermont in 2020 where Judge Reis
9   says the revival doctrine is a narrow, judicially created
10  exception to the 30 day rule and all doubts should be resolved
11  in favor of remand.  And she did not allow -- she did not
12  uphold removal in that case.
13          As to the purposes here, as to the -- as to the
14  idea that -- that a sort of overly strict application of the
15  timeliness rules will prevent, you know, a case from being in
16  federal court that really ought to be in federal court, you
17  know, I really -- I want to correct a misstatement that I
18  believe Mr. Fleming made unintentionally.
19          There were -- it is after Judge Curtin ruled in the
20  *Abbo-Bradley* and *Peirini* cases, then came the filing of all of
21  the other complaints.  And in those complaints, yes, we made
22  allegations about the Love Canal site.  They were not removed.
23          So -- so if they believed, you know, strongly that
24  there should be some -- that Judge Curtin was wrong or that
25  these cases really did present a federal officer contention,

1   they could have removed those cases; they could have removed

2   them certainly on federal officer grounds because they now say

3   that Love Canal is proceeding under the -- under the guidance

4   of federal officers just like the other sites.  Judge Curtin

5   did not pass on federal officer jurisdiction.

6              Why didn't they remove those cases then?

7              Lastly, Your Honor, as to the underlying purposes

8   of the doctrine, one of them is -- the main one is, is it

9   unfair to keep the defendant in state court when the nature of

10  the case has radically changed, and I think I've dealt with

11  that.

12             But another one is, is it fair to make the

13  plaintiffs start all over again in federal court?  Well, no,

14  it's not.  And -- and we respectfully say that that is perhaps

15  very acutely applicable here because this case has been going

16  on a long time in state court.

17             There is -- there is a sort of, you know, good

18  natured dispute in the pleadings as to exactly how much has

19  really happened and whose fault that is and so on, but the

20  case has been pending for a long time in state court.

21             I believe that anybody in this case will tell you

22  that Judge Kloch has invested a terrific amount of time in

23  shepherding this litigation along, and now we're told, well,

24  you need to start all over in federal court.

25             That is not fair and it is particularly not fair

1   and I think we have to advert briefly to the external

2   circumstances here.  This is -- this district is an extremely

3   backlogged district despite the heroic efforts of everyone on

4   the bench.  It would be a --

5           **MAGISTRATE JUDGE MCCARTHY:** We appreciate that

6   comment.

7           **MR. SIEGEL:** -- and it would be a massive

8   undertaking to all of a sudden plop this 19 complaint toxic

9   tort litigation down in the -- in the Western District of

10  New York, particularly when all court proceedings as we,

11  unfortunately, know are being slowed down anyway and we don't

12  know how long that state of affairs is going to continue.

13          So I don't think there's any unfairness here about

14  not applying the revival doctrine.  And I also don't think it

15  was made for a case like this.  It was made for a truly

16  unusual case like the *MG* case.  Thank you.

17          **MAGISTRATE JUDGE MCCARTHY:** All right, thank you.

18          **MR. FLEMING:** Your Honor?

19          **MAGISTRATE JUDGE MCCARTHY:** Yeah, Mr. Fleming?

20          **MR. FLEMING:** I'm sorry, Your Honor.  Did I

21  interrupt you?  I didn't mean to do that.

22          **MAGISTRATE JUDGE MCCARTHY:** No, no, I was just --

23  you seem like you wanted to say something.  And I will just --

24  I will hear you, but I will point out we've now been at this

25  an hour, so I'll give you a brief rebuttal opportunity.

1          And then I was going to say to both of you and

2    anybody else who is interested, someone made a generous offer

3    to cite more cases to me, I think I've got a lot of cases, but

4    in the interest of completeness, I would give everybody until

5    a week from tomorrow to make any letter brief submissions that

6    they feel would advance the ball, not replies or anything,

7    just based on what you've heard today.

8          But with that, Mr. Fleming, go ahead.

9          **MR. FLEMING:** Thank you, Your Honor, and I'll try to

10   be as concise as I can.  I appreciate Mr. Siegel's comment

11   about a misstatement that he thinks I may have unintentionally

12   made.

13         I'm not sure what the statement was, but I can say

14   that, yes, it is true when defendants initially removed to

15   federal court there were two cases and Judge Curtin determined

16   that they were not removable.

