UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOANN ABBO-BRADLEY, *et al.*,

Plaintiffs,

v.

CITY OF NIAGARA FALLS, *et al.*,

Defendants,

**REPORT AND RECOMMENDATION**

1:20-cv-00136-FPG-JJM

This case seeks damages for personal injury and property damage allegedly caused by the release of toxic chemicals. This is the second time that this case and the related case of Pierini, *et al.* v. City of Niagara Falls, *et al.* (20-cv-00142) have been removed to this court from the State of New York Supreme Court, County of Niagara. The initial removal occurred in response to the First Amended Complaint in this case, which alleged that the Love Canal landfill site was the source of the exposure. Plaintiffs successfully moved for remand of both actions following their removal. *See* Abbo-Bradley v. City of Niagara Falls, 2013 WL 4505454, *1 (W.D.N.Y. 2013) (Curtin, J.); Pierini v. City of Niagara Falls, 2013 WL 4505461 (W.D.N.Y. 2013) (Curtin, J.).

Defendants removed this case again on February 1, 2020 in response to the Third Amended Complaint, which added additional sources of alleged exposure from three waste disposal sites (102nd Street, S-Area, and Hyde Park) and a Niagara Falls plant owned by

defendant Occidental Chemical Corporation. Notice of Removal [3]. [1] Similar amendments were made in Pierini, as well as the 17 other related actions, which were also removed.[2]

Before the court is plaintiffs' motion for remand [39]. The parties have stipulated that all briefing and a decision on the motion will occur in this action, but will also be applicable to all of the related actions. Consented to Motion [15], ¶6. Having reviewed the parties' submissions [39-45, 50-51, 57-59-1, 61, 63-64, 66 67, 69] and heard oral argument on May 28, 2020 [56], for the following reasons, I recommend that the motion be granted.

## BACKGROUND

This action was commenced in Niagara County Supreme Court by Complaint dated April 10, 2012 [41-1] against the City of Niagara Falls and two entities responsible for maintaining, monitoring, and managing the Love Canal site for a discharge of contaminates from the site that occurred during a sewer pipe excavation on January 11, 2011.[3]

---

[1] Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated all docket references are to 20-cv-00136, and page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

[2] Reynolds, *et al.* v. City of Niagara Falls, *et al.* (20-cv-00154); Leone, *et al.* v. City of Niagara Falls, *et al.* (20-cv-00139); Brown, *et al.* v. City of Niagara Falls, *et al.* (20-cv-00148); Bach, *et al.* v. City of Niagara Falls, *et al.* (20-cv-00147); Wieloszynski, *et al.* v. City of Niagara Falls, *et al.* (20-cv-00151); Alaji, *et al.* v. City of Niagara Falls, *et al.* (20-cv-00153); Banks, *et al.* v. City of Niagara Falls, *et al.* (20-cv-00152); Barber, *et al.* v. City of Niagara Falls, *et al.* (20-cv-00141); Abdullah, *et al.* v. City of Niagara Falls, *et al.* (20-cv-00145); Brandon, *et al.* v. City of Niagara Falls, *et al.* (20-cv-00150); Ricketts, *et al.* v. City of Niagara Falls, *et al.* (20-cv-00149); Bennett, *et al.* v. City of Niagara Falls, *et al.* (20-cv-00146); E. Abrams, *et al.* v. City of Niagara Falls, *et al.* (20-cv-00137); T. Abrams, *et al*. v. City of Niagara Falls, *et al.* (20-cv-00144); Bietz, *et al.* v. City of Niagara Falls, *et al.* (20-cv-00138); Bloom, *et al.* v. City of Niagara Falls, *et al.* (20-cv-00143); Thornton, *et al.* v. City of Niagara Falls, *et al.* (20-cv-00155).

[3] The parties' familiarity with the history of the Love Canal site, including the remediation efforts directed at that site, is presumed.

**The First Removal**

The First Amended Complaint [41-2] dated March 26, 2013 significantly expanded the scope of the litigation, adding Occidental and other defendants for their roles in the alleged negligent design, implementation, operation, and maintenance of the remediation and containment system at the Lovel Canal site. It alleged state common law claims of negligence, abnormally dangerous activities, private nuisance, and trespass. Id. On April 18, 2013, the Pierini action was commenced State of New York Supreme Court, County of Niagara [41-3].

Both actions were removed to this court in May 2013 on the ground that the claims about the Love Canal remedy triggered federal question jurisdiction. *See* 13-cv-000487, Notice of Removal [1]. Specifically, the Notice of Removal stated, *inter alia*, that "[p]laintiffs allege that the Occidental Defendants breached a duty of care, arising under federal consent decrees, in their operation, maintenance, and monitoring of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") remedy that was implemented at the Love Canal Site". Id., ¶36.

**The Remand**

Plaintiffs successfully moved to remand the actions. *See* Abbo-Bradley, 2013 WL 4505454; Pierini, 2013 WL 4505461. In his August 22, 2013 Decision and Order remanding the actions, District Judge John T. Curtin explained that:

> "plaintiffs seek relief only under common law theories of negligence, abnormally dangerous activities, private nuisance, and trespass - theories which have long been recognized by the New York courts as a basis for recovery from parties found to be responsible for personal injury and property damage occurring as a result of the release of toxic chemical wastes or other hazardous substances into the environment . . . . Plaintiffs do not cite the CERCLA statute, nor do they seek reimbursement of response costs or any other form of the relief available under its provisions, and the well-pleaded First Amended Complaint raises no other issues of federal law . . . . [T]here is no specific request for

> enforcement, modification, or alteration of the requirements of the consent decrees, judgments, orders, or any other judicial or administrative findings made with respect to the issues presented in that case. . . . CERCLA does not completely preempt plaintiffs' nuisance or trespass claims, or otherwise foreclose plaintiffs from relying on common law theories for the relief they seek. In the absence of complete preemption, defendants' contentions regarding the preclusive effect of the consent decrees, the requirements of the existing remedial program, or the liabilities and obligations under CERCLA can only be regarded as federal defenses to properly raised state law claims, which 'state courts, being of equal dignity with federal courts, are equally competent' to adjudicate. Abbo-Bradley, 2013 WL 4505454, *7-8

In finding that plaintiffs' right to relief did not depend on resolution of substantial questions of federal law, Judge Curtin likewise found that:

> "plaintiffs' right to relief in this action is not predicated on CERCLA or any other federal law. Rather, the propriety of the relief sought must be determined according to common law tort principles of duty, breach, causation, and damages, as applied by the courts of New York State. While defendants argue that the state law causes of action necessarily implicate CERCLA because they challenge the operation, maintenance, monitoring, and effectiveness of the remedy, this argument can only be countenanced as a defense to plaintiffs' claims for damages based on injuries caused by releases of toxic chemicals from the Landfill." Id., *9.

In doing so, he further rejected defendants' argument that removal was proper under the exclusive federal jurisdiction that exists pursuant to 42 U.S.C. §9613(b) for controversies arising under CERCLA, explaining that

> "the claims set forth in the First Amended Complaint do not expressly challenge the effectiveness of the Landfill remedy, request modification of any of its carefully crafted and fully implemented remedial components, or seek any specific action that might conflict with the remediation plan. Rather, plaintiffs seek only to be made whole for any harm proximately caused by defendants' conduct, whether in performance of operation, maintenance, and monitoring obligations with respect to the remedy". Id., *10.