17         And a year or two after that plaintiffs filed 16

18   new complaints and then ultimately another totaling 19.  And

19   defendants did not remove those.  We didn't think removal

20   would have been well received when Judge Curtin decided based

21   on the Love Canal allegations that the actions were not

22   removable.

23         So I hardly think the defendants could be faulted

24   for not removing allegations that Judge Curtin had just

25   decided were not removable.

1          And I think under the law it's clear that when

2     removal is presented to the federal court, the federal court

3     should consider not only the grounds that are submitted in

4     support of removal, but any grounds on which subject matter

5     jurisdiction may exist.

6          And then just briefly on the notion that, you know,

7     we would be starting all over again, Mr. Siegel's right, there

8     has not been a lot that has happened in state court.  I think

9     there's been one appearance in person in the last five years.

10    There have been negotiations on a Case Management Order now

11    for, I think, three years.

12          I'm not aware of a single deposition being taken;

13    production of documents by defendants; there's been very

14    little that has actually happened.

15          Plaintiffs sought to recuse Justice Kloch and

16    appealed it.

17          There was a split sampling injunction order where

18    defendants requested the right to be present for any sampling

19    that plaintiffs did.  Plaintiffs fought that and we got

20    granted the injunction.  They appealed it and it was affirmed

21    in substantial part by the Fourth Department.

22          So there has not been a lot of activity.  We don't

23    believe there would be duplication of efforts, especially if

24    you consider of course that as -- I won't repeat the argument,

25    but the action now has been substantially transformed based on

1   these new allegations.  There can be no duplication of work as

2   to a substantial part of the case because they haven't been in

3   the case until now.

4         And of course with all due deference to any court's

5   docket, we do believe that under the federal officer removal

6   provision, we have an absolute right to remove.

7         **MAGISTRATE JUDGE MCCARTHY:** All right, thank you.

8   Thank you both.  It's well-briefed, well-argued on both sides.

9         As I indicated, I will give you an opportunity

10   through June 5th to submit any -- and I'm not encouraging you

11   to do this, but if there's something you want to bring to my

12   attention, you may do so by June 5th, and then I'll deem the

13   motion submitted.

14         As you all know, whatever my recommendation is will

15   be then reviewed by District Judge Geraci and we'll take it

16   from there.

17         Those of you who haven't spoken today, I thank you

18   for that, but it's good to see you all and everybody stay well

19   and stay -- stay safe, okay?

20         **MR. FLEMING:** Thank you very much, Your Honor.

21         **MR. SIEGEL:** Thank you, Your Honor.

22         **MAGISTRATE JUDGE MCCARTHY:** Mr. Siegel, yes?

23         **MR. SIEGEL:** May I inquire if Your Honor has any

24   particular questions about the merits of the subject matter

25   jurisdiction contentions?

1          **MAGISTRATE JUDGE MCCARTHY:** No.  I mean, as -- as

2    indicated, I have reviewed your papers carefully and I will be

3    reviewing them more than once again carefully.  So I think

4    with this we'll draw the oral argument to a close, okay?

5          **MR. SIEGEL:** Thank you.

6          **THE CLERK:** Judge?  I'd like to amend today's

7    appearances to include Thomas DeBoy for the City of Niagara

8    Falls.

9          **MAGISTRATE JUDGE MCCARTHY:** All right, I saw Mr.

10   DeBoy logged in shortly after we began.  So, Tom, if there's

11   anything you missed, I'm sure somebody will fill you in.

12          Thank you all.

13          **MR. SIEGEL:** Thank you, Your Honor.

14          **MR. FLEMING:** Thank you very much, Your Honor.

15          (**WHEREUPON**, proceedings adjourned at 3:06 p.m.)

16                    *    *    *

17

18

19

20

21

22

23

24

25

1        **CERTIFICATE OF TRANSCRIBER**

2

3              In accordance with 28, U.S.C., 753(b), I certify that

4    this is a true and correct record of proceedings from the

5    official electronic sound recording of the proceedings in the

6    United States District Court for the Western District of New

7    York before the Honorable Jeremiah J. McCarthy on May 28th,

8    2020.

9

10   S/ Christi A. Macri

11   Christi A. Macri, FAPR-RMR-CRR-CSR(CA/NY)
     Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25