**The State Court Proceedings**

Shortly after the actions were remanded, a similar action, Connor v. City of Niagara Falls, was commenced on September 17, 2013 in State of New York Supreme Court, County of Niagara [41-4]. On January 29, 2014 [41-5], that court (Hon. Richard C. Kloch, Sr.) dismissed plaintiffs' claim for loss of companionship services and request for an abatement order in Abbo-Bradley, and permitted the Second Amended Complaint, which had been filed on January 15, 2014 [41-6]. In response, defendants moved to dismiss the Second Amended Complaint.

On February 14, 2014, 15 additional related actions were commenced in State of New York Supreme Court, County of Niagara. *See* Hogan Affidavit [41], ¶¶10-21. The actions were stayed pending resolution of the motion to dismiss the Second Amended Complaint in Abbo-Bradley. Id., ¶25. That motion was granted in part and denied in part by Justice Kloch, and later modified by the Appellate Division, Fourth Department on October 2, 2015 [39-8].

Discovery appears to have commenced in July 2016. Hogan Affidavit [41], ¶26. The nineteenth and final related action (Thorton v. City of Niagara Falls) was filed on August 17, 2017 in State of New York Supreme Court, County of Niagara. [42-5]. At that time, there were more than 1,200 total plaintiffs. Hogan Affidavit [41], ¶29. Defendants did not initially remove any of the 17 related actions commenced following the remand. They explain that "[w]hen Judge Curtin rejected federal jurisdiction, Defendants respected the application of his decision to the additional copycat complaints that were filed and did not attempt to remove them". Defendants' June 5, 2020 post-argument letter brief [57], p. 2.

**The Amended Complaints Triggering the Second Removal**

In early January 2019, plaintiffs' counsel advised Occidental's counsel that plaintiffs intended to seek leave to amend their complaints[4] based on newly discovered sources of toxic exposure for which they believed Occidental bore responsibility. Phillips Affidavit [39-2], ¶14. During a January 22, 2019 meeting, plaintiffs provided Occidental's counsel with a draft proposed Third Amended Complaint marked "Confidential" in Abbo-Bradley [42-27] that added allegations about additional sources of exposure from sites in or near Niagara Falls, including Occidental's plant located at 4700 Buffalo Avenue and three waste sites it allegedly controls - Hyde Park landfill, the 102nd Street waste site, and the S-area waste site. Hogan Affidavit [41], ¶35; Phillips Affidavit [39-2], ¶14.

On March 5, 2019, plaintiffs' counsel e-mailed Occidental's counsel a "slightly updated version" of the proposed Third Amended Complaint in Abbo-Bradley, and asked whether Occidental would consent to the amendment in that case, "as well as the 18 other companion cases". [42-8], p. 2 of 83 (CM/ECF). Defendants responded approximately a month later that they might be willing to stipulate to the amendment, so long as it was made in all 19 cases uniformly. Hogan Affidavit [41], ¶36. Plaintiffs initially provided defendants with five additional proposed amended complaints on July 9, 2019 [42-9]. On August 7, 2019, defendants noted that some of the proposed amended complaints did not have identical allegations, which they assumed "was a ministerial copy and paste issue". [39-15], p. 3 of 4 (CM/ECF). At that point, defendants reaffirmed that they were "still willing to stipulate to a motion for leave to

4 While pending in Niagara County Supreme Court, some the complaints in the 19 related actions were amended once or more, whereas others were not. *See* Chart of amendments [39-7]. Therefore, I have referred to them collectively as the "amended complaints".

amend to address all of the complaints at once, provided that all 19 complaints [were] revised uniformly across the board". Id.

The remaining proposed amended complaints were provided to defendants on October 25 and 28, 2019. [39-14]. On November 8, 2019, defendants notified plaintiffs of several errors in the proposed amended complaints. These primarily concerned the inclusion of previously dismissed plaintiffs and defendants. [39-15], pp. 2-3 of 4 (CM/ECF). A week later, defendants informed Justice Kloch that

> "Plaintiffs have presented defendants with a draft third amended complaint in the Abbo-Bradley lawsuit, in which they seek to raise new claims, similar to those they previously raised with respect to the Love Canal site, but relating to 3 more landfills and the Occidental Niagara Falls plant . . . . Without conceding anything and while reserving all rights and objections, defendants are prepared to agree to plaintiffs' request for leave to allow them to file the amendment complaints in Abbo-Bradley and the other 18 lawsuits, subject to an acceptable stipulation and a review of the proposed amendments in the other 18 lawsuits. That tentative agreement is conditioned . . . on plaintiffs simultaneously filing proposed amended complaints in the other 18 related lawsuits. The parties expect in the near future they will be in a position to present to the Court the 19 proposed amended complaints and stipulation to permit the filings". [39-16], p. 1.

At a scheduling conference before Justice Kloch on November 25, 2019, the parties informed him that defendants had consented to the proposed amended complaints in all 19 actions, but that they were finalizing which plaintiffs would be removed from the amended complaints. Phillips Affidavit [39-2], ¶18; Phillips Reply Affidavit [51], ¶11. This was confirmed in Justice Kloch's November 27, 2019 Scheduling Order [39-18], which stated that "plaintiffs will file Amended Complaints, as the defendants have consented, by January 6, 2020. Id., ¶1. Deadlines were also set for defendants to answer or otherwise move against the amended complaints. Id., ¶¶2-5.

According to plaintiffs, between at least November 8, 2019 through January 2020, counsel undertook "to weed out" the plaintiffs who had previously settled or upon further

investigation asserted claims that lacked sufficient merit to proceed. Phillips Reply Affidavit [51], ¶¶5-6. Although the parties engaged in numerous exchanges concerning the final form of the amended complaints during that period, "at no time [since] at least November 28, 2019 were there any negotiations regarding the amendments upon which Defendants [would] base their removals". Id., ¶7. Between 2016 and January 2020, more than 476 plaintiffs were dismissed from the actions. Hogan Affidavit [41], ¶50. After the process of winnowing down the plaintiffs was complete, a Stipulation to Amend Complaints [43-1] was signed by the parties, and the amended complaints were filed on January 6, 2020. Hogan Affidavit [41], ¶49.

**The Second Removal**

Defendants removed all 19 actions on February 1, 2020, contending that the amended complaints present substantial federal questions arising under CERCLA, assert claims against defendants for their acts under the authority of federal officers, and otherwise are within the court's supplemental jurisdiction. Notice of Removal [3].

The removal on those grounds allegedly "arises from the new allegations about the three CERCLA sites that were not previously before this Court". Id., ¶46. The Notice of Removal relies on Bartlett v. Honeywell International, Inc., 737 Fed. Appx. 543 (2d Cir. 2018) (Summary Order) - a decision which post-dates Judge Curtin's initial remand order. Id., ¶27. In explaining why the amended complaints raise federal issues, defendants state, *inter alia*, that:

> "[p]laintiffs' claims of ongoing exposure from the 102nd Street, S-Area, and Hyde Park CERCLA remedies . . . challenge the sufficiency and effectiveness of those remedies that were designed and implemented by or at the direction of EPA and DEC, and have been operated, maintained, and monitored by the Occidental Defendants pursuant to federal Consent Decrees and DEC's and EPA's continuous oversight and approval through the present day". Id., ¶28.

In relying on federal officer jurisdiction, the Notice of Removal likewise states, *inter alia*, that defendants' "alleged failures . . . occurred while the Occidental Defendants were carrying out their federal Consent Decree duties under EPA's and DEC's supervision pursuant to CERCLA". Id., ¶42.

Plaintiffs' motion to remand [39] challenges the removal on procedural and substantive grounds, and seeks attorneys' fees and costs pursuant to 28 U.S.C §1447(c).

**DISCUSSION**

Generally, pursuant to 28 U.S.C. §1446(b), a defendant must file a notice of removal within 30 days after receipt of the first pleading in the state court action that sets forth a removable claim. Where a case is not initially removable, a defendant may file a notice of removal "within thirty days after receipt . . . through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable". 28 U.S.C. §1446(b)(3).

"[I]n light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." Purdue Pharma L.P. v. Kentucky, 704 F.3d 208, 213 (2d Cir. 2013). This includes the "statutory procedures for removal", which are "to be strictly construed". Syngenta Crop Protection, Inc. v. Henson, 537 U.S. 28, 32 (2002). Although plaintiffs are moving for remand, the burden on this motion for establishing removability falls on defendants. *See* Enterprises v. Allen, 2016 WL 3512176, *4 (E.D.N.Y. 2016).

Plaintiffs argue that the well-pleaded complaint rule bars jurisdiction, but also suggest that "the Court need not even reach the question of subject matter jurisdiction in view of the procedural defects in the removal. First, all of the removals are untimely. Second, as to the Abbo-Bradley and Pierini cases, they have previously been removed on grounds of federal question jurisdiction, and cannot be removed on the same ground again. Finally, defendants are collaterally estopped from removing the other cases on the same ground again." Plaintiffs' Memorandum [39-1], p. 5. In response, defendants argue that since a new removal period was triggered by the new grounds for removal presented by the amended complaints, the removal was timely under 28 U.S.C. §1446(b)(3), and also timely under the revival doctrine. Defendants' Joint Memorandum of Law [40], p. 8.

**A. Did the Amended Complaints Trigger a New Removal Period?**

**1. 28 U.S.C §1446(b)(3)**

Plaintiffs argue that the amendments "did not make the cases newly removable, since they did not add any new basis for federal question jurisdiction that could have not been asserted by defendants upon receipt of the original complaint". Plaintiffs' Memorandum [39-1], p. 6. Therefore, they argue that "the 17 cases that had not been previously removed should have been removed no more than 30 days from the date on which they were originally filed." Id. As to the remaining two cases - Abbo-Bradley and Pierini - that were previously removed on federal question grounds, plaintiffs argue that they cannot be removed again on that ground. Id., pp. 10-11. To the extent that defendants' Notice of Removal relies for the first time on federal officer jurisdiction, plaintiffs argue that since "the original complaint disclosed as much", it is too late for them to now seek removal on that basis. Id., pp. 7-9.

In response to those arguments, defendants direct their arguments to the successive removal of Abbo-Bradley and Pierini. Defendants' Joint Memorandum of Law [40], pp. 8-9. Relying on O'Bryan v. Chandler, 496 F.2d 403 (10th Cir. 1974), they argue that "[a] different ground for purposes of successive removal need not be a different theory of federal jurisdiction, but only different facts supporting it. Indeed, courts have permitted successive removals where an amended complaint sets forth new facts that substantiate the originally stated removal ground." Id.

"[A] prior, unsuccessful removal is not an automatic bar to a successful successive removal when the requirements of 28 U.S.C. § 1446(b)(3) are satisfied. Therefore, the key inquiry on the present motion is whether Defendant received 'a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.'" Washington v. Key Health Medical Solutions, Inc., 2012 WL 12892691, *3 (C.D. Cal. 2012) (*quoting* 28 U.S.C. §1446(b)(3)). *See also* O'Bryan, 496 F.2d at 409 ("the voluntary action of the plaintiff in amending his state complaint must set forth a ground for removal that appears for the first time"). Consequently, a narrow exception exists that permits "[r]emoval . . . on the same theory of federal jurisdiction (i.e., federal question or diversity jurisdiction)", where there is "a different set of facts establishing a new ground for removal". Everett Financial, Inc. v. Kocher, 2019 WL 4597574, *2 (N.D. Tex. 2019). *See also* Ortiz v. City of New York, 2013 WL 2413724, *2 (S.D.N.Y. 2013) ("federal courts have adhered to a general rule that, absent an intervening change in the underlying factual circumstances, a second removal by the same party on the same ground is impermissible and may subject the removing party to sanctions").

These principles intersect with 28 U.S.C. §1447(d), which prohibits review of "[a]n order remanding a case to the State court . . .  on appeal or otherwise", and thereby "effectively makes the [law of the case] doctrine mandatory in removal cases". Bank of America v. Pastorelli-Cuseo, 2017 WL 4678184, *2 (D. Conn. 2017). *See also* Washington v. Riley, 2014 WL 993515, *4 (W.D. La. 2014) ("section 1446(b) must be read in harmony with 28 U.S.C. § 1447(d)").  "In other words, section 1447(d) and the law of the case doctrine collectively bar a successive removal by the same party on the same grounds if nothing of significance has changed since the prior removal." Id.

Defendants rely heavily on O'Bryan, supra.  There, the defendant, a federal bankruptcy judge, was sued for libel for submitting, with leave of the Tenth Circuit Court Appeals, a *pro se* brief (apart from what was submitted on his behalf by his counsel) in opposition to the plaintiff's appeal of a decision dismissing his malicious prosecution suit against the defendant on judicial immunity grounds.  *See* 496 F.2d at 406; O'Bryan v. Chandler, 356 F.Supp. 714, 716 (W.D. Ok. 1973); Chandler v. O'Bryan, 445 F.2d 1045, 1049 (10th Cir. 1971). The defendant removed the action pursuant to 28 U.S.C. §1442(a)(3), which permits removal of an action against "[a]ny officer of the courts of the United States, for or relating to any act under color of office or in the performance of his duties".  Following remand, the plaintiff amended his complaint to base his libel claim on an entirely different publication - a separate preliminary draft of the defendant's *pro se* brief that he provided to a local newspaper, resulting in a front page story. 496 F.2d at 407.

That amendment led to a second removal by the defendant, also pursuant to 28 U.S.C. §1442(a)(3).  Finding that the newly alleged libelous publication constituted a new ground for removability, the court explained that "[t]he place where the alleged libel is published

is *significant* in determining whether an officer of the court is acting 'under color of office or in the performance of his duties'". 496 F.2d at 411 (emphasis added).

Here, by contrast, defendants fail to explain - nor is it readily apparent - why the addition of the three other possible sources of contamination present a different ground for removability. Without "factual allegations that are *sufficiently distinct* to provide a ground for removal that [was] not disposed of under [the original pleadings]", Kindred Hospitals Limited Partnership v. Aetna Life Insurance Co., 2018 WL 4215118, *4 (N.D. Tex. 2018) (emphasis added), successive removal is prohibited.

The other cases cited by defendants illustrate the type of amendment necessary to permit a successive removal. *See* Defendants' Joint Memorandum of Law [40], pp. 8-9; June 5, 2020 post-argument letter brief [57], p. 5. For example, in Jordan v. Equity Group Eufaula Division, LLC, 648 F.Supp.2d 1246, 1247 (M.D. Ala. 2009), the complaint alleged that the plaintiff's termination violated the "employee handbook". The defendant removed the case, alleging that the it was preempted by the Labor Management Relation Act ("LMRA"), which preempts all state law claims not independent of a labor contract between the employer and the employee's labor organization. Id. When the plaintiff later amended his complaint to allege that his termination violated the defendant's "contractual agreements with an[d] on behalf of the Plaintiff", the defendant removed the case again. Id., 1248. Not surprisingly, the second removal was permissible because it made "clear for the *first time* that the LMRA preempts some of [the plaintiff's] claims". Id. at 1252 (emphasis added). *See also* Sharp v. Wellmark, Inc., 2012 WL 5985447, *1, 3 (D. Kan. 2012) (permitting a successive removal based on Employee Retirement and Income Security Act preemption, where the initial action only sought to enforce the parties' private settlement agreement but the amended complaint sought relief outside of the scope of the

settlement agreement); S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 493-94 (5th Cir. 1996) (permitting a second removal on diversity of citizenship grounds where the first removal was based on the defense counsel's affidavit concerning the amount in controversy, and the second was based on newly acquired facts from the plaintiff's president's deposition); APM & Associates, Inc. v. North Texas Tollway Authority, 2010 WL 11627811, *1 (E.D. Tex. 2010) (after dismissing the plaintiffs' federal claims without prejudice, the court remanded the state law claims, but the defendants were permitted to remove the action again in response to the plaintiffs' subsequently filed third amended petition, which reasserted their previously dismissed federal causes of action based upon additional factual allegations).

Each of the cases relied upon by defendants involved factual allegations or facts which later came to light for the first time, establishing a new ground for removal. That has not occurred here. "[F]rom a removal perspective, this case is the same as it ever was". Pastorelli-Cuseo, 2017 WL 4678184, at *3. Any ground for removal that was presented by the earlier pleadings remains unchanged by the addition of the three other alleged sites responsible for the contamination. *See* Elisa C. v. New Mexico Department of Health, 2005 WL 8163780, *3 (D.N.M. 2005) ("unlike O'Bryan, the amended complaint here did not state a new ground for removal. Changes in Plaintiffs' complaint merely flesh out the existing claim").

Defendants argue that the "three newly alleged sites (102nd Street, S-Area, and Hyde Park) are located in different areas, received different chemicals at different times, were the subject of different federal cleanup lawsuits, and were remediated by different people at different times under different CERCLA consent decrees. And unlike the Love Canal allegations, the new Plant allegations challenge ongoing and future business operations". Defendants' Joint Memorandum of Law [40], p. 10. However, notwithstanding those changes,

the claims in the case remain the same. The same arguments that defendants contend support removability now were previously presented on their initial removal. *See, e.g.*, Notice of Removal (13-cv-00487) [1], ¶23 ("[a] challenge to a CERCLA remedy presents a controversy arising under CERCLA"); id., Point IV ("[p]laintiffs' Claims Depend on Duties arising under the Federal Consent Decrees, which . . . Establish a Substantial Federal Question").

For the first time in their post-argument letter brief, defendants more particularly note that it is newly alleged that "it was tortious for the Occidental Defendants to incinerate 102nd Street and Hyde Park waste at the Buffalo Avenue Plant . . . even though EPA required them to incinerate waste". June 5, 2020 post-argument letter brief [57], p. 4. Although that particular allegation is new, it does not provide a new ground for removal. Defendants' argument for removability has been - and continues to be - that the litigation arises from their implementation of a federally imposed remedy. Although the three new sites may be governed by different consent decrees, defendants do not explain why the particular consent decrees or other variances between the sites provide a new ground for removability. *See, e.g.*, Notice of Removal (13-cv-00487) [1] ¶3 ("[p]laintiffs' claims present controversies arising under CERCLA because they challenge the sufficiency and effectiveness of the remediation of the Love Canal Site, which was implemented pursuant to CERCLA, by both USEPA and NYSDEC, and components of which were the subject of consent decrees between OCC and those two agencies and ordered by this Court"); defendants' Memorandum of Law in Opposition to Remand (13-cv-00487) [116], p. 8 ("[p]laintiffs' claims - that the remedy . . . was negligently performed . . . are a direct challenge to numerous determinations of USEPA, made pursuant to CERCLA's administrative . . . process").

Given the similarity between the arguments raised now and those that were raised at the time of the initial removal, I see no reason why defendants' current reliance on federal officer jurisdiction could not have been raised based on the earlier pleadings. 28 U.S.C. §1446(b)(3) "does not 'revive the period for removal' simply because some 'other paper is interposed that shows a ground for removal that previously was palpable but was not invoked by the defendant.'" Johnson v. National Consolidation Services, LLC, 2013 WL 638600, *3 (E.D. Pa. 2013) (*quoting* 14C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 3731 at 562 (4th ed.2009)). As plaintiffs note (Reply Memorandum [50], pp. 1-2), defendants' current protestations are also difficult to reconcile with their acknowledgment that "just as the Occidental Defendants act under color of a federal officer concerning the remediation of the three new sites under federal consent decrees, so, too, do they act under color of a federal officer concerning the remediation of the Love Canal site under federal consent decrees". Defendants' Joint Memorandum of Law [40], p. 28.

Defendants also argue that the "new facts alleged . . . were not available when [they] first removed". Defendants' June 5, 2020 post-argument letter brief [57], p. 5. However, "not every amendment to a plaintiff's original complaint in state court allows the granting of a second . . . petition to remove". O'Bryan, 496 F.2d at 409. "It is not enough to have new facts supporting removal; these new facts must provide a new ground for removal." Everett Financial, 2019 WL 4597574, *3.

Finally, defendants argue that the Second Circuit's subsequent decision in Bartlett, 737 Fed. Appx. 543, demonstrates that "Judge Curtin's remand decision was in error", and that Judge Curtin's remand decision is not law of the case. Defendants' Joint Memorandum of Law [40], p. 13. As part of that argument, defendants cite to Spurgeon v. Pacific Life

Insurance Co., 2007 WL 685943, *3 (S.D. Ill. 2007) (defendants' Joint Memorandum of Law [40], p. 13), which held that "changes in or clarifications to existing law, may permit a second or successive removal". Spurgeon, 2007 WL 685943, *3. *See also* Rea v. Michaels Stores Inc., 742 F.3d 785, 789 (9th Cir. 2018) ("[a]n intervening change in the law that gives rise to a new basis for subject matter jurisdiction qualifies as a subsequent event that justifies a successive removal petition").

However, I do not read defendants' Notice of Removal as contending that the Second Circuit's decision in Bartlett triggered another removal period. *See* Notice of Removal [3], ¶46 ("[t]his Notice of Removal arises from the new allegations about the three CERCLA sites that were not previously before this Court"). In any event, if that was defendants' theory, their removal notice would have had to been filed "within 30 days after a change in law that revealed the facts necessary for federal court jurisdiction", Skau v. JBS Carriers, Inc., 2018 WL 6804315, *1 (W.D. Wash. 2018), which did not occur here. *See* id., *2 ("[a] Ninth Circuit decision that directly addresses the basis for the previous order granting remand certainly qualifies as a 'relevant change of circumstances,' allowing for a second notice of removal. [The controlling decision] was published on April 20, 2018 and Defendant's second Notice of Removal was filed on May 10, 2018, or within the 30 day window allowed for a successive removal notice after a change in law").

Bartlett does not constitute an intervening change in the law,[5] and in any event there has not been a sufficient change to the underlying factual allegations to trigger a new

---

5 "[S]ummary orders, according to the Second Circuit's own rules, do not represent an intervening change of controlling law." Fero v. Excellus Health Plan, Inc., 304 F. Supp. 3d 333, 340 (W.D.N.Y. 2018); Hoefer v. Board of Education, 820 F.3d 58, 65 (2d Cir. 2016) ("an unpublished summary order[ ] is not precedential").

removal period. *See* Federal Home Loan Mortgage Corp. v. Pulido, 2012 WL 2395204, at *2 (N.D. Cal. 2012) ("[t]he ban on successive removals . . . does not apply in circumstances where the moving party advances a different theory of removal based on newly discovered facts *or* a change in relevant law" (emphasis added)). Without such a change, "this is exactly the type of 'de facto appellate review' of a previous remand order that is prohibited". Plaintiffs' Memorandum [39-1], p. 11. *See* Deutsche Bank National Trust v. Jenkins, 2008 WL 4926968, *1 (S.D. Fla. 2008) ("[t]here are very limited circumstances when a Party may remove a case a second time. In those instances, the basis for the second removal must differ from the first. That is, a pleading must establish that the Court's consideration of the second removal is more than reconsideration of the 'same grounds' upon which the case was first removed").

**2. Revival Doctrine**

Defendants argue "this action *was* initially removable, notwithstanding Judge Curtin's decision that it was not, the Court should follow precedent in this District regarding revival, MB Building Materials, Ltd. v. Paychex, Inc., 841 F.Supp.2d 740 (W.D.N.Y. 2012), and find that the doctrine applies". Defendants' July 17, 2020 post-argument letter brief [66], p 3 (emphasis in original). Even if defendants are correct, and the action was initially removable (*i.e.*, Judge Curtin's decision was wrong), I conclude that the revival doctrine is not applicable.

"As a general rule, if a defendant fails to timely remove a case in compliance with the procedures set forth in § 1446, the right to remove is irretrievably lost . . . . There is, however, one exception to this general rule concerning a defendant's loss of the right to remove. This narrow judicially-created exception to the thirty-day rule is known as the revival exception." MG Building Materials, 841 F. Supp. 2d at 744. It applies "where an amended

complaint fundamentally alters the nature of the case to such an extent that it creates an essentially new lawsuit." Id., 745.

Initially, I doubt that the Second Circuit, which has strictly construed the removal statute, would even recognize the revival exception. *See* Study Logic LLC v. 7-Eleven, Inc., 2019 WL 9047030, *3 (E.D.N.Y. 2019) ("[i]t is instructive, however, that [the Second Circuit] ha[s] found it appropriate to strictly construe the removal statute in other contexts"); Ray v. Trimpspa Inc., 2006 WL 5085249, *3 (C.D. Cal. 2006) ("the revival exception is a doctrine of dubious application in light of the strict construction this court must accord to the removal statutes"); Nelson v. City of Las Vegas, 2018 WL 3458561, *4 (D.N.M. 2018) ("many courts have either ignored the revival exception or viewed it with skepticism").

Under the plain language of §1446(b), "[e]ither a case is removable based on the initial pleading or it is not. If it is removable, defendant must do so within thirty days. Subsequent conduct can only affect removability if the case was not originally removable. If Congress had wanted to place a third window of opportunity for removal coinciding with certain kinds of amendments to existing actions, it could have done so." Daggett v. American Security Insurance Co., 2008 WL 1776576, *3 (M.D. Fla. 2008).

Even if the revival exception is a viable theory in this Circuit, this is not one of the rare circumstances where its application is warranted. "[C]ourts within the Second Circuit have interpreted th[e] mandate of strict construction as serving to severely curtail the application of the revival exception." Study Logic, 2019 WL 9047030, *3. *See also* Casale v. Metropolitan Transportation Authority, 2005 WL 3466405, *9 (S.D.N.Y. 2005) ("the judge-made revival doctrine should be applied in 'an exceedingly narrow scope'", *quoting* Dunn v. Gaiam, Inc., 166 F.Supp.2d 1273, 1279 (C.D.Cal. 2001)).

Application of the exception is limited to only those instances where "an amended pleading changes the nature of a case so drastically that the amendment 'in effect begins a new case'". In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation, 2006 WL 1004725, *3 (S.D.N.Y. 2006). *See also* Rivera v. Berlin City's Vermont Remarketed Autos, Inc., 2020 WL 289464, *4 (D.Vt. 2020) ("factual allegations and legal claims have not been radically transformed and the [amended pleading] thus is not essentially a new lawsuit").  For example, "where the newly added claims 'bear no resemblance' to the original allegations or the parties are realigned such that, for example, co-defendants become plaintiffs". Id.  By contrast, "[w]here the pleading amendments do not change the 'target' of a plaintiff's attack, the basic legal theory of the case, or the 'nature of the relief sought' there is no revival". Id.

Application of the revival exception is also guided by the purpose of the 30-day rule, "which is 'to deprive the defendant of the undeserved tactical advantage that he would have if he could wait and see how he was faring in state court before deciding whether to remove the case to another court system; and to prevent the delay and waste of resources involved in starting a case over in a second court after significant proceedings, extending over months or even years, may have taken place in the first court'". MG Building Materials, 841 F. Supp.2d at 745 (*quoting* Price v. Wyeth Holdings Corp., 505 F.3d 624, 631 (7th Cir. 2007)). Ultimately, however, "[t]here is no litmus test for whether an amendment does so change the nature of a lawsuit. Rather, the court must undertake a case-by-case analysis, viewing the facts before it against the reasons for both the thirty-day rule of § 1446(b) and the revival exception". Id. at 747.  Factors courts consider in making that assessment include "whether the amended pleadings change the target of plaintiff's attack, the basic legal theory of the case, or the nature of the relief sought". Study Logic, 2019 WL 9047030, *3.

Those factors weigh against application of the exception. The defendants in this case, and in particular Occidental, were, and remain, the targets of this action. *See* Study Logic, 2019 WL 9047030, *4 ("[n]either party contests that the initial target of this action was, and remains, Defendant 7-Eleven").

Although defendants now characterize the amended complaints as "dramatically chang[ing] the scope of the lawsuit" (defendants' June 5, 2020 post-argument letter brief [57], p. 3),[6] that representation is difficult to reconcile with their earlier representation to Justice Kloch that they "raise new claims, *similar* to those they previously raised with respect to the Love Canal site, but relating to 3 more landfills and the Occidental Niagara Falls plant" (November 15, 2019 letter to Justice Kloch [42-11], p. 2 of 3 (CM/ECF) (emphasis added)), and the fact that they gave their consent to the amendment many years into litigation. In any event, when measured against MG Building Materials, supra and Residents and Families United to Save Our Adult Homes v. Zucker, 2017 WL 5496277 (E.D.N.Y. 2017) - the only two cases cited by defendants from within the Second Circuit that have applied the doctrine - it is evident that the amended complaints did not sufficiently change the nature of the case to the degree required for the exception to apply.

In MG Building Materials, "[w]hat began as a lawsuit by two plaintiffs, alleging that Paychex's failure to make timely and adequate tax payments on behalf of MG and Excellence had caused plaintiffs to incur some $162,000 in penalties, has morphed into a class action, potentially involving thousands of class members across the country, while the damage claims have grown to a whopping $15 billion, an increase of over nine million percent." 841 F.

---

[6] At oral argument, defendants' counsel explained that "[i]n a toxic tort suit, I can't think of anything more fundamental that would change the character of the suit than changing the theory of migration, then changing the location, then changing the people involved, then changing the chemicals at issue". Oral argument transcript [56], p. 34.

Supp. 2d at 748. The court highlighted that whereas the original pleadings had alleged that Paychex had failed to pay taxes on behalf of its clients, the amended pleading contained broadened claims that Paychex had "knowingly and purposefully engaged in . . . a nationwide scheme to defraud its clients and convert their funds for Paychex's own use". Id. Faced with this "drastic transformation", the court concluded that application of the revival exception was warranted. Id. at 747.

Likewise, in Zucker, a single additional cause of action in the amended pleading "changed the target" of the plaintiffs' case because in addition to attacking state regulations, it sought to undermine an existing, federal court-approved settlement agreement.  The court explained if the plaintiffs prevailed on the new cause of action, the consequences for the defendants would be "radically transformed" by subjecting the State to "inconsistent directives from the state and federal courts". 2017 WL 5496277, *8.  It further explained that the new cause of action involved "a different legal theory", "a different class of victims", and was "premised on a new set of facts".  Id. at *8-9.  Since the new cause of action "substantially alter[ed] the nature of the action", the revival doctrine was applied to permit the removal.

The amendment here falls short of altering the nature of the suit, which remains a mass tort personal injury action arising from exposure to chemicals.  Plaintiffs' alleged injuries are unchanged.  While the sites that may have contributed to those injuries have expanded, each involving different chemicals and remediation efforts, the amendment has narrowed the cases in other respects.  Whether you use plaintiffs' estimate that "the new complaints collectively seek damages for nearly *500* fewer plaintiffs" (plaintiffs' Reply [50], pp. 4-5), or defendants' estimate that there are 77 fewer plaintiffs as a result of the latest amendments, the number of plaintiffs defendants need to defend against has been appreciably reduced.  Although defendants' potential

liability for the remaining plaintiffs may have increased because of the additional means of causation, plaintiffs explain that "the injuries for which recovery is sought remain the same. Any plaintiff who claims injury arising from exposures from the Love Canal site, and who now claims exposures from other sites as well, is still seeking the same damages for the same injury. That injury is still worth only whatever it was worth before". Id. Therefore, unlike in MG Building Materials, the potential damages have actually *decreased*.

At least some of the policy considerations present in MG Building Materials that favored application of the exception are also not present here. For example, there, the case had been pending in state court for 16 months, with "most of the litigation . . . [having] consisted of skirmishing over preliminary matters such as arbitration, removal, and venue". 841 F.Supp.2d at 748. Hence, the court concluded that keeping the action in federal court would not "result in 'delay and waste of resources in starting a case over here after significant proceedings . . . have taken place in the state court'".

While the state court litigation here has been pending many times longer, the parties sharply dispute the progress that the cases made during that period. There is no question that the progress in this litigation falls well short of what one would expect from approximately seven years of litigation in state court. However, we remain years past the starting gate and over that period the state court (at both the Supreme Court and Appellate Division levels) has garnered a deep familiarity with the cases through its resolution of motions to dismiss the Second Amended Complaint and appeals therefrom (defendants' June 5, 2020 post-argument letter [57], p. 9; Appellate Division decisions [39-8]), as well as from Justice Kloch's participation in settlement discussions. Phillips Reply Affidavit [51], ¶13.

Though defendants are not satisfied with plaintiffs' discovery responses to date, the fact remains that discovery has progressed bilaterally, with 130 plaintiffs having provided Fact Sheets, and the 11 Abbo-Bradley plaintiffs having produced medical authorizations and responses to defendants' document requests and interrogatories. Hogan Affidavit [41], ¶29; Mack Affirmation [42-3], ¶15.[7] On January 13, 2017 the Occidental defendants also served plaintiff with their discovery responses [39-10].

In MG Building Materials, the court also recognized that while "a subjective intent to mislead [by the plaintiff] is not always necessary for the revival exception to come into play", it found it "noteworthy" that "during the state court proceedings, plaintiffs' counsel made statements expressly disavowing any intention to file class claims". 841 F.Supp. at 751. By contrast, here, I accept plaintiffs' representation that their decision to file the amended complaints was based on the "newly discovered sources of toxic exposure in the Niagara Falls area". Phillips Affidavit [39-2], ¶14; Phillips Reply Affidavit [51], ¶4.

However, like in MG Building Materials, I do not find that defendants, who sought to remove the actions early on, have attempted to garner an undeserved tactical advantage with a wait and see approach to the state court proceedings.[8] Nevertheless, on balance, the policy considerations for the 30-day rule of §1446(b) weigh against the application of the revival

---

[7] Defendants point to this as only being a sliver of the discovery concerning the then 1,200 plaintiffs. Yet, this production was sufficient for defendants to withdraw their then pending motion to compel, and, at that time, defendants also represented that the parties were close to reaching an agreement on a Case Management Order that would moot the pending motion, including plaintiffs' cross-motion, which sought a Case Management Order that would essentially make the Abbo-Bradley case, as the first-filed matter, the bellwether case, while limited discovery would be exchanged in the remaining cases pending completion of the Abbo-Bradley trial. *See* defendants' October 11, 2017 letter to Justice Kloch [42-4]; Mack Affirmation [42-3], ¶¶33-40.

[8] If either party appears dissatisfied with the state court proceedings, it is more likely plaintiffs, who unsuccessfully sought Justice Kloch's recusal. *See* defendants' June 5, 2020 post-argument letter brief [57], p. 10 n. 3.

exception here. The "factual allegations and legal claims have not been radically transformed", and the amended complaints are "not essentially a new lawsuit". Rivera, 2020 WL 289464 at *4. Therefore, I conclude that defendants' untimely removal cannot be excused.

**B. Even if Another 30-day Removal Period was Triggered, was Defendants' Removal Timely?**

Even assuming *arguendo* that the amended complaints triggered another opportunity for removal, defendants still must establish that they filed their notice of removal "within 30 days after receipt by the defendant . . . of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable". 28 U.S.C. §1446(b)(3). Whereas plaintiffs argue that the 30-day period accrued when the state court granted leave in its November 27, 2019 Scheduling Order for them to file the amended complaints (plaintiffs' Memorandum [39-1], pp. 9-10; Plaintiffs' Reply Memorandum [50], p. 8), defendants state that the 30-day removal clock was not triggered until the amended complaints were filed on January 6, 2020. Defendants' Joint Memorandum of Law [40], pp. 10-12.

As discussed above, the "statutory procedures for removal are to be strictly construed". Syngenta Crop Protection, Inc., 537 U.S. at 32. This includes the 30-day removal timeline, which is "stringently enforce[d]". Enterprises, 2016 WL 3512176, *4; Russell v. Lamothermic Precision Casting Corp., 2020 WL 61139, *2 (S.D.N.Y. 2020) ("[f]ederal courts stringently enforce the 30-day removal timeline absent a showing of waiver or estoppel").[9]

---

[9] Defendants argue that since the removal here is based, in part, on federal officer grounds, the presumption is flipped to be in favor of removal. Defendants' June 5, 2020 post-argument letter brief [57], pp. 1-2 (*citing* Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1253 (9th Cir. 2006)). In Durham, the Ninth Circuit recognized that because of the presumption in favor of federal officer removal, "a federal officer defendant's thirty days to remove commence[s] when the plaintiff discloses sufficient

There is no binding precedent as to which of these events trigger the removal clock, and courts have taken several approaches. "A minority of courts ha[ve] held that, where an amended complaint is the document that first gives the defendant notice of removability, the thirty-day period for removal commences on service of a motion to amend or stipulation permitting amendment." Lucente S.P.A. v. Apik Jewelry, Inc., 2007 WL 7209938, *2 (C.D. Cal. 2007). *See also* Shukla v. Deloitte Consulting LLP, 2020 WL 949426, *3 (S.D.N.Y. 2020) (removal was not premature where it was based on a proposed amended complaint filed in connection with a motion for leave to amend); McDonough v. UGL UNICCO, 766 F. Supp. 2d 544, 546 (E.D. Pa. 2011) ("[t]hough some courts have held that a complaint becomes removable upon mere notice of a *motion* for leave to amend that, if granted, would provide federal subject matter jurisdiction over the matter, this is the minority view" (emphasis in original)). Other courts have found that "the period begins when the amended complaint is filed".

Instead, "most courts . . . have held that § 1446(b)'s thirty-day limitations' period commences upon *either* the granting of the motion to amend *or* the actual filing of the amended complaint." May v. J.D. Candler Roofing Co., 2005 WL 1349110, at *4 (E.D. Mich. 2005) (emphasis added). As between those approaches, those that hold that "the thirty-day removal period does not begin to run until a state court judge enters an order granting leave to file an amended complaint" are often characterized as representing the majority view. Drain v. South Carolina Department of Education, 2019 WL 4409461, *2 (D.S.C. 2019); Culberson v. Walt Disney Parks & Resorts, 2015 WL 5796997, *3 (C.D. Cal. 2015) ("[u]nder the 'majority'

---

facts for federal officer removal, even if the officer was previously aware of a different basis for removal". Durham, 445 F.3d at 1253. Hence, Durham merely recognized that a new 30-day window opens when federal officer removability arises, even if an alternative ground for removal was evident from the initial pleading. It did not more expansively establish, as defendants contend, that "[p]rocedural questions are subject to the presumption in favor of Federal Officer Removal". June 5, 2020 post-argument letter brief [57], p. 1.

approach, the removal window opens when the state court grants a plaintiff's motion to amend");
Robinson v. North Bolivar Consolidated School District, 2019 WL 3536819, *1 (N.D. Miss.
2019) ("[m]ost courts have conditioned removability on the *granting* of the motion to amend"
(emphasis in original)); Hamilton v. Hertz Corp., 607 F.Supp. 1371, 1373 (S.D.N.Y.1985)
("[g]enerally, the time period [for removal] would start to run 'after receipt' by defendants of a
copy of the order [granting the motion to amend]"). *See also* Glass v. City of Chattahoochee,
2016 WL 3128370, *4 (N.D. Fla.), adopted, 2016 WL 3129218 (N.D. Fla. 2016) ("[a]lthough §
1446(b)(3) notes that the 30-day clock begins running after receipt of a motion, that provision
has generally been held to be applicable in diversity cases but not federal question cases. Thus, if
a case as initially filed is not removable because it asserts only state law claims, the majority of
courts have required a motion to amend the pleading be granted prior to removal").  The courts
subscribing to this view explain that until leave to appeal is granted "the complaint does not state
a federal claim. It might never state a claim, since the state judge might deny the motion".
Sullivan v. Conway, 157 F.3d 1092, 1094 (7th Cir. 1998).

By contrast, defendants cite to Israel v. Volkswagen, A.G., 2016 WL 9334707, *7
(D. Vt. 2016), in support of their argument that "the removal clock does not start until an
amended pleading is permitted, *filed*, and operative". Defendants' Joint Memorandum of Law
[40], p. 11 (emphasis added). In Israel, the court recognized that "[a] majority of courts having
considered this issue hold that the thirty-day removal period does not begin until the state court
grants leave to amend *and the amended complaint becomes operative*". Id., *6 (emphasis added).
It went on to predict that "the Second Circuit would endorse the majority view and construe the
thirty-day removal period to run from the effective date of Plaintiffs' Amended Complaint.

Plaintiffs' Amended Complaint became effective on January 7, 2016, the date the state court granted leave to amend." Id., *7.

The plain language of the decision appears to equate the "operative" or "effective" date of the amended complaint to the date leave to amend is granted, rather than the filing of the amended complaint. However, in fairness to defendants, it is unclear whether the amended complaint in Israel needed to be filed or was deemed filed when leave to amend was granted. In any event, regardless of what Israel may (or may not) have held, it did not confront the issue before me, since the plaintiff was advocating for the removal trigger being the date leave to amend was sought, whereas the defendant was arguing that it was the date leave to amend was granted. Id., *1, 6.

Nevertheless, there are other cases that support defendants' position that the 30-day removal period is triggered by the filing of the amended pleading. *See, e.g.*, Universal Semiconductor, Inc. v. Tuoi Vo, 2017 WL 2719987, *2 (N.D. Cal. 2017); Robinson, 2019 WL 3536819, *1 ("[o]ther [courts] have required the amended complaint be filed or otherwise made effective"); Mininsohn v. Ocwen Loan Servicing, LLC, 2016 WL 6569342, *3 (M.D. Fla. 2016) ("[t]he triggering event for the 30–day removal period under § 1446(b)(3) is the day on which the state court grants the motion for leave to amend and deems the amended complaint filed"). That "approach is a slightly more formal approach than the 'majority' view because it includes any delay between when a motion for leave to amend is granted and the actual filing of the amended complaint." Culberson, 2015 WL 5796997, *4. The courts following that view "emphasize the possibility that even if leave is granted a party may never actually amend his complaint and thus the case might never become removable." Douklias v. Teacher's Insurance & Annuity Association, 35 F. Supp. 2d 612, 615 (W.D. Tenn. 1999).

Here, there was also no risk that the amended complaints, the substance of which defendants had been aware of for months, would not be filed, as evidenced by Justice Kloch's Scheduling Order, which stated that "plaintiffs *will* file Amended Complaints, as the defendants have consented, by January 6, 2020" ([39-18] (emphasis added), and set a complete briefing schedule for the defendants' anticipated dismissal motions in response to the amended complaints. Id., ¶¶1-5 (emphasis added). *See* Butcher v. Miller, 212 W. Va. 13, 21 (2002) (the term "'will' means 'will'"). In any event, I "resolve any ambiguity regarding the time for removal under § 1446(b) in favor of remand and interpret § 1446(b)'s thirty-day limitations' period to commence upon the state court granting Plaintiff's motion to amend, rather than Plaintiff's official filing of his amended complaint after receiving such leave." May, 2005 WL 1349110, *6.

Alternatively, defendants point to their November 15, 2019 letter, as evidencing that it was only their "*tentative* agreement" to allow plaintiffs to amend. [42-11], p. 2 of 3 (CM/ECF) (emphasis added). However, that ignores the subsequent - *and determinative* - November 27, 2019 Scheduling Order [39-18], which renders it indisputable that defendants consented to plaintiffs' proposed amended complaints in all 19 actions. Phillips Affidavit [39-2], ¶18. Nothing in Justice Kloch's Scheduling Order required plaintiffs to either file a motion for leave to amend or to obtain a further stipulation.[10] At that point, there was no question that plaintiffs had leave to file the amended complaints, and that they would be filed by January 6,

[10] Defendants contend that the November 26, 2019 conference was "to discuss a schedule for litigating over whether Plaintiffs *could* amend their complaint yet again". Defendants' post-argument letter brief [57], p. 11 of 11 (CM/ECF) (emphasis added). Even if that was the dispute heading into conference, it is evident from the November 27, 2019 Scheduling Order that by the end of that conference, plaintiffs *would*, with defendants' consent, be filing the amended complaints.

2020 containing the substance that defendants themselves had consented to and upon which they now base their removal petition.

Ignoring the plain language of Justice Kloch's Scheduling Order, defendants argue that "the allegations regarding the three new sites were not *in* the case - and therefore not susceptible to removal - until they were asserted in an amended pleading agreed to by the parties and/or filed with the court". June 12, 2020 post-argument letter brief [59-1], p. 2 (emphasis in original) (*citing* Israel, 2016 WL 9334707, *7). Yet, that is exactly what occurred here - *i.e.*, the parties agreed that plaintiff could file amended complaints. As plaintiffs contend, "all doubt about the amendments' future had been removed by the court's assent to the amendments". Plaintiffs' Reply Memorandum [50], p. 8. At that point, the three sites were sufficiently in the case to trigger the removal clock. *See* Drain, 2019 WL 4409461, *2; Culberson, 2015 WL 5796997, *3.

I recognize that ordinarily, a motion for leave to amend or a stipulation is accompanied by the proposed pleading and when that motion is granted or the stipulation is approved, there is no question as to the content of the amended pleading. *See, e.g.*, Krantz v. Smith, 2020 WL 3410824, *3, 5 (D.S.C. 2020) (holding that the 30-day removal period was triggered by the parties' execution of a stipulated order permitting the amendment or the court's approval of that order, which attached the proposed amended complaint). Although that technically did not occur here, I see no reason why the result should be different. At the time Justice Kloch approved the parties' agreement and granted plaintiffs leave to amend, the allegations upon which defendants base their removal were firmly established. A seer was not required to tell defendants what was inevitably coming.

The record demonstrates that the lone item that remained to be finalized in the amended complaints by the January 6, 2020 filing deadline was paring down the parties. Primarily, this entailed removing plaintiffs from the suits - changes that had *nothing* to do with basis for removal. Phillips Reply Affidavit [51], ¶11; [42-13], [42-14].  It also appears that during the time period before the amended complaints were filed, some of the defendants were dropped (s*ee* Hogan Affidavit [41], ¶48) and that errors in continuing to name previously dismissed plaintiffs and defendants were corrected. Id., ¶44.  None of this, however, changed the operative jurisdictional facts in the amended complaints, which defendants consented to in November 2019, and had been aware of for at least the preceding eight months.

Even though the amended complaints may not have been in "final" form as of November 27, 2019, there is no indication that defendants lacked a concrete awareness of the substance of the amendments or that "substantive changes" bearing on the purported existence of federal question and federal officer jurisdiction remained to be negotiated, as defendants now contend. Defendants' Joint Memorandum [40], p. 12; defendants' July 17, 2020 post-argument letter brief [66], p. 3 ("[t]he form of the complaints were still being revised in significant and material respects").  In fact, it would be illogical to conclude that defendants or their experienced counsel would have consented to the filing of the amended complaints without anything short of a complete and firm understanding of the substance of the proposed amendments that would be filed. *See* Culberson, 2015 WL 5796997, *4 ("[t]hough many courts have mentioned the defendant's notice of the operative document, few courts have required actual notice before the thirty-day window commences").

As plaintiffs contend, defendants' argument that the final amended complaints were necessary to trigger the removal period is also inconsistent with defense counsel's own

conduct in Salerno v. City of Niagara Falls, 18-cv-00304, *et al.* (WKS), where they based removal on a Summons with Notice, without ever having seen the Complaint, and before it was filed or served. Plaintiffs' June 5, 2020 post-argument letter brief [58], p. 2. The two-sentence description in the Summons with Notice stated, *inter alia*, that plaintiffs were seeking relief "on behalf of themselves and others . . . for personal injury . . . caused by exposure to chemicals and contamination of home and property from chemicals". 18-cv-00304 [1-1], pp. 2-3 of 6 (CM/ECF).

Attempting to distinguish their conduct in Salerno, defendants argue that since "class action allegations were in the case from the outset, regardless of whether the complaint was served, Occidental was able to ascertain from the summons and notice . . . that there was federal jurisdiction under the Class Action Fairness Act [("CAFA")]". Defendants' June 12, 2020 post-argument letter brief [59-1], p. 2. I doubt whether the simple two sentence description in the Summons with Notice provided sufficient notice to trigger their removal period. *See* Cutrone v. Mortgage Electronic Registration System, Inc., 749 F.3d 137, 145 (2d Cir. 2014) ("in CAFA cases, the removal clocks of 28 U.S.C. § 1446(b) are not triggered until the plaintiff serves the defendant with an initial pleading or other document that explicitly specifies the amount of monetary damages sought or sets forth facts from which an amount in controversy in excess of $5,000,000 can be ascertained"). In any event, I find it difficult to reconcile how defendants "could have removed Salerno before ever seeing the complaint, but could not have removed these cases until the amended complaints, the substance of which they had known for months, were formally filed". Plaintiffs' Response [61], p. 10.

While it is unclear why the parties executed a subsequent Stipulation to Amend Complaints [43-1] before the filing of the final version of the amended complaints, that

Stipulation did not negate the effect of Justice Kloch's Scheduling Order granting plaintiffs leave to amend - in fact, the Stipulation expressly states that it is "in accordance with the Scheduling Order" Id., ¶1.

Nor does the Stipulation demonstrate that there was a substantive variance between the proposed pleadings which defendants consented to at the November 26, 2019 conference and the amended complaints ultimately filed that altered the indicia of removability. As plaintiffs note, the proposed substantive amendments in the March 2019 draft were "in all relevant regards identical to the final amended complaints filed on January 6, 2020". Phillips Affidavit [39-2], ¶16.

Finally, exalting form over substance, defendants argue that plaintiffs "never even moved for leave to amend", and dispute that "a *scheduling* order" was an order granting them leave to amend.  Defendants' Joint Memorandum of Law [40], p. 12 (emphasis in original). However, [t]he statute articulates a functional test, not a formal one". Lucente S.P.A., 2007 WL 7209938, *5.  "The 'motion, order or other paper' requirement is broad enough to include any information received by the defendant, whether communicated in a formal or informal manner." Yarnevic v. Brink's, Inc., 102 F.3d 753, 755 (4th Cir. 1996).

Regardless of what form plaintiffs' request for leave to amend took (*e.g.*, by stipulation or motion) or how the state court memorialized its approval (*e.g.*, by order or scheduling order), as of November 27, 2019 defendants had sufficient notice of the three additional sites alleged in the amended complaints and plaintiffs had permission - from both defendants and the court - to file the amended complaints with those sites, thereby triggering

defendants' removal clock, and rendering their February 1, 2020 removal untimely. Therefore, I recommend that plaintiffs' motion to remand be granted.[11]

### C. Are Plaintiffs Entitled to Attorneys' Fees and Costs?

Plaintiffs request an award of attorneys' fees and costs pursuant to 28 U.S.C. § 1447(c), which provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal". "[A]bsent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 136, (2005).

On plaintiffs' initial motion for remand, Judge Curtin denied a similar request finding that "defendants' arguments for removal, while ultimately unpersuasive, have some plausible support in the law, and there is nothing in the record before the court to suggest that the matter was removed for the purpose of prolonging the litigation, imposing costs on the opposing party, or for any other reason than a good faith attempt to secure the proper forum". Abbo-Bradley, 2013 WL 4505454, *11. For those same reasons, I recommend that plaintiffs' request for attorneys' fees and costs again be denied.

## CONCLUSION

For these reasons, I recommend that plaintiffs' motion [39] to remand be granted, except to the extent that it seeks attorneys' fees and costs. Unless otherwise ordered by District Judge Frank P. Geraci, Jr., any objections to this Report and Recommendation must be filed with

[11] Because I have found that remand is warranted on procedural grounds, I have not addressed the parties' other arguments.

the clerk of this court by September 29, 2020. Any requests for extension of this deadline must be made to Judge Geraci. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: September 15, 2020

/s/Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge